Appeal Nos. 23-6125, 23-6126, 23-6167, 23-6168

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

SDM Holdings, LLC, an Oklahoma limited liability company
Respondent/Garnishee/Appellant, and
Avon Capital, LLC, a Wyoming limited liability company
Intervenor/Appellant

v.

Universitas Education LLC,
Petitioner/Judgment Creditor/Appellee

On appeal from the United States District Court for
the Western District of Oklahoma
Civil Case No. 5:14-fj-00005-HE
Judge Joe L. Heaton, United States District Judge

APPELLANT AVON CAPITAL, LLC, A WYOMING LIMITED
LIABILITY COMPANY AND APPELLANT SDM HOLDINGS, LLC,
AN OKLAHOMA LIMITED LIABILITY COMPANY'S
CONSOLIDATED REPLY BRIEF

Alan L. Rupe
Francis M. Schneider
LEWIS BRISBOIS BISGAARD
& SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone: (316) 609-7900
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com
ATTORNEYS FOR APPELLANT
AVON CAPITAL, LLC

Jeffrey R. Sandberg
Palmer Lehman Sandberg, PLLC
8350 N. Central Expressway
Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
jsandberg@pamlaw.com
ATTORNEY FOR APPELLANT
SDM HOLDINGS, LLC

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................i

TABLE OF AUTHORITIES ...............................................................vi

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT ON PRIOR RELATED APPEALS ..................................1

STATEMENT OF ISSUES ................................................................3

SUMMARY OF THE ARGUMENT ....................................................5

ARGUMENT AND AUTHORITIES ...................................................9

I. REPLY ISSUE ONE: IT WAS ERROR FOR THE DISTRICT COURT TO READOPT ITS JUDGMENT AND INJUNCTION WHEN THE MANDATE HAD NOT BEEN ENTERED AND THE DISTRICT COURT LACKED JURISDICTION................................................................. 9

II. REPLY ISSUE TWO: THE DISTRICT COURT FAILED TO FOLLOW THE LAW OF THE CASE AND HOLDING OF THIS COURT THAT THE CASE WAS MOOT AND THERE WAS NO LONGER A LIVE CASE OR CONTROVERSY AS REQUIRED BY ARTICLE III ..........................................11

III. REPLY ISSUE THREE: THE DISTRICT COURT ERRED IN READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE IT LACKED SUBJECT MATTER JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT. ............................................................. 13

IV. REPLY ISSUE FOUR: THE DISTRICT COURT ERRED IN READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE IT LACKED PERSONAL JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT ..........................................................................16

V.    REPLY ISSUE FIVE: THE DISTRICT COURT ERRED BY READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE OKLAHOMA LAW DOES NOT AUTHORIZE REFILING OF A FOREIGN JUDGMENT IN AN EXPIRED CASE...................................................................................................... 17

VI.   REPLY ISSUE SIX: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN GRANTING APPELLEE UNIVERSITAS' MOTION FOR SUMMARY JUDGMENT................................19

VII.  REPLY ISSUE SEVEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN DENYING APPELLANT AVON CAPITAL-WY'S MOTION FOR SUMMARY JUDGMENT ................. 19

        A.    A. The District Court Erred As a Matter of Law By Denying Intervenor/ Appellant Avon Capital-WY's Motion For Summary Judgment on Petitioner/Appellee Universitas' Unpled Cause of Action for Veil Piercing and Alter Ego Liability............................19

        B.    The District Court Erred in Relying on Inadmissible Factual Findings from other Jurisdictions .................................................25

        C.    Universitas Does Not Meaningfully Respond to Appellants' Argument the District Court Erred in Relying on Inadmissible Evidence from the Chernow (Universitas' Attorney) Declarations. .......................................................................................................29

VIII. REPLY ISSUE EIGHT: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, IT WAS AN ABUSE OF DISCRETION FOR THE DISTRICT COURT TO DENY APPELLANTS' MOTIONS TO STRIKE. ........................... 30

        A.    Declarant Chernow Lacks Personal Knowledge............................31

        B.    The Error Is Harmful. ..................................................................34

IX.   REPLY ISSUE NINE: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, IT WAS AN ABUSE OF DISCRETION FOR THE DISTRICT

COURT TO DENY APPELLANT AVON CAPITAL-WY'S REQUEST FOR DISCOVERY ................................................................................. 36

X. REPLY ISSUE TEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED AS A MATTER OF LAW IN APPOINTING A RECEIVER BECAUSE IT LACKED JURISDICTION .......... 40

XI. REPLY ISSUE ELEVEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN READOPTING ITS INJUNCTION AND REAPPOINTING A RECEIVER, BECAUSE EVEN IF IT ASSUMED *ARGUENDO* THAT THE JUDGMENT COULD BE ENFORCED AGAINST APPELLANTS, OKLAHOMA LAW EXPRESSLY AUTHORIZES SOLELY THE ENTRY OF A CHARGING ORDER ......................................... 41

XII. REPLY ISSUE TWELVE: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING PETITIONER'S MOTION TO APPOINT A RECEIVER ............. 43

XIII. REPLY ISSUE THIRTEEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN DENYING SDM HOLDINGS' MOTION FOR SUMMARY JUDGMENT..................................... 45

    A. SDM Did Not Waive Service of Process of the Garnishment Summons and Required Documents............................................45

    B. If The Show Cause Order Is Held To Comply With The Requirement That A Non-Answering Garnishee Be Ordered To Appear And "Show Cause," Then The Order Denying Universitas' Motion For Contempt Resolved The Garnishment. .....................47

    C. The Uncontradicted Kehoe Affidavit Establishes As A Matter of Law That SDM Is Not Liable As A Garnishee Under Oklahoma Law....................................................................................48

    D. Universitas Produced No Summary Judgment Evidence In Support of Universitas' Argument That SDM Is Liable As A Garnishee .49

iii

XIV. REPLY ISSUE FOURTEEN (REPLYING TO UNIVERSITAS' RESPONSE ISSUE ONE): SDM HOLDINGS HAS STANDING TO PRESENT ISSUES IN ADDITION TO THE DENIAL OF SDM HOLDINGS' MOTION TO QUASH THE GARNISHMENT SUMMONS. ......................................................51

CONCLUSION AND RELIEF SOUGHT ........................................................51

STATEMENT REGARDING ORAL ARGUMENT .....................................54

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) ...............................................................................................54

ATTACHMENTS:

| No. | Docket # | Date | Description |
|---|---|---|---|
| 1 | 1-1 | Aug. 12, 2014 | Registered Judgment (New York Judgment) |
| 2 | 218 | Oct. 20, 2020 | Magistrate Judge Report and Recommendation |
| 3 | 228 | Feb. 11, 2021 | District Court's order adopting Report and Recommendations (Doc. 218); and enjoining of Appellant Avon Capital-WY |
| 4 | 230 | Feb. 26, 2021 | District Court's order for Response to Writ of General Execution and Garnishment Summons |
| 5 | 240 | April 8, 2021 | District Court's order denying SDM Holdings, LLC's Motion to Alter Judgment (Doc. 231) and to Amend the Judgment |
| 6 | 310 | Sep. 22, 2021 | District Court's order on Petitioner's Motion for Application of Property, Petitioner's Motion for Appointment of Receiver, and Respondent Avon's Motion to Stay |

| 7 | 311 | Sep. 22, 2021 | District Court's order appointing Ryan Leonard, Esq. as Receiver of Avon Capital-WY |
|---|---|---|---|
| 8 | 499 | July 13, 2023 | Tenth Circuit Court of Appeal's order and judgment as to Notice of Appeal filed by SDM Holdings LLC, 241. Vacated and Remanded. Terminated on the merits after oral hearing |
| 9 | 500 | July 13, 2023 | District Court's order to address reaffirming order entered on February 11, 2021 (adopting Report and Recommendations (Doc. 218); and enjoining of Appellant Avon Capital-WY) |
| 10 | 509 | August 4, 2023 | Tenth Circuit Court of Appeal's order as to Notices of Appeal filed by SDM Holdings LLC (Docs. 316 and 241) and Notice of Appeals filed by Avon Capital-WY (Docs. 245 and 315); Order filed by Judges Eid, Baldock and Carson |
| 11 | 510 | August 4, 2023 | Tenth Circuit Court of Appeal's order and Judgment as to Notices of Appeal filed by SDM Holdings LLC (Docs. 316 and 241) and Notices of Appeals filed by Avon Capital-WY (Docs. 245 and 315). Vacated and Remanded. Terminated on the merits after oral hearing |
| 12 | 512 | August 7, 2023 | District Court's order reaffirming and reentering Doc. 500 (entered on July 13, 2023) |
| 13 | 521 | August 15, 2023 | District Court's order from pretrial conference held on August 15, 2023; finding that it regained jurisdiction |

# TABLE OF AUTHORITIES

**STATUTES**

12 O.S. § 1177 (1995) .............................................................49

12 O.S. § 1551 (1989) .............................................................44

18 O.S. § 2034 (2017) ..........................................................42, 43

O.S. §12-735(B) ....................................................................16

**FEDERAL RULES**

Fed. R. App. P. 4 ...................................................................16

Fed. R. App. P. 5 ...................................................................16

Fed. R. Civ. P. 12(b)(1) ......................................................16, 17, 52

Fed. R. Civ. P. 12(b)(2) ........................................................15, 52

Fed. R. Civ. P. 56 ..................................................................25

Fed. R. Civ. P. 56(e) ...............................................................36

Fed. R. Civ. P. 69 .............................................................16, 17

**CASES**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ...........................14

*Aquila, Inc. v. C.W. Mining Co.*, 659 F. App'x 504 (10th Cir. 2016) (unpublished). ..................................................................................51

*Bloom v. Express Servs.*, No. CIV-11-438, 2012 U.S. Dist. LEXIS 75522, at *9 (W.D. Okla. May 31, 2012) ....................................................22

*Brigham Young Univ. v. Tremco,* 156 P.3d 782 (Utah 2007) ...............20

*Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114 (10th Cir. 2005) ........31, 32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................49

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380 (D. Del. 2018) .......................................................................20

*Committee for the First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992) ..................................................................................36

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) ...............28

*Gilbert v. DHC Dev., Ltd. Liab. Co.,* No. 2:08-CV-258 BSJ, 2013 U.S. Dist. LEXIS 131321, at *37 (D. Utah Sep. 12, 2013) ....................................................22

*GreenHunter Energy, Inc. v. W. Ecosystems, Inc.*, 337 P.3d 454 (Wyo. 2014) ....................................................................................................................39

*Daniel J. Hartwig Assocs., Inc.* v. *Kanner*, 913 F.2d 1213 (7th Cir. 1990) .............37

*Hansjurgens v. Bailey*, 90 F.4th 1158 (11th Cir. 2024).................................... 17, 18

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322 (4th Cir. 2021)....................................................................................................14

*Hopper v. Wyant*, 502 F. App'x 790 (10th Cir. 2012)............................................47

*IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258 (D. Kan 1998)............33

*Johnston v. Great Lakes Constr. Co.*, 9th Dist. No. 95CA006111, 1996 Ohio App. LEXIS 784, 1996 WL 84632, *3 (Feb. 28, 1996) ....................................................33

*Jones v. Dalrymple*, 679 F. App'x 668  (10th Cir. 2017) ........................................9

*Lee v. loanDepot.com, LLC*, No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, at *6 (D. Kan. Aug. 17, 2016) .................................................................27

*Lowell Staats Mining Co. v. Phila. Elec. Co.,* 878 F.2d 1271 (10th Cir. 1989) .....27

*Mallory v. Norfolk Southern Ry.*, 143 S. Ct. 2028 (2023) ......................................46

*Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203 (10th Cir. 2001) ...................................................................................................................28

*McCarthy v. Johnson*, No. 98-4003, 1999 U.S. App. LEXIS 1519, at *5 (10th Cir. Feb. 3, 1999) (unpublished) ...........................................................................17, 18

*Merswin v. Williams Cos.*, 364 F. App'x 438 (10th Cir. 2010).......................27, 28

*Mullaney v. Anderson*, 342 U.S. 415 (1952) ........................................................14

*Nikols v. Chesnoff,* 435 F. App'x 766 (10th Cir. 2011)..................20, 22, 26, 38, 39

*Procter & Gamble Co. v. Haugen*, 317 F.3d 1121 (10th Cir. 2003) ......................11

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cit. 2005)....13

*Sellers v. MC Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988)............................33

*Sky Cable, LLC v. Coley*, Civil Action No. 5:11cv00048, 2016 U.S. Dist. LEXIS 93537 (W.D. Va. July 18, 2016)....................................................................20, 21

*Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559 (10th Cir. 2020) ......... ...........................................................................................................................11

*Sproles v. Gulfcor, Inc.*, 987 P.2d 454 (Okla. Civ. App. 1999) ................ 20, 24, 39

*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169 (10th Cir. 1979) ....................................................................................................29

*Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004) .....................................51

*Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018).......................................15, 18

*United States v. Bursey,* 801 F. App'x 1 (2d Cir. 2020)*, cert. denied Carpenter v. United States,* 2020 U.S. LEXIS 5363 (U.S. Nov. 9, 2020) (unpublished) ..............2

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)..................2, 7, 8

*United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996) (emphasis added) ..........7

*United States v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127 (D.C. Cir. 2016).............34

*United States v. Triangle Oil*, 277 F.3d 1251 (10th Cir. 2002) ..............................11

*United States v. Williams*, 790 F.3d 1059 (10th Cir. 2015)....................................10

*Universitas Educ., Ltd. Liab. Co. v. Avon Capital, Ltd. Liab. Co.*, Nos. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, at *1 (10th Cir. Aug. 4, 2023) ...........................................................................................................5, 15, 51

*Universitas Educ., LLC v. Nova Grp., Inc*., No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *1 (S.D.N.Y. Aug. 7, 2014) ...............................................7

*Yorkshire West Capital, Inc. v. Rodman*, 149 P.3d 1088 (Okla. Civ. App. 2006). ...............................................................................................................................18

## JURISDICTIONAL STATEMENT

There is no dispute among the parties that this Court has jurisdiction over the orders dated August 7, 2023 and August 15, 2023. (Universitas' Brief pg. 5). Universitas also does not dispute that this Court has jurisdiction over the district court's order pertaining to its finding of *alter ego* liability (entered on February 26, 2021 and adopted on August 15, 2023). Universitas contends, however, this Court somehow lacks jurisdiction over the adoption of the magistrate report and, according to Universitas, the "issues set for briefing" in the August 15, 2023 order and the denial of the Motions to Dismiss (Universitas Brief p. 5), but Universitas cites to no relevant supporting authority because there are appealable orders in this case. Because Universitas' argument ignores the fact that appealable orders were entered in the District Court, Universitas' argument is unpersuasive.

## STATEMENT ON PRIOR OR RELATED APPEALS

Universitas points to various District Court cases and appeals from the Second Circuit Court of Appeals which it contends are related to the underlying post-judgment proceedings. (Universitas' Brief, pg. 7). Appellants Avon Capital-WY and SDM Holdings are not parties to those cases and appeals. *See id.* Accordingly, the other cases and appeals cited by Universitas are not related to the consolidated appeal before this Court. Moreover, Universitas mischaracterizes these unrelated cases repeatedly.

Further, Universitas mischaracterizes the brief reference to Avon Capital, in the Connecticut District Court's opinion Universitas cites on page 10 of its brief, as there is no holding that Avon-Capital was a conspirator. *United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020), *cert. denied Carpenter v. United States*, 2020 U.S. LEXIS 5363 (U.S. Nov. 9, 2020) (unpublished).

<u>The District Court's Receivership Orders Entered on September 28, 2021</u>

Universitas contends the District Court's orders entered on September 28, 2021 related to the appointment of a receiver over Avon Capital-WY are not on appeal because this Court vacated as moot those orders in consolidated related appeal numbers 21-6133 and 21-6134. (Universitas' Brief pgs. 18, 82-83). Universitas correctly points out that this Court found the District Court lost jurisdiction in December 2020 when the registered judgment expired, and that all orders entered at that date by the District Court are moot. But contrary to Universitas' argument the orders entered by District Court entered on September 28, 2021 are on appeal in this consolidated appeal. (App. Vol. 16 at 4022 (Doc. 512); App. Vol. 17 at 4084 (Doc. 521) (Order of Pre-Trial Conference).

While the District Court acknowledged in its orders entered on August 7, 2023 and August 15, 2023 (the subject of this consolidated appeal) that it lost subject matter jurisdiction after the registered judgment expired, the District Court did not

expressly vacate the receivership orders entered on September 28, 2021. (App. Vol. 16 at 4022) (Doc. 512); (App. Vol. 17 at 4084 (Doc. 521) (Order of Pre-Trial Conference). Therefore, out of an abundance of caution, Appellants included argument in its opening brief for this consolidated appeal related to the receivership entered by the Court on September 28, 2021 for the sole purpose of obtaining an order from this Court that directs the District Court to expressly vacate that receivership for lack of jurisdiction. (*See* App. Vol. 11 at 2576 (Doc. No. 310); App. Vol. 11 at 2585 (Doc. No. 311)).

## STATEMENT OF ISSUES

The issues on appeal are:

(1) Whether the District Court erred in entering the judgment and injunction when the mandate had not been entered by this Court and the District Court lacked subject matter jurisdiction.

(2) Whether the District Court failed to follow the law of the case and holding of this Court that the case was moot and there was no longer a live case or controversy as required by Article III.

(3) Whether the District Court erred in entering the judgment and injunction because it lacked subject matter jurisdiction once the case and claims became moot.

(4) Whether the District Court erred in entering the judgment and injunction because it lacked personal jurisdiction once the case and claims became moot.

(5) Whether the District Court erred in entering the judgment and injunction because Oklahoma law does not authorize refiling of a foreign judgment in the same case and case number.

(6) Whether the District Court erred when it granted Universitas' Motion for Summary Judgment on an unpled theories of veil piercing and *alter ego* liability against Avon Capital-WY.

(7) Whether the District Court erred when it denied Avon Capital-WY's Motion for Summary Judgment on Universitas' unpled theories of veil piercing and *alter ego* liability.

(8) Whether it was an abuse of discretion for the District Court to deny Avon Capital-WY's motions to strike the declarations of Benjamin Chernow (counsel for Universitas).

(9) Whether the District Court abused its discretion when it denied Avon Capital-WY's request for discovery on Appellee Universitas' unpled theories for veil piercing and *alter ego* liability.

(10) Whether the District Court erred as a matter of law in the appointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in Appellant SDM Holdings.

(11) Whether the District Court erred in readopting its judgment and injunction, and appointment a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in Appellant SDM Holdings, because even if it is assumed *arguendo* that a post-judgment injunction could be granted, Wyoming and Oklahoma law expressly requires entry of a charging order.

(12) Whether the District Court abused its discretion in granting Universitas' motion to appoint receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings.

(13) Whether the District Court erred in denying SDM Holdings' Motion for Summary Judgment.

(14) (Replying to Universitas' Response to Issue One): Whether SDM Holdings Has Standing to Present Issues In Addition to the Denial of SDM Holdings' Motion to Quash the Garnishment Summons.

On appeal before this Court are multiple issues, including threshold issues involving the District Court's lack of subject matter jurisdiction and personal jurisdiction following this Court's holding that the case was moot following the December 3, 2020 expiration of the registered judgment so that the District Court lost jurisdiction on December 3, 2020 when the registered judgment expired. *Universitas Educ., LLC v. Avon Cap., LLC*, No. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, *1, *12-*13 (10th Cir. August 4, 2023)[1]. Following this Court's 2023 holding, the District Court ruled that it somehow "reacquired" jurisdiction without the filing of any new pleadings by Universitas (actually, Universitas never filed pleadings in this case), without Avon Capital-WY or SDM Holdings being served and without any attempt to serve Avon Capital-WY and SDM Holdings following this Court's holding. (App. Vol. 17 at 4084 (Doc. 521) (Order of Pre-Trial Conference). The District Court improperly ignored this Court's holding.

---

[1] This Court's Order and Opinion did not dismiss the case or order the District Court to dismiss the case, presumably because Universitas filed motions for sanctions on March 31, 2021 [Doc. 235, 236] and May 20, 2021 [Doc. 275] that were pending. (App. Vol. 11 at 29) Following the remand, Universitas withdrew the first motion for sanctions and the District Court denied the second motion for sanctions on January 4, 2024. (Doc. 564)

Universitas' opposition relies on four patently false assumptions. First, Universitas' circular logical fallacy assumes Avon Capital-WY is an *alter ego* of Avon Capital-NV and Avon Capital-CT, with no supporting evidence, in order to conclude that Avon Capital-WY is an *alter ego* of Avon Capital-NV and Avon Capital-CT. Universitas repeatedly relies on findings and pleadings relating only to other parties and/or Avon Capital-CT to support Universitas' (baseless) argument that Avon Capital-WY is somehow an *alter ego* of anyone much less Avon Capital-CT which is the only Avon Capital judgment debtor identified on the registered judgment that expired on December 5, 2020. But if this Court starts with the proper burden of proof – notably, that Avon Capital-WY is not an *alter ego* unless and until Universitas clears its evidentiary burden by establishing with admissible evidence that Avon-Capital-WY, in fact, is an *alter ego,* then Universitas' arguments are merely unsupported rhetoric.

Second, Universitas assumes that Avon Capital-WY and SDM Holdings are Daniel Carpenter and that Daniel Carpenter is in control of Avon Capital-WY and SDM Holdings.[2] Based on this unsupported assumption, Universitas goes so far as

---

[2] Universitas falsely claims that Avon Capital-WY and Daniel Carpenter have a long history of fraudulent activity and Universitas goes so far as to falsely accusing Avon Capital-WY of stealing $30 million dollars (Universitas' Brief at pg. 9 n. 8), but Avon Capital-WY was clearly not a party to the 2014 New York judgment and the District Court did not rule that Avon Capital-WY is an *alter ego* of Dan Carpenter or anyone/anything else. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014) (unpublished).

to claim that Avon Capital-WY "participated" in the Southern District of New York turnover proceedings; that Avon Capital-WY stole $30 million dollars; and that Avon Capital-WY filed appeals and motions in actions that Avon Capital-WY did not enter.[3] Universitas seeks to place the cart before the horse because Avon Capital-WY and SDM Holdings are not parties to the other cases and appeals, thus only pleadings in proceedings in which Avon Capital-WY and SDM Holdings entered and participated are applicable.

Third, Universitas contends that the Connecticut District Court found Avon Capital-WY to be the "most significant" entities in the Daniel Carpenter conspiracy.[4]

---

[3] Universitas continues to demonize Mr. Carpenter and mischaracterizes holdings in other cases in which Avon-Capital-WY, SDM Holdings and Mr. Carpenter were not parties in an effort to distract this Court from the merits. Universitas recalls an oft-quoted adage:

> If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table and **attack your opponent**.

*United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996) (emphasis added) (internal cit. omitted).

[4] *See* Universitas' Brief pgs. 7, 63. The District of Connecticut stated as follows: "Of the numerous different entities that operated out of these locations, the most significant for purposes of this case are Benistar Admin Services, TPG Group, Grist Mill Trust, Grist Mill Capital, Avon Capital, and the Charter Oak Trust." *United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016). The District of Connecticut clearly did not identify a Wyoming entity as the "most significant" entity. *United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016). And Avon Capital-WY was not party to the Connecticut litigation. *See, e.g., United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016).

This contention is not supported by the authority cited by Universitas. Tellingly, if Avon Capital-WY was the "most significant" entity, then Universitas would have joined Avon Capital-WY to the turnover proceedings before the Southern District of New York.

Regardless, Universitas filed no pleadings in this case, and thus Universitas cannot claim it sufficiently pleaded its theories of veil piercing and *alter ego* liability against Avon Capital-WY. Even if Universitas had pleaded theories for veil piercing and *alter ego* liability, Universitas failed to come forward with admissible evidence required to establish these causes of action. Moreover, Avon Capital-WY has been denied due process associated with traditional litigation.

For those reasons set forth herein and in Avon Capital-WY's and SDM Holdings' opening appellate brief, the District Court never "reacquired" jurisdiction and also: (1) erred in granting Universitas' Motion for Summary Judgment on its unpled theories of veil piercing and *alter ego* liability; (2) erred by relying on inadmissible evidence as material support for its decision to grant Universitas' Motion for Summary Judgment on the issue of veil piercing and *alter ego* liability and for its decision to deny Avon Capital-WY's and SDM Holdings' respective Motions for Summary Judgment; (3) abused its discretion by denying Avon Capital-WY's motions to strike the Chernow Declarations and the inadmissible evidence attached to the declarations; (4) abused its discretion by denying Avon Capital-WY's

request to conduct discovery on Declarant Chernow and Universitas' unpled theories of veil piercing and *alter ego* liability; (5) erred in granting Universitas' motion to appoint a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in Appellant SDM Holdings; and (6) abused its discretion in granting Universitas' motion to appoint a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in Appellant SDM Holdings.

## ARGUMENT AND AUTHORITIES

I.     **REPLY ISSUE ONE: IT WAS ERROR FOR THE DISTRICT COURT TO READOPT ITS JUDGMENT AND INJUNCTION WHEN THE MANDATE HAD NOT BEEN ENTERED AND THE DISTRICT COURT LACKED JURISDICTION.**

Beginning on page 21 and then again on page 34 of its brief, Universitas admits that this Court has an "independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Jones v. Dalrymple*, 679 F. App'x 668, 669 (10th Cir. 2017). Universitas also points out that an interlocutory order denying a motion to dismiss is not ordinarily immediately appealable, but Universitas does not argue this because the District Court's order is not interlocutory.

Universitas does not dispute that the District Court entered its July 13, 2023 order while the appeal was pending and before the mandate was issued. Instead, Universitas argues that a District Court may enter orders while an appeal is pending to preserve the status quo while an appeal is pending. Universitas ignores the

language in the July 13, 2023 order, which states the order was entered "pending the pretrial conference." (App. Vol. 17 at 3891 (Doc. 500) (Order). Second, while Universitas points to the Auguust 15, 2023 order's language stating that it is effective once the mandate is issued, this argument ignores the injunction entered on July 13, 2023, before the mandate was issued, which was already effective. (App. Vol. 17 at 3891 (Doc. 500) (Order)).

A district court does not reacquire jurisdiction over matters involved in an appeal until the Circuit has issued a mandate on those matters on appeal. *See United States v. Williams*, 790 F.3d 1059, 1086 (10th Cir. 2015) (Circuit transfers jurisdiction back to district court by issuing a mandate). The District Court lacked jurisdiction to enter the July 13, 2023 and August 7, 2023 orders. (*See* App. Vol. 16 at 3888 (Doc. 499 at 13); App. Vol. 16 at 4022) (Doc. 512)).

Appellants request the Court enter an order which vacates the District Court's August 2023 Orders that readopted its February 11, 2021 Order that entered final judgment against Avon Capital-WY and enjoined Avon Capital-WY for lack of jurisdiction.

II.  **REPLY ISSUE TWO: THE DISTRICT COURT FAILED TO FOLLOW THE LAW OF THE CASE AND HOLDING OF THIS COURT THAT THE CASE WAS MOOT AND THERE WAS NO LONGER A LIVE CASE OR CONTROVERSY AS REQUIRED BY ARTICLE III.**

Beginning on page 22 and then again on page 39, Universitas argues that the District Court acted properly because this Court remanded the case when this Court held that the District Court lost subject matter jurisdiction and the mandate did not order the District Court to dismiss the case.  Universitas misconstrues the "law of the case" doctrine because the doctrine's applicability is not limited to the mandate as posited by Universitas.  Instead, the *Solidfx* opinion relied upon by Universitas holds the mandate rule, which is a corollary to the law of the case doctrine, applies to issues "expressly and impliedly" decided. *Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559, 565 (10th Cir. 2020) (quoting *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003)). "Courts use 'law of the case' to 'promote decisional finality' and rely on it to prevent relitigation of an issue already decided in prior proceedings of the same case." *United States v. Triangle Oil*, 277 F.3d 1251, 1259 (10th Cir. 2002).

Next, Universitas argues that the District Court somehow required jurisdiction when the New York judgment was filed again, but there is no legal precedent that supports Universitas' argument.  Universitas' unpleaded claims are not somehow resurrected because the registration of a foreign judgment does not, by itself, place

any claims or parties, other than the party registering the foreign judgment, before the District Court.

This Court "vacate[d] the district court's February 11, 2021 order for lack of jurisdiction [and found] the underlying dispute was moot at the time of decision due to the expiration of Universitas' Western District of Oklahoma judgment". (App. Vol. 16 at 4003 (Doc. 510) (Order and Judgment Dated August 4, 2023). Because the dispute (or case) was moot, there was no longer a case or controversy for purposes of Article III standing. *See id.* And nothing occurred after this Court's holding that resulted in a case or controversy being before the District Court.

Universitas next argues on page 41 that this Court's July 13, 2023 Order and Opinion are somehow "instructive" despite no longer being the operative order in this case. First, Universitas, unsurprisingly, can cite to no legal authority for this argument. Second, Universitas states that Appellants did not argue that the filing of the New York judgment was "technically insufficient," (whatever this means), but to be clear, Appellants argued that the prior (unpleaded) claims were moot and the refiling of the New York judgment did not, by itself, create subject matter jurisdiction over any claims against anyone. (App. Vol. 17 at 4028 (Doc. 513) (SDM Motion to Dismiss); (App. Vol. 16 at 4056 (Doc. 517) (Avon Capital-WY Motion to Dismiss).

For those reasons identified herein, and in Appellants' opening appellate brief, Appellants request this Court enter an order which finds, as set forth in its August 4, 2023 order, that the case became moot on December 3, 2020, at which time Appellants were no longer (and are no longer) party to any case or controversy and any claims became moot, and the Court's prior finding that the District Court lacked Article III jurisdiction is law of the case and that the District Court lacked jurisdiction to reenter its February 11, 2021 Order which entered final judgment against Avon Capital-WY and enjoined Avon Capital-WY.

### III. REPLY ISSUE THREE: THE DISTRICT COURT ERRED IN READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE IT LACKED SUBJECT MATTER JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT.

Once its claims became moot and the District Court lost subject matter jurisdiction, what were Universitas' claims after the mandate issued? Universitas summarily concludes on pages 23 and 42 of its brief that the District Court reacquired jurisdiction, but wholly fails to explain how or why it happened. Universitas points this Court to *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cit. 2005), but the holding in the *Schreiber* opinion is that in patent infringement cases, a loss of jurisdiction may be cured <u>before</u> the entry of judgment. This appeal does not involve a patent infringement claim (presumably, since Universitas never pleaded any causes of action) and Universitas' attempted cure (App. Vol. 16 at 4017) (Doc. 511) (the filing of the New York judgment on

August 7, 2023) occurred long after the entry of the judgment on February 11, 2021. (App. Vol. 7 at 1928) (Doc. 228).

Universitas also cites to *Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952), in which the United States Supreme Court granted a motion to substitute parties, as the motion "merely puts the principal, the real party in interest, in the position of his avowed agent." *Id.* at 417. This appeal does not involve the substitution of parties or a motion requesting a substitution.

On page 43, Universitas cites to *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 327 (4th Cir. 2021), but this opinion (which is not relevant because the loss of jurisdiction resulted from the plaintiff turning 21 after the appellate opinion issued) supports Avon Capital-WY and SDM Holdings if it was relevant, as the lower court opinions were vacated because the claims became moot. The remainder of the opinions that Universitas relies upon are also irrelevant, as the opinions involve a plaintiff that loses standing, which is not the case here.

Universitas' argument ignores the prior holding by this Court:

[Universitas] failure to re-file was fatal—there was no longer a judgment in existence for the district court to enforce at the time it entered the order. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (cleaned up). As the issue in this case was no longer live and Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020,

the case became moot and the district court lacked Article III jurisdiction to enter its order, rendering the order void.

*Universitas Educ., LLC v. Avon Cap., LLC*, No. 21-6044, No. 21-6049, No. 21-6133, No. 21-6134, 2023 U.S. App. LEXIS 20356, at *11-*13 (10th Cir. August 4, 2023) (citing *Taracorp, Ltd. v. Dailey*, 419 P.3d 217, 218 (Okla. 2018)). Notably, this Court also refused to "extrapolate" *Taracorp* "to encompass this case without further instruction from the Oklahoma Supreme Court" and Universitas is again asking this Court to expand/extrapolate *Taracorp*. *See Universitas Educ., LLC*, 2023 U.S. App. LEXIS 20356, at *11.

Put simply, while Universitas is permitted to register a foreign judgment under Oklahoma law and Rule 69, Universitas wholly fails to provide any argument and also fails to provide any legal authorities that would establish that filing a foreign judgment after the District Court lost subject matter jurisdiction somehow revived Universitas' claims (because it did not).

Appellants request the Court enter an order which finds the District Court lost subject matter jurisdiction under *See* Fed. R. Civ. P. 12(b)(2) over the case upon expiration of the registered judgment (New York Judgment) on December 3, 2020; that the District Court has not regained subject matter jurisdiction since then; and dismisses this action for lack of subject matter jurisdiction. (*See* App. Vol. 16 at 4010-4011 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

## IV. REPLY ISSUE FOUR: THE DISTRICT COURT ERRED IN READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE IT LACKED PERSONAL JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT.

On pages 24 and 48 of its brief, Universitas argues that the re-filing of the New York judgment in August 2023 (which is years after the District Court lost jurisdiction) somehow caused the District Court to have personal jurisdiction over Avon Capital-WY and SDM Holdings for purposes of Universitas' (unpleaded) claims. First, Universitas ignores the fact that the filing of a foreign judgment does not place any defendants/respondents before the District Court. *See* Fed. R. Civ. P. 69; O.S. §12-735(B).

Second, Universitas ignores another basic principle: in the absence of pleaded claims against them and service of process, Avon Capital-WY and SDM Holdings are no longer parties. In other words, there is nothing for Avon Capital-WY and SDM Holdings to defend against and they are not properly before the Court because there is no subject matter jurisdiction, and also no personal jurisdiction. *See* Fed. R. Civ. P. 4, 5, 12(b)(1); App. Vol. 17 at 4028 (Doc. 513) (Motion to Dismiss).

Universitas argues that Avon Capital-WY and SDM Holdings somehow waived the lack of personal jurisdiction by defending themselves <u>before</u> the District Court lost subject matter jurisdiction, but there is no precedent that supports Universitas' argument. And Universitas provides no authority or precedent to support this argument. Universitas simply concludes that the District Court

somehow had personal jurisdiction over Appellants without: (1) having to plead any claims, (2) attempting to properly serve Appellants and (3) without proper service upon Appellants, following the issuance of the mandate. (App. Vol. 1 at 45-49).

Appellants request the Court enter an order which finds the District Court lost personal jurisdiction under Fed. R. Civ. P. 12(b)(1) (and has not regained personal jurisdiction) over Appellants upon the expiration of the registered judgment on December 3, 2020, when the District Court lost Article III jurisdiction; that Avon Capital-WY and SDM Holdings are no longer before the District Court; and dismisses this action for lack of personal jurisdiction.

## V. REPLY ISSUE FIVE: THE DISTRICT COURT ERRED BY READOPTING ITS JUDGMENT AND INJUNCTION BECAUSE OKLAHOMA LAW DOES NOT AUTHORIZE REFILING OF A FOREIGN JUDGMENT IN AN EXPIRED CASE.

On pages 24 and 49 of its brief, Universitas argues that Universitas was required to only substantially comply with Oklahoma law regarding the collection of a judgment because Universitas brought this case under Rule 69. "Substantial compliance" language is noticeably absent from Rule 69, which instead states "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located . . .." FED. R. CIV. P. 69.

Universitas cites to *McCarthy v. Johnson*, No. 98-4003, 1999 U.S. App. LEXIS 1519, at *5 (10th Cir. Feb. 3, 1999) (unpublished) and *Hansjurgens v. Bailey*,

90 F.4th 1158, 1168 (11th Cir. 2024), but *McCarthy* and *Hansjurgens* held that substantial compliance was sufficient in cases involving the renewal of a dormant judgment.  Thus, *McCarthy* and *Hansjurgens* are not relevant.

Universitas next argues that *Taracorp, Ltd. v. Dailey*, 419 P.3d 217, 218 (Okla. 2018) holds that a lapsed foreign judgment may be re-registered if the foreign judgment remains valid and enforceable in the jurisdiction in which it was entered. Critically, plaintiffs in *Taracorp* did not file the foreign judgment after it lapsed in the same proceeding, but instead filed the lapsed foreign judgment in a <u>new</u> proceeding.  *See Taracorp*, at 419 P.3d at 219. Notably, the *Taracorp* court relied upon *Yorkshire West Capital Inc. v. Rodman,* 149 P.3d 1088 (Okla. Civ. App. 2006) ("Yorkshire's [foreign] Texas Judgment remained valid and enforceable in 2005 and Yorkshire **properly filed it a second time in Oklahoma under a new case number.**") (emphasis added).

For those reasons identified herein, and in Appellants' opening appellate brief, Appellants request this Court enter an order which enforces *Yorkshire* and finds the District Court cannot (and has not) regain subject matter jurisdiction over the case and personal jurisdiction over Appellants by Universitas' refiling of the New York Judgment in the same case and case number, and dismisses this action for lack of jurisdiction.  (App. Vol. 16 at 4010-4011 (Doc. 510) (Order and Judgment Dated August 4, 2023).

## VI. REPLY ISSUE SIX: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN GRANTING APPELLEE UNIVERSITAS' MOTION FOR SUMMARY JUDGMENT.

Universitas' contends the District Court correctly granted its Motion for Summary Judgment against Avon Capital-WY. (Universitas' Brief pg. 50). This argument fails for the same reasons discussed *infra* in Reply Issue Seven.

Accordingly, as is more fully detailed in Appellants' opening brief and in the next issue, the District Court erred in granting Universitas' Motion for Summary Judgment. (*See infra,* Reply Issue Seven).

## VII. REPLY ISSUE SEVEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN DENYING APPELLANT AVON CAPITAL-WY'S MOTION FOR SUMMARY JUDGMENT.

### A. The District Court Erred As a Matter of Law By Denying Intervenor/ Appellant Avon Capital-WY's Motion For Summary Judgment on Petitioner/Appellee Universitas' Unpled Cause of Action for Veil Piercing and *Alter Ego* Liability.

Universitas argues on pages 25 and 53 that Universitas was not required to plead an *alter ego* claim and that Avon Capital-WY somehow received notice of an *alter ego* claim, ignoring fundamental constitutional protections and civil procedure.

First, Universitas contends that there is no rule which requires a claim for *alter ego* liability to be filed with a complaint and a summons. To the contrary, a party cannot obtain judgment against a non-judgment debtor without service of process

19

with a complaint. *Sproles v. Gulfcor, Inc.*, P.2d 454, 457 (Okla. Civ. App. 1999) ("Sproles must be afforded an opportunity to complete discovery from the shareholders upon whom he has obtained personal service.")

Universitas strains to identify two non-binding cases to support its argument that there is no rule which requires a claim for *alter ego* liability to be filed with a complaint and a summons.[5] (Universitas' Brief pgs. 49-50 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 394 (D. Del. 2018), *Sky Cable, LLC v. Coley*, Civil Action No. 5:11cv00048, 2016 U.S. Dist. LEXIS 93537 (W.D. Va. July 18, 2016)).

In *Crystallex,* the Delaware district court determined that the creditor was not seeking to impose primary liability against a third-party via *alter ego* liability and therefore determined that a separate cause of action was not required. *Crystallex*, 333 F. Supp. 3d at 394. Whereas in the underlying post-judgment proceedings, Universitas moved for summary judgment to impose primary liability against third-party Avon Capital-WY via *alter ego* liability. (Aplts. App. Vol. 6 at 1006-09; Vol. 7 at 1015-1016). Thus, contrary to Universitas' argument, it was Universitas that raised the issue of *alter ego* liability against a third-party (Avon Capital-WY) on

---

[5] Universitas suggests that Appellants incorrectly cited a quotation to *Nikols v. Chesnoff,* 435 F. App'x 766, 771 (10th Cir. 2011). Appellants acknowledge the quote identified in the *Nikols* is attributed to *Brigham Young Univ. v. Tremco,* 156 P.3d 782, 788 (Utah 2007), but Universitas is incorrect to suggest that Appellants didn't correctly cite to the quotation in *Nichols*.

summary judgment but without the required pleading and discovery associated with this cause of action.

Similarly, Universitas' reliance on *Sky Cable, LLC* is misplaced. In *Sky Cable, LLC,* the issue before the United States District Court of Western Virginia was whether an individual shareholder of the judgment debtor was an *alter ego* of the judgment debtor, and there is no discussion whether the veil piercing was adequately pleaded. *Id.*

There is no dispute that Avon Capital-WY is not a judgment debtor in the New York judgment.[6] Universitas seeks a determination that an entirely separate entity (Avon Capital-WY) from those involved in the New York litigation is an *alter ego* of the New York judgment debtors. Accordingly, the forgoing cases are not factually applicable to the underlying post-judgment proceedings.

Second, Universitas does not argue that it has filed a pleading against Avon Capital-WY, but instead argues that Avon Capital-WY brought the "*alter ego* issue" before the District Court at the time that Avon Capital-WY intervened in the post-judgment proceedings. (Universitas' Brief pg. 25). But Universitas identifies no

---

[6] (Aplts. App. Vol. 2 at 382) ("The post-judgment turnover order issued by the District Court for the Southern District of New York referred only to Delaware and Connecticut entities, making it clear that Avon Capital-WY was not a party to that order.").

legal authority to support the argument that an intervenor can allege a cause of action against itself.

Moreover, as the Petitioner, Universitas alone bears the burden to properly allege a cause of action. *See Nikols v. Chesnoff*, 435 F. App'x 766, 771 (10th Cir. 2011) ("'a violation of due process does occur if a court permits a cause of action that should properly be prosecuted as a civil action to proceed under those rules promulgated to assist in the collection efforts of a judgment creditor.'") (internal citation omitted).[7]

At the time Avon Capital-WY intervened, it pointed out that Universitas had not pleaded a cause of action against Avon Capital-WY. *See* Aplts. App. at 147 (citing *Gilbert v. DHC Dev., Ltd. Liab. Co.,* No. 2:08-CV-258 BSJ, 2013 U.S. Dist. LEXIS 131321, at *37 (D. Utah Sep. 12, 2013) ("[P]laintiffs were not entitled to judgment against a party they did not join as a defendant on a claim they did not plead at all"); *see also* Aplts. App. at 145 (citing *Bloom v. Express Servs.*, No. CIV-11-438, 2012 U.S. Dist. LEXIS 75522, at *9 (W.D. Okla. May 31, 2012)). Despite Avon Capital-WY having pointed this fact out when it intervened, Universitas

---

[7] Universitas requested the District Court enter an order which found Avon Capital-WY an *alter ego* of Avon Capital-NV and Avon Capital-CT, liable for Universitas' judgment against Avon Capital, LLC. (Aplts. App. Vol. 7 at 1015-1016). Universitas also moved the District Court to assign Avon Capital-WY's membership interest in SDM Holdings to satisfy Universitas' previously obtained judgment. (Aplts. App. Vol. 7 at 1015-1016).

elected to not properly plead a cause of action for *alter ego* liability against Avon Capital-WY. (Aplts. App. Vol. 1 at 1-33 (docket)).

Third, Universitas effectively concedes that it has not filed a cause of action against Avon Capital-WY for veil piercing or *alter ego* liability, and instead argues that Avon Capital-WY received sufficient notice of a claim for *alter ego* liability through post-judgment proceedings. (Universitas' Brief pg. 59). Universitas' sole support for this argument is a notice of subpoena issued to Avon Capital-WY, notices of subpoenas to SDM Holdings and Don Trudeau and a writ of garnishment issued by Universitas to SDM Holdings.[8] There is no reference to a claim for *alter ego* liability in the subpoena to Avon Capital-WY, and Universitas mischaracterizes the proceedings by alleging "[p]rior to Avon Capital-WY's] appearance" Avon Capital-WY somehow received subpoenas and a writ of execution directed to others. (Universitas' Brief pg. 59). Furthermore, Universitas identifies no authority for the proposition that a party can plead a cause of action via a subpoena to a non-party.

Thus, it is patently false for Universitas to conclude that the subpoena provided Avon Capital-WY with notice of its claim for *alter ego* liability. Universitas' argument is undermined by its prior representation that the subpoena

---

[8] The subpoena, dated September 18, 2019, was issued against individual Donald Trudeau. (Universitas' Brief, pgs. 38-42; 52-53). There has not been a finding that Donald Trudeau is a judgment debtor under the New York Judgment. There has also not been a finding that Donald Trudeau is an *alter ego* of a judgment debtor.

was not directed at a corporate representative of Avon Capital-WY, but instead directed at the individual deponent to address issues of collectability and to determine the personal finances of the deponent and Avon Capital-WY. (Aplts. App. Vol. 6 at 995 (Doc. 171 at 3); Aplts. App. Vol. 6 at 1000-01 (Doc. 171 at 9-10)). District Judge Heaton's previous order noted the potential due process issues that could arise from an order and judgment applying to parties who were potentially never served. (Aplts. App. Vol. 2 pg. 411) ("Thus, aside from Due Process issues which would arise from an order and judgment applying to parties who were potentially never served, the submissions in this case do not clearly support Universitas' position that the judgment applies to all three LLCs.").

Universitas contends on page 57 that Avon Capital-WY's reliance on *Sproles* is misplaced because the Oklahoma Court of Appeals overturned the trial court's decision on the basis that a separate action for veil piercing was not required to execute on a judgment against the shareholders of a judgment debtor corporation. (Universitas' Brief pg. 50). But this is an incomplete representation of the appellate court's findings, which also found that the trial court could not allow the creditor to execute a judgment against the individual shareholders until they been afforded an opportunity to "complete discovery." *Sproles v. Gulfcor, Inc.*, P.2d 454, 457 (Okla. Civ. App. 1999).

In conclusion, because Universitas did not plead a theory of veil-piercing and *alter ego* liability against Avon Capital-WY, the District Court erred in granting Universitas' motion for summary judgment on the unpled theories of veil-piercing and *alter ego* liability. *See* FED. R. CIV. P. 56.

### B. The District Court Erred in Relying on Inadmissible Factual Findings from other Jurisdictions.

Universitas does not dispute the authority cited by Avon Capital-WY regarding when findings of fact can be judicially noticed in other jurisdictions. Universitas also admits on page 63 that the District Court relied on findings of fact from the Southern District of New York District Court and the District of Connecticut for the truth of the matter asserted as a basis for its finding of *alter ego* liability against Avon Capital-WY.[9] (*See id.*). Instead, Universitas' principal argument is that Avon Capital-WY waived the right to object to the issue of judicial notice (Universitas' Brief pgs. 59-60).

To the contrary, the issue of judicial notice is an extension of Avon Capital-WY's arguments on due process. (*See, e.g.,* Aplts. App. Vol. 10 at 1828). Specifically, Avon Capital-WY has consistently argued that it was it was not a party

---

[9] As detailed in Appellants' opening appellate brief, these findings of fact are not supported by the record developed in the United States District Court for the Western District of Oklahoma.

to those cases upon which Universitas relies as evidence.[10]  Avon Capital-WY has consistently argued that it must have a fair opportunity to assess and evaluate the evidence upon which Universitas relied in support of summary judgment.  (Aplts. App. Vol. 10 at 1828, 1910)

Avon Capital-WY must, as a matter of law, be afforded a fair opportunity to assess and evaluate the documents from the New York District Court and Connecticut District Court before the District Court can take judicial notice of information contained in those documents for the truth of the matter asserted.  *See, e.g., Nikols v. Chesnoff*, 435 F. App'x 766, 771 (10th Cir. 2011) (requiring a full adjudication of claims against a non-party that would otherwise be required under a civil action).

Universitas also contends that the District Court can take judicial notice of facts from other jurisdictions based on principals of collateral estoppel. (Universitas' Brief pg. 63).  Central to this argument is Universitas' unsupported claim that Avon

---

[10] Curiously, Universitas badly over-reaches on pages 67-68 by stating that an affidavit filed in the New York court was filed on behalf of Avon Capital-WY and that the New York court ruled that Avon Capital-WY was a party to a conspiracy, as the District Court ruled "[t]he post-judgment turnover order issued by the District Court for the Southern District of New York referred only to Delaware and Connecticut entities, making it clear that Avon Capital-WY was not a party to that order." (Aplts. App. Vol. 2 at 382).  Similarly, and contrary to Universitas' assertion on pages 67-68, the Magistrate did not find that Avon Capital-WY was the only Avon Capital entity managed by Caroline Financial Group. (Aplts. App. Vol. 8 at 1744-45).

Capital-WY is in privity with Daniel Carpenter or any judgment debtor under the New York judgment. But Universitas' argument is diametrically opposed to established authority on collateral estoppel. *See, e.g., Merswin v. Williams Cos.*, 364 F. App'x 438, 441 (10th Cir. 2010) ("A district court can take judicial notice of its own decision and records in a prior case involving **the same parties**.") (emphasis added); *Lowell Staats Mining Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1273 (10th Cir. 1989); *Lee v. loanDepot.com, LLC*, No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, at *6 (D. Kan. Aug. 17, 2016) ("A distinction must be carefully drawn between taking judicial notice of the existence of documents in the court file as opposed to the truth of the facts asserted in those documents. . . The Court will not grant his request to take judicial notice of this document."). Universitas cannot assume privity in order to establish *alter ego* liability against Avon Capital-WY.

There is no factual finding that Avon Capital-WY is an *alter ego* of Daniel Carpenter. Therefore, despite Universitas' conclusory statements, Avon Capital-WY and Daniel Carpenter are **not** the same party. *See, e.g., Merswin v. Williams Cos.*, 364 F. App'x 438, 441 (10th Cir. 2010) Thus, Universitas puts the cart before the horse and attempts to use collateral estoppel and privity to prove *alter ego,* while ignoring the requirement that Universitas must establish privity and *alter ego* **first** in order to rely on those documents.

Universitas' sole evidentiary support for the privity issue is the inadmissible evidence identified in the Magistrate Judge's Report and Recommendations.[11] (Universitas' Brief, pg. 63). Here again, Universitas' argument rises and falls on Universitas' assumption that Avon Capital-WY is an *alter ego* of Avon Capital-CT, Avon Capital-NV, and Daniel Carpenter in an effort to prove that Avon Capital-WY is an *alter ego*.

Universitas may not rely on evidence from other cases **without first independently establishing** that Avon Capital-WY is an *alter ego* of the other Avon entities. Universitas puts the cart before the horse and uses collateral estoppel and inadmissible documents to prove *alter ego,* while ignoring that Universitas must establish privity and *alter ego* **first** in order to rely on those documents. Assuming *arguendo* that Universitas had properly plead *alter ego,* Universitas must first establish *alter ego* to request judicial notice and claim collateral estoppel from other proceedings to which Avon Capital-WY was not a party. *See, e.g., Merswin*, 364 F.

---

[11] Universitas' citations do not support a finding of privity between Avon Capital-WY and Carpenter such to justify the application of collateral estoppel. (Universitas' Brief at 63-64). *santMatoos Commer. Corp.* is not factually comparable because it involved the exact same parties in both cases. *Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1212 (10th Cir. 2001) (the underlying suit . . . involves the exact same parties). Here, it is undisputed that Avon Capital-WY was not a party to the New York or Connecticut district court proceedings. Further, contrary to Universitas' characterization of *Gelb,* the Second Circuit did not address the issue of judicial notice or party privity. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986).

App'x at 441; *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1170 (10th Cir. 1979).[12]

### C. Universitas Does Not Meaningfully Respond to Appellants' Argument the District Court Erred in Relying on Inadmissible Evidence from the Chernow (Universitas' Attorney) Declarations.

On page 70 of its brief, Universitas provides a one-paragraph response and, notably, Universitas does not argue that the affidavit testimony by Universitas' attorney is admissible. Instead, Universitas argues that an abuse of discretion did not occur because the District Court "may simply disregard" inadmissible material. (Universitas Brief p. 70) (cit. omitted)

For those reasons identified herein, and in Appellants' opening appellate brief, the Court should vacate the District Court's findings of *alter ego* liability against Avon Capital-WY.

---

[12] Universitas overlooks a crucial distinction. Avon Capital-WY used the documents from those cases against Universitas because Universitas was party to those cases and had the opportunity to be heard, unlike Avon Capital-WY who was not party to those cases and did not have an opportunity to defend itself.

## VIII. REPLY ISSUE EIGHT: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, IT WAS AN ABUSE OF DISCRETION FOR THE DISTRICT COURT TO DENY APPELLANTS' MOTIONS TO STRIKE.

Declarant Benjamin Chernow[13] ("Declarant Chernow") filed two declarations in the underlying post-judgment proceedings and claimed to have personal knowledge of twenty-three exhibits cited in the Chernow Declaration ("Chernow Declarations"). (Aplts. App. Vol. 7 at 1267 (Doc. 193); Vol. 10 at 1665 (Doc. 213)). Declarant Chernow's opinions and conclusions on the named exhibits are material to arguments advanced in Universitas' Motion for Summary Judgment.[14] Universitas relying on its own lawyer to piece together facts and provide testimony of inferences, opinions, and conclusions is improper for a myriad of reasons.

Each of the forgoing exhibits were the subject of litigation and examination in actions before the Southern District of New York and the District of Connecticut. (*See, e.g.,* Aplts. App. Vol. 10 Pg. 1706 ("The discovery was not in the above-captioned proceeding."); Doc. 216, pg. 7 n.3 ("The discovery was not in the above-

---

[13] Benjamin Chernow was an associate attorney in one of the firms which represents Universitas. He is not a witness with personal knowledge in the New York case or this case and he was not deposed in this case. Benjamin Chernow did not appear in the New York case until 2020 – long after the relevant time period passed.

[14] Universitas cited Chernow's declaration 58 times in support of summary judgment.

captioned proceeding.")).[15] Thus, and contrary to Universitas' claim, the exhibits attached to the Chernow Declarations were not originally filed in the record before the District Court.

For those reasons identified herein, and in Appellants' opening appellate brief, it was an abuse of discretion for the District Court to deny the motion strike the Chernow Declarations.

## A. Declarant Chernow Lacked the Requisite Personal Knowledge

Universitas argues that summary judgment evidence need not be admissible so long as the substance of the evidence can be presented in an admissible manner at trial. (Universitas' Brief pg. 72) (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005)). The issue in *Bryant* was whether an affiant had the requisite personal knowledge to accompany a "statistical summary of audits" created based on a review of numerous audit documents. *Bryant*, 432 F.3d at 1123-24.[16] Instead, Declarant Chernow is offering his opinions as to what the documents mean

---

[15] Universitas has acknowledged that some of the evidentiary record which Declarant Chernow seeks to authenticate arises from discovery that occurred outside of the underlying post-judgment proceedings. (*See* Aplts. App. Vol. 10 at 1706 ("The discovery was not in the above-captioned proceeding.").

[16] The *Bryant* court concluded that the affiant had personal knowledge because the affiant had merely copied the numbers from the audits into a formula, but that the affiant would not possess the requisite personal knowledge to provide an opinion on the audits. *See id.*

and what impact those documents have as to the legal status of certain key players. *Bryant* is inapplicable to this case.

With the exception of a screenshot taken of a website, Universitas does not dispute that Declarant Chernow lacked personal knowledge with respect to the other exhibits attached to the second Chernow declaration. (*See, e.g.* Vol. 10 pgs. 1687-1699 (Doc. 215, pg. 10); Universitas' Brief pg. 28).

Universitas also questions why Avon Capital-WY has not argued that the District Court erred in finding the documents authenticated for reasons distinct from the Chernow declarations.[17] (Universitas' Brief pg. 28). The District Court did not conclude the documents could be authenticated. Tellingly, Universitas does not provide a basis upon which the documents could be authenticated. Universitas is making the proverbial red-herring argument.[18]

Declarant Chernow seeks to authenticate – among others – documents produced by parties in actions filed in the South District of New York and the District of Connecticut--actions to which Avon Capital-WY was not a party. And because

---

[17] Avon Capital-WY has consistently argued that Declarant Chernow cannot authenticate the documents attached to the Chernow Declarations. (Aplts. App. Vol. Vol. 10 at 1824 ("Declarant Chernow lacks the personal knowledge necessary to authenticate certain documents.")).

[18] Universitas also contends that Avon Capital-WY's arguments concerning Chernow's lack of personal knowledge are based on the fact he did not execute the "original documents." (Universitas' Brief p. 75). Appellants' Brief presented no arguments concerning Chernow's execution of documents.

Avon Capital-WY was not a party to those actions, Avon Capital-WY has no ability to determine the authenticity of the exhibits attached to the Chernow Declarations. Thus, contrary to Universitas' argument, Avon Capital-WY disputes the authenticity of the exhibits.

Finally, Universitas admits that attorney Chernow lacks the first-hand knowledge necessary to depose opposing counsel, but at the same time claims that Declarant Chernow has the personal knowledge necessary to "discuss" documents originally filed in the "record." (Universitas' Brief pg. 73). Stated another way, Declarant Chernow is unable to testify in the present proceedings because he is both not competent to testify to the facts and lacks the requisite personal knowledge.[19] But Universitas cannot have it both ways. Either Declarant Chernow has personal knowledge, or he does not. The Court can either strike the declaration in its entirety because Declarant Chernow lacks personal knowledge *or* summary judgment should

---

[19] An attorney cannot authenticate documents through a declaration unless the attorney has personal knowledge of the documents that he or she seeks to authenticate and is competent to testify to the documents attached to the attorney's declaration. *See Sellers v. MC Floor Crafters, Inc*., 842 F.2d 639, 643 (2d Cir. 1988); *see also IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263 (D. Kan 1998). An attorney's declaration should be stricken to the extent it seeks to authenticate documents as "true and accurate" copies. *Johnston v. Great Lakes Constr. Co*., 9th Dist. No. 95CA006111, 1996 Ohio App. LEXIS 784, 1996 WL 84632, *3 (Feb. 28, 1996).

be vacated and Avon Capital-WY should be given the opportunity to depose the witness.

This Court should reverse the denial of the motions to strike the Chernow Declarations, and all attached exhibits, based on Declarant Chernow's lack of personal knowledge, and remand the case to District Court with instructions consistent with this finding.

### B.    The Error Is Harmful.

Universitas argues on pages 29 and 73 that the error is harmless, claiming that the District Court expressly did not rely on inferences and/or conclusory statements within the Chernow declarations. (Aplts. App. Vol. 10 pg. 1764 ("The Court will make its own conclusions based on the admissible evidence presented.")).  However, the observation that the District Court will make its own conclusions is not the same as the District Court "expressly" stating that it did not rely on the inferences and/or conclusory statements.

Notably, the Magistrate Judge acknowledged that she was prepared to disregard portions of her analysis if the District Judge decided to strike portions of the Chernow Declarations.[20]  Based on this acknowledgment, the Magistrate Judge

---

[20] *See e.g.,* Aplts. App. Vol. 10 at 1763 ("Should the Court agree with Avon Capital-WY that the Chernow declarations contain 'speculation,' **this Court is prepared to disregard its analysis of certain parts of those declarations**, without needing to strike entire declarations. *See United States v. TDC Mgmt. Corp., Inc.,* 827 F.3d 1127, 1134 (D.C. Cir. 2016) (**deferring to the district court's evaluation of the**

effectively confirms that she relied– at least in part – on statements from the Chernow Declarations. (*See e.g.,* Aplts. App. Vol. 10 at 1763).

Moreover, District Judge Heaton did not address the admissibility of the Chernow Declarations or the evidence attached to the declarations. (*See* Aplts. App. Vol. 10 at 1922). In fact, he made no mention of the Chernow Declarations. (*See id.*).

Universitas also states on page 73 that this issue is somehow "moot" and that Universitas' attorney, Chernow, may testify to his "inferences." There is a significant difference between (1) a party's attorney filing an affidavit to fill in the gaps between the language in a document and the evidence necessary to obtain summary judgment, and (2) a witness with personal knowledge discussing a document/exhibit that is properly authenticated and is admissible.

Universitas contends that the District Court has already denied Avon Capital-WY's prior attempt to strike a declaration filed by Benjamin Chernow based on conclusory opinions. This is incorrect. Avon Capital-WY did not move to strike a declaration, but instead moved for a protective order to enjoin Universitas from post-

---

**admissibility** of portions of a declaration, upon which it relied for 'some factual analyses' and disregarded 'legal conclusions and other deficiencies') (internal quotation marks omitted).") (emphasis added).

judgment discovery into issues that exceeded the scope of the Discovery Order. (*See* Aplts. App. Vol. 4 at 936-942 (Doc. 167)).[21]

Universitas' argument also glosses over the requirement that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e); *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 n. 11 (10th Cir. 1992 (emphasis added)).

## IX. REPLY ISSUE NINE: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, IT WAS AN ABUSE OF DISCRETION FOR THE DISTRICT COURT TO DENY APPELLANT AVON CAPITAL-WY'S REQUEST FOR DISCOVERY.

On pages 80 and 81 of its brief, Universitas argues that Avon Capital-WY was not denied due process. This argument assumes that Universitas had properly plead a cause of action for *alter ego* liability as required for due process. But as detailed above, Universitas never filed a cause of action for *alter ego* liability against Avon Capital-WY.

---

[21] These subpoenas were issued pursuant to this District Court's order granting Universitas leave to conduct up to three depositions by November 25, 2019. (Aplts. App. Vol. 6 at 999-10001 (Docs. 150, 158. Doc. 180 at 2-3)).

Universitas also suggests that Avon Capital-WY waived its right to discovery by (1) not engaging in and undertaking its own discovery during the limited discovery period; and (2) by acknowledging in a Joint Status Report and Discovery Plan that Universitas would seek summary judgment on the issue of *alter ego* liability. (Universitas' Brief pg. 85; Aplts. App. Vol. 6 pg. 1006-09). But Universitas neglects to mention that the District Court directed the parties to file the Joint Status Report to provide the court with a summary of limited discovery conducted by Universitas and to provide each party's position on dispositive motion. *See id.* Universitas indicated it would move for summary judgment, and Avon Capital-WY indicated it would oppose Universitas' motion for summary judgment. *See id.* Universitas also points the Court to an acceptance of sanctions, but the District Court was clearly referring to SDM, not Avon Capital-WY. (Aplts. App. Vol. 8 pgs. 1800-01)

Moreover, Universitas' reliance on *Daniel J. Hartwig Assocs., Inc.* v. *Kanner* is misplaced. (Universitas' Brief, pg. 61 (citing 913 F.2d 1213, 1222-23 (7th Cir. 1990)). The issue before the Seventh Circuit Court of Appeals in *Kanner* was whether it was reversible error for a district court to deny a motion for continuance of trial on a breach of contract action after a period of discovery was made available to a defendant. *See id.* But in the underlying post-judgment proceedings, Universitas did not file a cause of action against Avon Capital-WY. Avon Capital-

WY also did not seek a continuance of trial. No trial was scheduled in this case because a cause of action must be plead to have a trial. *Kanner* is not factually applicable to the underlying post-judgment proceedings.

Declarant Chernow has effectively declared himself a fact witness in this matter by testifying about the contents of documents in which Universitas relies in its Motion for Summary Judgment. Avon Capital-WY would have deposed Declarant Chernow had Universitas disclosed him as a witness. If Declarant Chernow is not offering testimony, then his declaration is futile and pointless. And if he is offering testimony, then Avon Capital-WY is entitled to depose him to explore the bases for his testimony.

Avon Capital-WY <u>has not</u> been afforded complete discovery against a properly plead claim of *alter ego* liability. It is irrelevant whether Universitas had sought and obtained limited discovery to take three depositions. Avon Capital-WY would be deprived of due process under a fair trial required to adjudicate the rights of Avon Capital-WY if it is not permitted leave to depose Declarant Chernow on his opinions and testimony. *See, e.g., Nikols v. Chesnoff*, 435 F. App'x 766, 771 (10th Cir. 2011) (requiring a full adjudication of claims against a non-party that would otherwise be required under a civil action).

It was error for the District Court to deny Avon Capital-WY's motion to stay to allow discovery. Without the benefit of discovery, Avon Capital-WY has been

denied *due process* associated with traditional litigation, including the benefit of discovery and other pretrial motion practice afforded by the rules. *Nikols*, 435 F. App'x at 771; *see also Sproles*, P.2d at 457; *see e.g., GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 464 (Wyo. 2014) (A finding of *alter ego* liability requires a court to undertake a "fact-intensive inquiry and exercise its equitable powers to determine whether piercing the veil is appropriate under the circumstances presented.").  Not only did Universitas fail to plead a cause of action against Avon Capital-WY, doing so deprived Avon Capital-WY of the discovery to which it would be entitled.  There were no Rule 26 disclosures and no witness lists. Instead, Universitas relied on testimony from its own attorney to try to meet its burden at summary judgment.  This cannot be sufficient.

Accordingly, the Court should strike the Chernow Declarations.  Should the Court not strike the Chernow Declarations, summary judgment should be vacated, and Avon Capital-WY should be granted leave to depose fact witness Benjamin Chernow prior to the Court issuing a final ruling on the pending motions for summary judgment.

**X. REPLY ISSUE TEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED AS A MATTER OF LAW IN APPOINTING A RECEIVER BECAUSE IT LACKED JURISDICTION.**

Universitas provides no substantive arguments in response to Issue Ten in Appellants' opening brief on the basis that the District Court's orders entered on September 28, 2021, which appointed a receiver over Appellant Avon Capital-WY are not at issue in this consolidated appeal, are not on appeal in this consolidated appeal because this Court found in consolidated appeal numbers 21-6044 and 21-6049 that these orders were moot. While the District Court acknowledged in its orders entered on August 7, 2023 and August 15, 2023 (the subject of this consolidated appeal) that this Court found it lost subject matter jurisdiction after the registered judgment expired, the District Court did not expressly vacate the receivership orders entered on September 28, 2021. (App. Vol. 16 at 4022) (Doc. 512); (App. Vol. 17 at 4084 (Doc. 521) (Order of Pre-Trial Conference).

In other words, because the District Court did not expressly vacate the receiver appointed over Appellant Avon Capital-WY in its orders entered on August 7, 2023 and August 15, 2023, the District Court's orders entered on September 28, 2021 appointing a receiver over Avon Capital-WY are at issue in this consolidated appeal. And out of an abundance of caution, Appellants included argument in its opening

brief for this consolidated appeal related to the receivership entered by the Court on September 28, 2021.

For those reasons set forth in Issue Ten of Appellants' opening brief, the District Court erred in appointing a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings. (Appellants' Opening Brief, pgs. 74-75). The Court should respectfully vacate the District Court's appointment of a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings and enter an order that directs the District Court to expressly vacate that receivership for lack of jurisdiction. (See App. Vol. 11 at 2576 (Doc. No. 310); App. Vol. 11 at 2585 (Doc. No. 311)).

XI. **REPLY ISSUE ELEVEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN READOPTING ITS JUDGMENT INJUNCTION, AND APPOINTMENT OF A RECEIVER, BECAUSE EVEN IF IT ASSUMED *ARGUENDO* THAT THE JUDGMENT COULD BE ENFORCED AGAINST APPELLANTS, OKLAHOMA LAW EXPRESSLY AUTHORIZES SOLELY THE ENTRY OF A CHARGING ORDER.**

Universitas provides no substantive arguments in response to Issue Eleven in Appellants' opening brief on the basis that the District Court's orders entered on September 28, 2021, which appointed a receiver over Appellant Avon Capital-WY are not at issue in this consolidated appeal, are not on appeal in this consolidated appeal because this Court found in consolidated appeal numbers 21-6044 and 21-

6049 that these orders were moot. (Universitas' brief, pgs. 82-83). For that reasons set forth above in Reply Issue Ten, the District Court's orders entered on September 28, 2021 appointing a receiver over Avon Capital-WY are at issue in this consolidated appeal. (*See Supra,* Reply Issue Ten). And out of an abundance of caution, Appellants included argument in its opening brief for this consolidated appeal related to the receivership entered by the Court on September 28, 2021.

As is more fully briefed in Issue Eleven of Appellants' opening brief, if we assumed *arguendo* that the District Court can regain subject matter jurisdiction over the case and personal jurisdiction over Appellant Avon Capital-WY in the case (and it cannot for those reasons detailed in the foregoing sections) and that Universitas could enforce the New York Judgment against Avon Capital-WY in this case (and it cannot for those reasons detailed in the foregoing sections), a charging order against Avon Capital-WY's membership interest in SDM Holdings is Universitas' "sole and exclusive remedy" to enforce the New York Judgment. 18 O.S. § 2034 (stating that 18 O.S. § 2034 "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest."). the District Court erred in appointing a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings. (Appellants' Opening Brief, pgs. 74-75).

Accordingly, provided that the District Court regained subject matter jurisdiction over the case and personal jurisdiction over Appellant Avon Capital-WY in this case and provided that Universitas could enforce the New York Judgment against Avon Capital-WY in this case, Appellants request this Court enter an order which enforces 18 O.S. § 2034 and finds that Universitas' "sole and exclusive remedy" and only mechanism to enforce the New York Judgment is a charging order. *See, e.g.,* 18 O.S. § 2034 (stating that 18 O.S. § 2034 "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest.").

The Court should respectfully vacate the District Court's appointment of a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings and enter an order that directs the District Court to expressly vacate that receivership for lack of jurisdiction. (See App. Vol. 11 at 2576 (Doc. No. 310); App. Vol. 11 at 2585 (Doc. No. 311)).

## XII. REPLY ISSUE TWELVE: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING PETITIONER'S MOTION TO APPOINT A RECEIVER.

Universitas provides no substantive arguments in response to Issue Twelve in Appellants' opening brief on the basis that the District Court's orders entered on September 28, 2021, which appointed a receiver over Appellant Avon Capital-WY

are not at issue in this consolidated appeal, are not on appeal in this consolidated appeal because this Court found in consolidated appeal numbers 21-6044 and 21-6049 that these orders were moot. (Universitas' brief, pgs. 82-83). As detailed above in Reply Issue Ten, the District Court's orders entered on September 28, 2021 appointing a receiver over Avon Capital-WY are at issue in this consolidated appeal. (*See Supra,* Reply Issue Ten). And out of an abundance of caution, Appellants included argument in its opening brief for this consolidated appeal related to the receivership entered by the Court on September 28, 2021.

For those reasons set forth in Issue Twelve of Appellants' opening brief, if we assumed *arguendo* that the District Court can regain subject matter jurisdiction over the case and personal jurisdiction over Appellant Avon Capital-WY in the case (and it cannot for those reasons detailed in the foregoing sections) and that Universitas could enforce the New York Judgment against Avon Capital-WY in this case (and it cannot for those reasons detailed in the foregoing sections): (1) there was no statutory basis available under 12 O.S. § 1551 (1) for the District Court to appoint a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings; (2) Universitas has failed to meet its burden required to establish application of 12 O.S. § 1551 (6), and the District Court abused its discretion in appointing a receiver pursuant to 12 O.S. § 1551; and (3) Universitas cannot meet

the burden necessary to appoint a receiver over Avon Capital-WY (and the factors weigh in favor of Avon Capital-WY and against the appointment of a receiver).

Thus, the Court should respectfully vacate the District Court's appointment of a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings and enter an order that directs the District Court to expressly vacate that receivership for lack of jurisdiction. (See App. Vol. 11 at 2576 (Doc. No. 310); App. Vol. 11 at 2585 (Doc. No. 311)).

## XIII. REPLY ISSUE THIRTEEN: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN DENYING SDM HOLDINGS' MOTION FOR SUMMARY JUDGMENT.

On page 85 of its brief, Universitas misconstrues SDM's Motion for Summary Judgment and this appellate issue as attacking the *alter ego* ruling; instead, the issue is that SDM Holdings' Motion for Summary Judgment established that SDM Holdings was not liable as a garnishee. As a result, the District Court erred when it denied SDM Holdings' Motion for Summary Judgment.

### A. SDM Did Not Waive Service of Process of the Garnishment Summons and Required Documents.

Universitas does not argue in its brief that SDM Holdings was properly served with the garnishment summons and required documents. Instead, Universitas argues on page 85 of its brief that SDM Holdings waived service of process of the writ of garnishment by appearing before the District Court. Instead of pointing this Court

to evidence that would support a waiver finding, Universitas merely parrots the findings of the District Court, citing to App. Vol. 6 at 1800. There are no facts that support a holding that SDM Holdings somehow waived personal jurisdiction in this case. *See Mallory v. Norfolk Southern Ry.*, 143 S. Ct. 2028, 2043 (2023).

Universitas' argument fails because SDM Holdings was ordered to appear when the District Court issued its Show Cause order and also because SDM Holdings was subpoenaed. (*See* App. Vol. 18 at 4267, 69 (Doc. 32, 42)). SDM Holdings' production of documents pursuant to a subpoena and corresponding with Universitas's counsel, who issued the subpoena on behalf of Universitas, is simply not a voluntary appearance that waives proper service.

Universitas also points to the following language in paragraph 93 of SDM Holdings' Motion for Summary Judgment:

> Plaintiff filed no pleadings in this case. See Docket, generally. SDM was brought before the Court solely in its capacity as a garnishee pursuant to a garnishment summons and pursuant to a subpoena. [Dkt 23, 23-1]

(App. Vol. 6 at 1360 (Doc. 197)). SDM Holdings' statement in its Motion for Summary Judgment that it was a garnishee and respondent to a subpoena, while the Motion for Summary Judgment argues that SDM Holdings was not properly served, does not constitute a waiver of service.

Universitas also points to the District Court's statement that SDM Holdings participated in the filing of a joint status report. SDM Holdings is not a

46

participant/filer of the January 23, 2018 Joint Status Report or the January 29, 2020 Joint Status Report. (App. Vol. 2 at 455-456 (Doc. 99); App. Vol. 4 at 1015 (Doc. 183)). SDM Holdings and Universitas did file a Joint Status Report as ordered by the District Court notifying the Court of their agreement regarding the sanctions amount to be paid by Universitas to SDM Holdings (App. Vol. 1 at 15 (Doc. 136); App. Vol. 3 at 726) (Doc. 137)). Notably, SDM Holdings had not moved for sanctions – the sanctions were awarded because Universitas failed to comply with an order regarding Universitas's motion to compel against SDM Holdings. (App. Vol. 3 at 724) (Doc. 134)).

In conclusion, SDM Holdings did not make a voluntary appearance or voluntarily use court procedures that would constitute consent to the personal jurisdiction of the District Court. *See Hopper v. Wyant*, 502 F. App'x 790, 799 (10th Cir. 2012).

**B.    If The Show Cause Order Is Held To Comply With The Requirement That A Non-Answering Garnishee Be Ordered To Appear And "Show Cause," Then The Order Denying Universitas' Motion For Contempt Resolved The Garnishment.**

Universitas next summarily concludes on page 86 that the resolution of Universitas' Motion for Contempt did not resolve the writ of garnishment. Universitas argues on page 86 that SDM Holdings "continued to litigate," but SDM Holdings filing a Motion for Summary Judgment and Reply to Universitas' Response is not continuing to litigate.

Universitas also states on page 86 that it is somehow "misleading" that Appellants accurately argue in the initial brief that the Joint Status Reports do not describe any claims, garnishment or otherwise, against SDM Holdings. (App. Vol. 2 at 455-456 (Doc. 99); App. Vol. 4 at 1015 (Doc. 183)). Well, Universitas fails to point the Court to where such claims are located for a simple reason – the claims are not there. Instead, Universitas cobbles together a weak argument that by stating that Universitas wished to collect its New York judgment from Avon-WY, it somehow provides notice that Universitas was going forward with the garnishment claim against SDM Holdings. Universitas' argument is unpersuasive and not supported by the appellate record. Universitas also points the Court to its Response to SDM Holdings' Motion for Summary Judgment (App. Vol. 7 at 1605 (Doc. 206) in which Universitas asserts that it now wants to prosecute the garnishment action, but this Response is long after the ship sailed on the garnishment claim.

**C.    The Uncontradicted Kehoe Affidavit Establishes As A Matter of Law That SDM Is Not Liable As A Garnishee Under Oklahoma Law.**

SDM Holdings' Motion for Summary Judgment (App. Vol. 5 at 1265-66) (Doc. 192)) argues the Kehoe Affidavit contains the necessary language stating that SDM Holdings does not possess assets of a judgment debtor and is not indebted to a judgment creditor. (App. Vol. 5 at 1265-1266 (Doc. 192-1); App. Vol. 8 at 1955-1956 (Doc. 231-2)). "The answer of the garnishee shall in all cases be **conclusive of the truth of the facts therein stated**, with reference to the garnishee's liability to

the defendant unless the judgment creditor shall within twenty (20) days from the receipt of the garnishee's answer, from the date of the deposition of the garnishee, or from receipt of the garnishee's answers to interrogatories, whichever is later, serve upon the garnishee or the garnishee's attorney of record personally or by certified mail, return receipt requested, a notice in writing that the judgment creditor elects to take issue with the garnishee's answer . . ." 12 O.S. § 1177 (emphasis added).

The Kehoe Affidavit was filed on February 28, 2020. (App. Vol. 8 at 1955-1956 (Doc. 231-2)). Universitas did not file a written notice challenging the Kehoe Affidavit on or before the expiration of 20 days. (App. Vol. 1 at 20-21 (Docs. 196-205) Contrary to Universitas' statement there is no real dispute whether Avon Capital-WY owns SDM Holdings, because Universitas did not file a written notice as described in the statute, the Kehoe Affidavit is "conclusive of the truth of the facts" stated in the Kehoe Affidavit. *See* 12 O.S. § 1177.

**D.      Universitas Produced No Summary Judgment Evidence In Support of Universitas' Argument That SDM Is Liable As A Garnishee.**

SDM Holdings' Motion for Summary Judgment (App. Vol. 5 at 1266-67) (Doc. 192)) argued that Universitas could not meet its garnishment burden of proof, which placed the burden of producing summary judgment evidence upon Universitas. *See Celotex*, 477 U.S. at 325. Critically, Universitas did not provide any summary judgment evidence relevant to the garnishment issue in Universitas' Response, as Universitas' exhibit is a 2010 declaration filed in California that does

not mention SDM Holdings. (App. Vol. 7 at 1601, 1611)  As a result, put simply, SDM Holdings was entitled to summary judgment on the garnishment claim.

Tellingly, Universitas argues on page 87 that there was evidence that Avon Capital-WY owns SDM Holdings, and points the Court to App. Vol. 20 at 4363-66 (Doc. 188). This document (Doc. 188) was not an exhibit to and is not referenced in Universitas' Response to SDM Holdings' Motion for Summary Judgment. (App. Vol. 7 at 1601)  Further, Universitas conflates the summary judgment issue and the issue in this appeal – that SDM Holdings as a garnishee possesses no Avon Capital-WY assets and is not indebted to Avon Capital-WY – with the ownership structure of SDM Holdings.

Accordingly, Universitas failed to come forward with summary judgment evidence that SDM Holdings possesses assets of Avon Capital-WY or that SDM Holdings is indebted to Avon-WY, and SDM Holdings is entitled to summary judgment on the garnishment action.

## XIV. REPLY ISSUE FOURTEEN (REPLYING TO UNIVERSITAS' RESPONSE ISSUE ONE): SDM HOLDINGS HAS STANDING TO PRESENT ISSUES IN ADDITION TO THE DENIAL OF SDM HOLDINGS' MOTION TO QUASH THE GARNISHMENT SUMMONS.

On page 32 of its brief, Universitas argues that SDM Holdings lack standing and cites this Court to *Aquila, Inc. v. C.W. Mining Co.*, 659 F. App'x 504 (10th Cir. 2016) (unpublished). The *Aquila* Court held a post-judgment garnishee was not a party to the litigation and thus lacked standing to appeal district court order renewing judgment. *Id.* Notably, Univeritas unsuccessfully argued this issue in the first appeal. *Universitas Educ., LLC*, No. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, *13 n.4 (10th Cir. August 4, 2023) ("This Court is obligated to consider questions of Article III jurisdiction sua sponte. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004); (App. Vol. 16 at 4003 (Doc. 510, FN 4) (Order and Judgment Dated August 4, 2023) ("[I]t is of no consequence whether Universitas is correct that SDM Holdings lacks standing to appeal the district court's judgment on jurisdictional grounds.")

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Appellant Avon Capital-WY and Appellant SDM Holdings, pray that the Court vacate the District Court's injunction against Avon Capital-WY (and its membership interest in SDM Holdings); vacate the District Court's reentry of its February 11, 2021 order and entry of its September 22, 2021

order for lack of case and controversy, and for lack of jurisdiction pursuant to 12(b)(1) and 12(b)(2); vacate all orders of the District Court that followed the loss of jurisdiction pursuant to 12(b)(1) and 12(b)(2), and assess all fees, expenses, and costs against Appellee Universitas related to the receiver and the receivership appointed over Avon Capital-WY; and remand with direction for the District Court to terminate proceedings based on its loss of subject matter jurisdiction and personal jurisdiction on December 3, 2020 when the New York Judgment expired, and that upon expiration of the New York Judgment the District Court could not regain subject matter jurisdiction and personal jurisdiction over Appellants without Appellee Universitas having filed the New York Judgment in a new action (and with a new case number) and upon service of process having been properly effected on each Appellant.

Provided that the Court does not grant the foregoing relief, and the District Court is held to have regained subject matter jurisdiction and personal jurisdiction over Appellants (and it has not)**,** Appellants prays that: (1) the District Court's finding on Petitioner/Appellee Universitas Education, LLC's unpled theories for veil piercing and *alter ego* liability against Appellant be reversed, (2) the District Court's denial of Appellants respective  motions for summary judgment be reversed and summary judgment be entered in favor of Appellants on their respective motions for summary judgment, (3) the District Court's denial of Appellants motions to strike

the Chernow Declaration be reversed; (4) vacate the District Court's appointment of a receiver over Avon Capital-WY (and its membership interest in SDM Holdings), and (6) that Avon Capital-WY receive such other relief to which it is justly entitled, including the costs for this appeal.

/s/ Alan L. Rupe
Alan L. Rupe
Francis Michael Schneider
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:  (316) 609-7900
Facsimile:   (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com

*Attorneys for Appellant Avon Capital, LLC, a Wyoming limited liability company*

/s/ Jeffrey R. Sandberg (w/consent)
Jeffrey R. Sandberg
PALMER LEHMAN SANDBERG, PLLC
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: 214-242-6444
Facsimile: 214-265-1950
jsandberg@pamlaw.com

*Attorneys for Appellant SDM Holdings, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Universitas did not request oral argument. (Universitas' Brief pg. 90). Avon Capital-WY and SDM maintains their request for oral argument. (Appellants' Brief pg. 105).

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word count for the principal reply brief is equal to 12,655, or less than 13,000 words authorized by the Court in its April 19, 2024 Order.

This brief complies with the typeface requirements of Tenth Circuit Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using a 14-point Times New Roman font.

/s/ Alan L. Rupe
Alan L. Rupe

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, I electronically filed the foregoing Appellants' Reply Brief with the Clerk of Court and will mail seven (7) hard copies to the Court.

/s/ Alan L. Rupe_____
Alan L. Rupe

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                                   Petitioner,

                -against-

NOVA GROUP, INC.,

                                   Respondent.

-------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT $475$ |
| ELECTRONICALLY FILED 08/12/2014 |

11 **CIVIL** 1590 (LTS) (HBP)
11 **CIVIL** 8726 (LTS) (HBP)

## JUDGMENT

Whereas following entry of judgment in its favor in the above captioned-actions, Universitas Education, LLC ("Petitioner") having moved seeking, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") section 5225(b) and Federal Rules of Civil Procedure 69, the turnover of assets by respondent Daniel E. Carpenter and his affiliated entities Grist Mill Capital, LLC, Grist Mill Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management, LLC (with Carpenter, the "Turnover Respondents"), as well as permanent injunctive relief barring the transfer by the Turnover Respondents of money and assets, including certain specified insurance policies, until Petitioner's judgment against Nova Group, Inc., has been satisfied (Docket entry no. 308 in case number 11 Civ. 1590); Mr. Carpenter and certain third parties having moved to modify the temporary injunction to allow transactions between themselves and certain of the Turnover Respondents (See docket entry nos. 409, 412, and 448 in 11 Civ. 1590), and the matter having come before the Honorable Laura Taylor Swain, United States District Judge, and the Court, on August 7, 2014, having rendered its Memorandum Opinion and Order granting Petitioner's turnover motion, granting Petitioner money judgments as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $ 11,140,000.00;

against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; directing the Clerk of the Court to enter judgment against the Turnover Respondents accordingly; Liability under the judgment is joint and severally; denying as moot Petitioner's request for permanent injunctive relief; denying each of the third-party motions to modify the preliminary injunction, docket entry numbers 409, 412, and 448 in 11 Civ. 1590, as the primary injunction is hereby terminated pursuant to the provisions of the January Order, because Petitioner's motion for turnover has been resolved, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated August 7, 2014, Petitioner's turnover motion is granted; Petitioner is hereby granted money judgments against the Turnover Respondents as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly and severally; Petitioner's request for permanent injunctive and other equitable relief are denied; each of the third-party motions to modify the preliminary injunction, docket numbers 409, 412, and 448 in 11 Civ. 1590 are denied as moot, as the preliminary injunction is hereby terminated pursuant

to the provisions of the January Order, because Petitioner's motion for turnover has been resolved.

**Dated:**  New York, New York
August 12, 2014

**RUBY J. KRAJICK**

BY: _____
**Clerk of Court**

_K. Mango_
_____
**Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _8/12/2014_

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

_____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | ) | |
| | ) | |
| **Petitioner/Judgment Creditor,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AVON CAPITAL, LLC,** | ) | |
| | ) | |
| **Respondent/Judgment Debtor,** | ) | |
| | ) | |
| **ASSET SERVICING GROUP, LLC,** | ) | |
| | ) | **Case No. 14-FJ-05-HE** |
| **Respondent/Garnishee,** | ) | |
| | ) | |
| **SDM HOLDINGS, LLC,** | ) | |
| | ) | |
| **Respondent/Garnishee,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **AVON CAPITAL, LLC, a Wyoming Limited Liability Company,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

## REPORT AND RECOMMENDATION

# <u>Table of Contents</u>

I.  INTRODUCTION. ........................................................................ 1

II.  BACKGROUND. ...................................................................... 4

    A. Universitas was the sole beneficiary to certain life insurance
       proceeds. ...................................................................... 4

    B. Universitas did not receive those proceeds. ......................... 5

    C. The creation of the three Avon Capital, LLC entities. ................ 8

    D. The trail of Avon proceeds. ............................................ 11

    E. Avon-CT's transactions. ............................................... 13

        1.  The Ridgewood credit facility agreement. ................ 13

        2.  The Ridgewood facility's funding of Charter Oak Trust policies
           and their resale. .................................................... 16

    F. Avon-WY's transactions. ............................................... 20

        1.  The SDM purchase. ............................................ 20

        2.  Andrew Terrell consults for Avon-WY. ..................... 25

        3.  Avon-WY's 2010 "unloading" of Avon-CT's life insurance
           policies. ............................................................. 26

III.  THIS COURT HAS SUBJECT MATTER JURISDICTION. ................... 29

IV.  THE EFFECT OF THE REGISTRATION OF THE JUDGMENT. ........... 33

V.  THE COURT DENIES THE MOTIONS TO STRIKE THE CHERNOW
    DECLARATIONS. ...................................................................... 34

VI.  THE COURT CONSIDERS UNIVERSITAS'S AND AVON-WY'S MOTIONS FOR
    SUMMARY JUDGMENT. ............................................................ 36

    A. Standard of review. ...................................................... 36

B. The Court grants Universitas's motion for summary judgment: Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor. ................................................................ 38

    1. Fraud confirms this. ........................................................ 42

        a. Lack or inadequacy of consideration. ......................... 43

        b. Close familial relationship or friendship among the parties. ............................................................... 44

        c. Retention of possession or benefit of the property transferred. .......................................................... 46

        d. Change in financial condition of transferor in relation to the transfer. ....................................................... 47

        e. Chronology of events surrounding the transfer. ........... 47

        f. Transfer takes place during the pendency or threat of litigation. ........................................................... 50

        g. Hurried or secret transactions. .................................. 51

        h. Conclusion. ......................................................... 53

    2. Undercapitalization confirms this. ..................................... 54

    3. Intermingling confirms this. .............................................. 56

    4. Injustice confirms this. ..................................................... 60

    5. Conclusion. .................................................................... 61

C. The Court denies Avon-WY's motion for summary judgment. ......... 62

VII. THE COURT DENIES SDM'S MOTION TO QUASH THE GARNISHMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT. ........................................... 65

VIII. THE COURT DENIES UNIVERSITAS'S MOTION TO STRIKE SDM'S MOTION TO QUASH AND ITS REQUEST FOR SANCTIONS AGAINST SDM. ....................... 67

IX. CONCLUSION. .................................................................... 68

X. RECOMMENDATIONS AND NOTICE OF RIGHT TO OBJECT. ......................... 69

## I.   INTRODUCTION.

Petitioner Universitas Education, LLC seeks enforcement of a $6,710,065.92 judgment entered in its favor on August 12, 2014 by the United States District Court for the Southern District of New York ("*Nova SDNY Litig*[*ation*]."). *See* Doc. 1.[1]  The Judgment was against Daniel E. Carpenter and his various entities, including "Avon Capital, LLC." *Id.*  United States District Judge Joe Heaton referred all post-judgment collection matters to the undersigned Magistrate Judge consistent with 28 U.S.C. § 636(b)(3).  Doc. 8.

In November 2014, the Southern District of New York permitted Universitas to register the $6,710,065.92 judgment in this district.  Doc. 1, Att. 2.  After doing so, Universitas sought an examination hearing regarding Judgment Debtor Avon Capital's potential ownership interests in Garnishee SDM Holdings, LLC (SDM).  Intervenor Avon Capital, LLC, a Wyoming LLC (Avon-WY), sought a permanent injunction to prohibit Universitas from enforcing the judgment against SDM or any of Avon-WY's other assets.  Doc. 73.  This Court denied that injunction.  Doc. 92.  Instead, the Court allowed limited discovery "to locate and identify Avon Capital, LLC's assets," to "determine the relationship between three allegedly distinct Avon Capital,

---

[1]     Citations to a court document are to its electronic case filing designation and pagination.  Deposition testimony deviates from this practice by instead using the deposition page number.  Except for capitalization, quotations are verbatim unless otherwise indicated.

LLC entities," and SDM, "in aid of execution" of the judgment.  Doc. 158, at 2 (affirming Doc. 150).

Before the Court, now, are:

(1) Avon-WY's motions to strike two declarations, Docs. 193, 213, and SDM's motion to join Avon-WY's first motion to strike, Doc. 196;

(2) Universitas's motion for summary judgment to impose alter-ego liability on Avon-WY for the full amount of the judgment against Avon Capital LLC, Doc. 186;

(3) Avon-WY's motion for summary judgment dismissing Universitas's claims seeking to pierce the corporate veil, Doc. 194;

(4) SDM's motions to quash garnishment and for partial summary judgment, Docs. 191, 192; and

(5) Universitas's motion to strike SDM's motion to quash, Doc. 208.

In its first motion, Universitas argues that Avon-WY is an alter ego of the two other Avon Capital, LLC entities, and that all three "were operated as a singular Avon Capital, LLC," which is a named judgment debtor.  Doc. 187, at 18.  Universitas asserts Avon-WY's alter-ego status should compel the Court to pierce the corporate veil and reach Avon-WY's assets (namely, SDM) to satisfy the judgment.  *Id.* at 24.  Universitas asks this Court to transfer Avon-WY's ownership of SDM to Universitas to satisfy the judgment, *id.* at 32, and,

if the Court declines to do so, to "enjoin Avon-WY from transferring ownership of SDM elsewhere."  Doc. 201, at 10.

Avon-WY argues it is not a judgment debtor and that Universitas lacks evidence to establish that Avon-WY is "an alter ego of any judgment debtor." Docs. 195, 204.  In support of that contention, Avon-WY filed motions to strike two declarations by Benjamin Chernow, which Universitas included in its Motion for Summary Judgment, Doc. 187, Att. 1, and its Response to Avon-WY's Motion for Summary Judgment, Doc. 205, Att. 1.  *See* Docs. 193, 213.

SDM, in turn, seeks partial summary judgment.  Doc. 192.  It argues that SDM was "never properly served with the garnishment summons," that no claims remain against SDM, and that SDM is neither indebted to nor holds assets of the judgment debtor.  *Id.* at 5-10.  SDM seeks to join Avon-WY's motion to strike the first Chernow declaration, Doc. 196, and moves to quash the garnishment summons.  Doc. 191.  In response, Universitas has moved to strike SDM's motion to quash—in addition to seeking sanctions against SDM, accusing SDM of "improper motion practice."  Doc. 208, at 1.  Specifically, Universitas alleges that SDM's purpose in "filing the same argument three times [is] . . . 'to harass, delay, or increase the cost of litigation.'"  *Id.* at 2.

Having reviewed the parties' extensive submissions, the undersigned recommends the Court (1) DENY Avon-WY's motions to strike, (2) GRANT SDM's motion to join, (3) GRANT Universitas's motion for summary judgment

3

and find that Avon-WY is the alter ego of the two other Avon Capital, LLC entities involved here, (4) DENY Avon-WY's motion for summary judgment, (5) DENY SDM's motions to quash and (6) for partial summary judgment, and (7) DENY Universitas's motion to quash and its request for sanctions against SDM. The undersigned recommends the Court (8) ENJOIN Avon-WY from transferring, alienating, and/or concealing or encumbering its ownership of any interest in SDM; and (9) ENJOIN Avon-WY, Avon-CT, and Avon-NV from transferring, alienating, and/or concealing or encumbering any non-exempt property.

## II.   BACKGROUND.

### A. Universitas was the sole beneficiary to certain life insurance proceeds.

Judge Heaton has provided helpful background in this matter:

> Universitas was the sole beneficiary of several life insurance policies totaling $30 million in proceeds. *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 100-01 (2d Cir. 2015). When the death benefits came due, however, Universitas's claim to those benefits was denied. *Id.* Universitas participated in binding arbitration with the trustee of the benefit plan, and obtained a favorable award. *Id.* The plan trustee sought to vacate the award in the U.S. District Court for the Southern District of New York, but the award was confirmed and judgment was entered for $30,181,880.30. *Id.*

Doc. 92, at 2.

**B. Universitas did not receive those proceeds.**

The Southern District of New York turnover proceeding, referenced above, found that Daniel Carpenter fraudulently transferred $30 million of life insurance policy proceeds from the Charter Oak Trust, of which Universitas was the sole beneficiary.[2]  *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *2 (S.D.N.Y. Aug. 7, 2014) [hereinafter *Aug. 2014 Nova*].

---

[2]     A court may "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).  The Court will not consider these documents for the truth of the matters asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that judicially noticed "documents may only be considered to show their contents, not to prove the truth of matters asserted therein").

Under Rule 201, a court may take judicial notice of adjudicative facts not subject to reasonable dispute at any point in the proceedings.  An adjudicative fact is a fact "concerning the immediate parties-who did what, where, when, how, and with what motive or intent." Fed. R. Evid. 201 advisory committee's note (quoting 2 Kenneth C. Davis, *Administrative Law Treatise* at 353 (1958)).  Adjudicative facts must, by definition, be relevant.  21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104 at 483-84 (1977).

The Court takes judicial notice from this proceeding and from two cases intertwined with the current action.  First, the Court relies on the turnover action (*Nova SDNY Litig.*) between Universitas and judgment-debtor Nova Group, Inc.  *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. CIV-11-1590-LTS-HBP, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012).  Second, the Court cites the criminal action against Carpenter, which the Second Circuit affirmed.  *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016), *aff'd sub nom., United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020).  Both offer adjudicative facts involving the immediate parties and who did what, when, where, how, and with what motive or intent.  Universitas and Avon-WY have also relied on courts' findings, depositions, and other materials from these proceedings.  *See e.g.*, Doc. 195, at 4 n.1 & Att. 5; Doc. 187, Att. 21.

These "fraudulent transfers" were made to a number of shell entities that were under Carpenter's control at all relevant times. *Id.* In fact, Carpenter controlled "hundreds of . . . entities" that he used "to hide assets from [Universitas]." *Id.* From May 2009 to October 2010, some of those entities were: Nova Group, Inc. (Nova); Charter Oak Trust; Grist Mill Capital, LLC (Grist Mill Capital); Grist Mill Trust Welfare Benefit Plan (Grist Mill Trust); Grist Mills Holdings, LLC (Grist Mill Holdings); Phoenix Capital Management, LLC (Phoenix); Caroline Financial Group, Inc. (Caroline Financial); Avon Capital, LLC; and Carpenter Financial Group (Carpenter Financial). *Id.* at *2. Of these, Nova, Grist Mill Capital, Grist Mill Trust, Grist Mill Holdings, Phoenix, Avon, and Carpenter Financial[3] are all either judgment debtors or alter egos of judgment debtors. Doc. 147, Att. 29, at 2-3.

The *August 2014 Nova* court also identified Wayne Bursey (President of Nova and Trustee of Charter Oak Trust) as "Mr. Carpenter's confederate in the fraudulent transfers." 2014 WL 3883371, at *2. And Bursey "was the only signatory on the Charter Oak Trust accounts." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 6123104, at *2 (S.D.N.Y. Nov. 20, 2013) [hereinafter *Nov. 2013 Nova*].

_____

[3]    Carpenter Financial Group, LLC is also an alter ego of a judgment debtor. Doc. 147, Att. 29, at 2.

6

The *August 2014 Nova* court stated that "Avon was controlled by its managing member, Grist Mill [Capital], which is wholly owned by its members Grist Mill Holdings and Caroline Financial [ ]both of which were wholly owned by Mr. Carpenter."   2014 WL 3883371, at *3.   Carpenter is Chairman of Caroline Financial.   *Id.*   Caroline Financial served as a member of both Grist Mill Capital and Grist Mill Holdings.[4]   Doc. 205, Att. 2, ¶¶ 1, 25.   And, as noted, Grist Mill Holdings also was a member of Grist Mill Capital.   *August 2014 Nova*, 2014 WL 3883371, at *3.   In his testimony, Carpenter admitted Grist Mill Holdings is his "alter ego for collecting commissions."   *Id.*

During Carpenter's criminal trial, the trial court stated "[t]he evidence establishe[d] beyond a reasonable doubt that [Carpenter] conspired with . . . Don Trudeau, among others" to commit life insurance fraud.[5]   *Carpenter*, 190 F. Supp. 3d at 299.

---

[4]    The *Nov. 2013 Nova* court stated Grist Mill Capital's members were Caroline Financial Group, and Grist Mills Holdings, and that Bursey was a manager.   2013 WL 6123104, at *3.   Grist Mill Capital's Articles of Organization list Jack Robinson and Bursey as its managers.   Doc. 147, Att. 13.   Robinson is an attorney and manager of Grist Mill Capital, and is affiliated with several of Carpenter's entities and served as general counsel of Benistar Admin Services (Benistar or BASI) "for a period of time."   Doc. 187, Att. 6, at 42; *id*. Att. 12; *see also* Doc. 147, Att. 31.   Robinson is also Nova's former attorney.   *Nov. 2013 Nova*, 2013 WL 6123104, at *2.

BASI is one of the entities the *Carpenter* court found Carpenter controlled.   190 F. Supp. 3d. at 273.   BASI provided administrative services to other Carpenter-controlled entities, and their employees "received their paychecks from BASI."   *Id.*

[5]    Trudeau is one of Carpenter's affiliates and served in different roles in

## C. The creation of the three Avon Capital, LLC entities.

On June 6, 2006, Avon Capital, LLC filed articles of organization with the Nevada Secretary of State, forming a Nevada limited liability company (Avon-NV).  Doc. 57, Att. 1, at 3-4.  Avon-NV's managing member was Grist Mill Capital.  *Id.* at 3.  Trudeau testified he did not have "any involvement" with Avon-NV.  Doc. 187, Att. 6, at 23, ln. 19.

On November 21, 2006, Bursey, as the organizer, filed articles of organization on behalf of Avon Capital, LLC with the Connecticut Secretary of State, forming a Connecticut limited liability company (Avon-CT).  Doc. 57, Att. 2, at 1.  At the time of incorporation, Bursey and Robinson were listed as its managers.  Doc. 147, Att. 17; Doc. 195, Att. 2.  Trudeau testified that he, Bursey, and Robinson served as managers of Avon-CT around November 2006.  Doc. 187, Att. 6, at 41, lns. 14-21.

On May 18, 2007, Avon Capital, LLC filed articles of organization with the Wyoming Secretary of State, forming a Wyoming limited liability company (Avon-WY).  Doc. 147, Att. 6.  Avon-WY was administratively dissolved in June 2009 for failure to maintain a registered agent, and Trudeau, acting as principal, applied to reinstate it on November 15, 2010.  *See id.* Att. 9; Doc. 57,

---

Carpenter's enterprises.  *See, e.g.*, Doc. 147, Att. 31 (listing him as director of BASI).  "Don Trudeau was the President of BASI, and [Carpenter]'s wife, Molly Carpenter, was its Chairman."  *Carpenter*, 190 F. Supp. 3d at 273.

Att. 6, at 3.  Avon-WY was again administratively dissolved in July 10, 2011 for tax reasons, and Trudeau reinstated it on November 28, 2011.  Doc. 57, Att. 6, at 2-3.

At the time of incorporation in 2007, and after its reinstatements, Caroline Financial was Avon-WY's manager.[6]  Doc. 147, Att. 6; Doc. 57, Att. 6. Counsel for Avon-WY has stated that Trudeau served as a member and officer of Avon-WY before its 2010 reinstatement.  Doc. 187, Att. 11; *see also* Doc. 171, Att. 4, at 2, lns. 2-3; Doc. 58.  Trudeau testified he was "the managing member" after reinstating Avon-WY.  Doc. 187, Att. 6, at 17-18.  Caroline Financial also continued to serve as managing member after Avon-WY's reinstatement.  *Id.* Att. 11; Doc. 147, Att. 8.  Trudeau was the only authorized signatory for Avon-WY.  Doc. 187, Att. 10, at 232, lns. 22-24.

Avon-WY was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  Doc. 171, Att. 4, at 2, lns. 17-25. Avon-CT was also ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  Doc. 187, Att. 4, at 2, lns. 18-28.  In 2010, Avon-NV was also ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  *Id.* Att. 5.  Avon-WY, Avon-CT, and Avon-NV each had its principal address at 100 Grist Mill Road, Simsbury, CT

---

[6]     Trudeau also stated that Caroline Financial was Avon-WY's managing member in July, 2010.  Doc. 171, Att. 4, at 2, ln. 23.

06070.  *See* Doc. 92, at 5; Doc. 147, Atts. 6, 13; Doc. 57, Att. 1.[7]  Carpenter controlled both Caroline Financial and Carpenter Financial.  *August 2014 Nova*, *Aug. 2014 Nova*, 2014 WL 3883371, at \*3.  Bursey listed the same Grist Mill address as his business and residential address.  Doc. 147, Att. 17.  Grist Mill Capital (managing member of Avon-NV), Grist Mill Trust, and Grist Mill Holdings also have the same address.  Doc. 92, at 5 n.4.  Trudeau testified Benistar has its offices at the same address.  Doc. 195, Att. 5, at 14, lns. 9-11.

In November 2013, Carpenter averred he served as chairman of Caroline Financial, which in turn served as the managing member of Avon-WY.  Doc. 147, Att. 8; Doc. 205, Att. 2, ¶ 1.  The *Nova* courts identified Caroline Financial as one of Carpenter's wholly owned and controlled "shell companies," one of the shell entities he used to hide assets from Universitas.  *Nov. 2013 Nova*, 2013 WL 6123104, at \*5, \*8; *Aug. 2014 Nova*, 2014 WL 3883371, at \*2, \*5, \*8.

Carpenter testified he was "privy" to each of the three Avon Capital entities.  Doc. 147, Att. 5, at 144, lns. 12-16.  He "definitely knew about [Avon-CT]."  *Id.* lns. 15-16.  According to Carpenter, unlike Avon-WY, Avon-NV did not engage in any life settlement transactions.  *Id.* at 146, lns. 3-6.  He also asserted it never had any employees or office space.  *Id.* lns. 10-16.

---

[7]   On November 28, 2011, Avon-WY updated its principal address to 300 1st Stamford Place, Suite 201, Stamford, CT 06902, but retained its mailing address in Simsbury.  Doc. 57, Att. 6, at 2.

Carpenter testified because Wyoming had few prohibitions or regulations for life settlement transactions, he thought "it would be best" to have a Wyoming LLC as opposed to a Nevada or Delaware LLC for those transactions. *Id.* at 147, lns. 2-16. Trudeau similarly testified. Doc. 187, Att. 6, at 18-20. "Carpenter is listed as the signatory on both of Avon Capital's bank accounts." *Carpenter*, 190 F. Supp. 3d at 273.



### D. The trail of Avon proceeds.

Among the fraudulent transfers the *August 2014 Nova* court identified, was a November 11, 2009 $6,710,065.92 transfer from Grist Mill Capital to Avon Capital, LLC. 2014 WL 3883371, at *3. The Avon Capital, LLC account

11

was held at TD Bank, with an account number ending in 4689 (Avon-NV TD bank account).[8]  Doc. 56, at 4; Doc. 57, Att. 1, at 1.

That transfer, like the others the *August 2014 Nova* court outlined, "were without documentation or consideration, a clear sign of fraud."  2014 WL 3883371, at *3.  "Nova and Mr. Carpenter resisted all discovery efforts to determine the whereabouts of [proceeds] after the transfers, and such secrecy further indicates a fraudulent intent."[9]  *Id.*  The court assessed a judgment of that same amount ($6,710,065.92) against Avon Capital, LLC.  *Id.* at *13.

During the month of December 2009, the Avon-NV TD bank account had large-sum withdrawals and deposits to and from bank accounts also controlled by Carpenter.  *See* Doc. 147, Att. 22.   After the November 11, 2009

---

[8]      Carpenter opened that bank account (one of the two "Avon Capital, LLC' accounts maintained in 2009-2010) on May 20, 2009.  Doc. 147, Att. 13; *Carpenter*, 190 F. Supp. 3d. at 273 ("Mr. Carpenter is listed as the signatory on both of Avon Capital's bank accounts.").  Carpenter opened this not long after an unsuccessful attempt to open a Charter Oak Trust account at Bank of America.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 2, at 64 (S.D.N.Y. Oct. 21, 2013) (May 14, 2009 email from Carpenter to Jeffrey Roman at U.S. Trust, Bank of America, complaining "that I was not allowed to do wires any more at [Bank of America] on Avon Capital which is a Company that I created and which has control over millions of dollars of assets in several trust accounts").

[9]      The SDNY sanctioned Nova for its "dilatory conduct during the course of post-judgment discovery," "efforts to frustrate Universitas' enforcement of the judgment," noting the Second Circuit encouraged a sanction aimed at deterring Nova's "persistent and abusive litigation conduct."  *Universitas Educ., LLC v. Nova Grp., Inc.*, No. CIV-11-1590-LTS-HBP, 2016 WL 2944646, at *3-5 (S.D.N.Y. Mar. 31, 2016), *adopted*, Doc. 598 (S.D.N.Y. May 16, 2016).

$6,710,065.92 deposit from Grist Mill Capital, the Avon-NV TD bank account had a November 30, 2009 balance of $6,745,794.16.  *Id.* at 1.  On December 30, 2009, the balance was $938,454.59; and on December 31, 2009, the balance was $160,683.29.  *Id.* at 1, 3.  Some of the transfers in the month included a December 3, 2009 $6.5 million transfer to a TD bank account ending in 7136 (Grist Mill Holdings TD bank account),[10] two deposits late in the month (totaling $1,292,469.36) from a bank account ending in 4697 (Carpenter Financial TD bank account), and wire transfers to H. Thomas Moran.  *Id.* at 1, 3; *see also Carpenter*, No. CR-13-226-RNC, Doc. 207, at 22 (Government Exhibit List) (identifying Grist Mill Holdings and Carpenter Financial TD bank accounts).

### E. Avon-CT's transactions.

#### 1. The Ridgewood credit facility agreement.

Trudeau testified Avon-CT was "originally formed with specific capitalization and transaction structures in mind."  Doc. 187, Att. 6, at 10, lns. 4-6.  "[I]t was part of a joint facility with Grist Mill Capital, a $35 million facility."  *Id.* lns. 13-14.  He testified he thought "Ridgewood[11] was the actual

---

[10]    Doc. 171, Att. 8 (Grist Mill Holdings' TD bank account statement for November 2009 showing the last four digits of 7136 as the account number); *Carpenter*, 190 F. Supp. 3d at 295 (identifying TD bank account ending in 7136 as belonging to Grist Mill Holdings).

[11]    "Ridgewood [Finance Inc.] was a portfolio company" that was "set up as a speciality finance lender.  In this capacity, Ridgewood made loans to other

issuing entity." *Id.* lns. 20-21. "And so all of the assets and activities basically that were conducted in [Avon-CT] were subject to that pledge and credit agreement." *Id.* at 10-11; *see Carpenter*, 190 F Supp. 3d at 279 (outlining Ridgewood credit facility agreement). That agreement, signed by Carpenter as "Chairman of [the] Managing Member" of Avon-Capital LLC, stated the financing was "for the purpose of funding AVON CAPITAL LLC's underlying loan to AVON INSURANCE TRUST on financing premium of a Life Insurance Policy." Doc. 187, Att. 9, at 3, 1; *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3328746, at *2 (S.D.N.Y. July 2, 2013) ("Grist Mill [Capital], Avon Capital, Charter Oak Trust and Avon Insurance Trust are entities that are closely related to Nova Group. As collateral for this loan, Ridgewood Finance, Inc. took a security interest in the life insurance policies held by Charter Oak Trust and Avon Insurance Trust.").

"The parties agreed that Christiana Corporate Services, Inc. . . . would act as the [document custodian] and insurance trustee." *Carpenter*, 190 F. Supp. 3d. at 279. "If Ridgewood decided to fund the policy, it would issue a commitment letter to Bursey, who acted as the trustee of [Charter Oak Trust] and Kathy Kehoe, a Benistar employee."[12] *Id.* If Ridgewood authorized the

---

finance companies, often at high rates of interest." *Carpenter*, 190 F. Supp. 3d at 278-79.

[12]   Kathy Kehoe served as the Manager of the Trust Department of Benistar, since 2003. *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 337,

funding, it "would then direct Christiana to transfer the funds to an account in [Charter Oak Trust]'s name at PNC Bank . . . ." *Id.* at 280.

Trudeau testified that one of the Ridgewood facility's insureds was Rella Waldman, and that Trudeau was involved in that transaction. *See* Doc. 187, Att. 3, at 56; Att. 9. Trudeau further testified he was aware Avon-CT provided support services for Avon Insurance Trust. *Id.* Att. 3, at 57, lns. 14-16.

In a December 2006 letter from Robinson as Grist Mill Capital manager to Christiana, Robinson requested the creation of a custody account for Avon Capital, LLC. *Id.* Att. 12. Even though Avon-CT was the entity involved with the Christiana and Ridgewood transactions, Robinson used Avon-NV's tax identification number which ends in 6827, when opening the bank account. *Id.*; Doc. 57, Att. 1.[13]

The Avon-NV TD bank account records also show wire transfers toward the Waldman life insurance policy. *See* Doc. 187, Att. 13, at 1, 7-8 (reflecting a $44,150.00 outgoing wire to PNC Bank and fee for Waldman policy on Aug. 19, 2009); *id.* at 4, 9 (reflecting a $44,150.00 outgoing wire (including the wire transfer fee) to PNC Bank for the Waldman policy on Oct. 5, 2009).[14]

---

Att. 3, at 1 (S.D.N.Y. Nov. 20, 2013). She was also Assistant Secretary of Nova. *Id.* She currently serves as SDM's manager. Doc. 192, Att. 1, at 3; *see also* Doc. 187, Att. 19, at 64, lns. 7-9.

[13]    In its motion for summary judgment, Avon-WY erroneously states this tax identification number belongs to Avon-CT. Doc. 195, at 4, ¶ 2.

[14]    What Universitas identifies as Avon-NV's general ledger also reflects

## 2. The Ridgewood facility's funding of Charter Oak Trust policies and their resale.

As noted above, this action hinges on the fraudulent transfer from the Charter Oak Trust policies. These policies were stranger-oriented life insurances (STOLI) policies. The *Carpenter* court explained the nature of STOLI policies, life insurance providers' opposition to these policies, and Carpenter's creation of the Charter Oak Trust to serve "as a vehicle for obtaining [these] policies." 190 F. Supp. 3d at 273. Charter Oak Trust planned to "[re]sell life insurance policies on the secondary market, after [the lapse of] a contestability period."[15] *Id.* at 276.

---

holding investment accounts for "R. Waldman" (Account IDs. 1320 and 1322) in the amounts of $1,002,475.00 and $626,300.00. Doc. 187, Att. 14, at 1, 8-9. Although the Avon Capital, LLC general ledger does not specifically state that it is Avon-NV's, the Court can reasonably infer so from the fact that the transactions listed on it reflect transactions that match those from Avon-NV's two bank accounts. *Compare* Doc. 187, Att. 14, at 2-4, *with* Doc. 147, Att. 22 (Avon-NV's TD bank account), at 4-6, *and id.* Atts. 15-16 (Avon-NV's People's bank account, *see infra* § II.G.). Avon-WY and SDM dispute the admissibility of this document, as it has not been authenticated and amounts to hearsay. Doc. 193, at 5-6; Doc. 197, at 15-17. The Court determines the ledger to be supplemental only for purposes of its findings herein.

[15]

> To induce people to participate in [Charter Oak Trust] as straw insureds, the agents used a sales pitch learned from discussions at the 100 Grist Mill Road offices. The prospective insureds were promised free life insurance for two years. They were told that if they died during the two-year period, the policy proceeds would be disbursed to their beneficiaries. After two years, the policy would be sold and the insured could potentially profit from the sale. No effort was made to attract people with an interest in buying long-term life insurance coverage then or later.

Insured Sash Spencer obtained two policies totaling $30 million, the first two policies ever to be placed in Charter Oak Trust. *Id.* at 292. Ridgewood funded both policies. *Id.* at 293. Spencer died in June 2008, within the contestability period. *Id.* Although the insurance provider investigated, the provider "was unable to determine that the two policies were procured for sale on the secondary market" and issued two checks to Charter Oak totaling $30,677,276.75 (the policies' proceeds plus interest), at Bursey's behest. *Id.* ("Mr. Bursey had admonished [the provider] that the trust had a 'fiduciary duty to pay death benefits to the Participant's designated beneficiary.'"). When Bursey told Carpenter about the checks, Carpenter wrote "Big day for all of us . . . check mail and speak only to me . . . only to me. . . . May you be in heaven before the Devil knows you're dead." *Id.*

The *Carpenter* court reviewed a "complex web of corporate entities, bank accounts, and numerous money transfers" to "determin[e] how the defendant and his co-conspirators used the $30 million in policy proceeds." *Id.* at 295. For example, on May 18, 2009, Bursey deposited the two checks from the insurance provider into a TD account in Charter Oak Trust's name, the "account ending in 4548" (Charter Oak TD bank account). *Id.* This account

---

*Carpenter*, 190 F. Supp. 3d at 280-81. "[Charter Oak Trust] was not widely marketed in order to reduce the risk that the true nature of the trust would be revealed." *Id.* at 280.

"had been set up by Mr. Bursey six days earlier." *Id.* Then, on May 21, 2009, Bursey transferred $8,677,276.75 from the Charter Oak TD bank account to a TD account belonging to Grist Mill Capital, the "account ending in 4712" (Grist Mill Capital TD bank account). *Id.* "Prior to this transfer, the [Grist Mill Capital TD bank account] was empty." *Id.* Then, on May 26, 2009, Bursey transferred another $2,186,566 from the Charter Oak TD bank account to the Grist Mill Capital TD bank account. *Id.* "After these two transfers, which were the only ones into the [Grist Mill Capital TD bank account] at the relevant time, the [Charter Oak TD bank account] contained just over $19.8 million." *Id.*

At the same time, the "$19.8 million remaining from the proceeds of the Spencer policies was kept in the [Charter Oak TD bank account], where the entire death benefit had originally been deposited." *Id.* at 296. On October 2, 2009, Bursey denied Universitas's claim to the proceeds. *Id.* at 294. On October 27, 2009, Bursey transferred $19,800,000 from the [Charter Oak TD bank account] to the [Grist Mill Capital TD bank account]." *Id.* Then, just "one day later, $19,000,000 was transferred to the Grist Mill Holdings account ending in 7136." *Id.*

Grist Mill Capital's appointed agent, Peter A. Goldman, testified he had been retained to try to "determine what happened to the $30 million." *Nov. 2013 Nova*, 2013 WL 6123104, at *7. He confirmed there had been $31 million

transferred from the Charter Oak Trust, but he could not explain why any transfers had been made to Grist Mill Capital. *Id.* He also reported Grist Mill Capital's general ledger recorded the $19.8 million as an "unknown deposit." *Id.*

Less than a month later, on November 11, 2009, Avon-NV managing member Grist Mill Capital transferred $6,710,065.92 to "Avon Capital, LLC,"[16] which was deposited to the Avon-NV TD bank account. *See* Doc. 56, at 4; Doc. 92, at 5. The *Carpenter* court also detailed a variety of transactions involving the balance of the Spencer policies, including the funding of additional life insurance policy premiums and the purchasing of real estate in Rhode Island. 190 F. Supp. 3d at 295-96.

---

[16] "Grist Mill Capital . . . and Avon Capital were financing companies that loaned money to other" Carpenter controlled entities, including "Benistar Admin Services, TPG Group, Grist Mill Trust, Grist Mill Capital, Avon Capital, and the Charter Oak Trust." *Carpenter*, 190 F. Supp. 3d at 273. "Mr. Carpenter acknowledged at trial that he controlled [Grist Mill Capital], and documents admitted into evidence show that he signed on its behalf as 'Chairman of Managing Member.' The structure of Avon Capital is less clear. Many of the documents bear Mr. Trudeau's signature. However, Mr. Carpenter is listed as the signatory on both of Avon Capital's bank accounts." *Id.*

19

## Spencer Policies Money Flow



### F. Avon-WY's transactions.

Much transpired between the first time Avon-WY was administratively dissolved, on June 17, 2009, and when Trudeau applied to reinstate it on November 15, 2010. *See* Doc. 147, Att. 9; Doc. 57, Att. 6, at 3.

### 1. The SDM purchase.

On December 30, 2009—while administratively inactive—Avon-WY closed on the acquisition of one hundred percent of the membership interest in SDM. Doc. 147, Atts. 20-21. The total purchase price was $4,395,502.60. *Id.* Att. 19, at 2. The assignors were Jane M. Moran and H. Thomas Moran, II. *Id.* Att. 21. Trudeau served as the authorized signatory for Avon-WY on the Assignment of Membership Interest document and on the Membership Purchase Agreement. *See id.* Atts. 20-21. Trudeau testified that Carpenter "authorized [him] to enter the transaction . . . and make this investment on

behalf of Avon Capital, LLC." *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 280, lns. 11-16 (S.D.N.Y. Sept. 25, 2014).

The purchase agreement required payment of $2,197,751.30 by December 30, 2009, and the balance by January 30, 2010.  Doc. 147, Att. 20, at 1, ¶ 1(a)-(b).  It also required Avon-WY to pay a pre-existing debt Thomas Moran owed to Kirkpatrick Bank.  *Id.* at 2, ¶ 2; *id.* at 4, ¶ 5.6(b).  The agreement bound Avon-WY to a pre-existing servicing contract with Asset Servicing Group (ASG).  *Id.* at 3, ¶ 4.5; *id.* at 14, ¶ 8.2.2.  And, it identified Heritage Group Agency, Inc. and ASG as Thomas Moran's affiliates.[17]  *Id.* at 4, ¶ 5.6; *id.* at 14, ¶ 8.2.2(d).

Although Avon-WY was the signatory to the purchase agreement, a series of payments to Moran came from the Avon-NV TD bank account.  *See also* Doc. 147, Att. 22, at 3-4.  Carpenter and Amanda Rossi[18] served as the authorized signatories on the Avon-NV TD bank account.  *Id.* Att. 14.

---

[17]     Carpenter testified Avon-WY was involved in acquiring "a block of business known as SDM."  Doc. 147, Att. 5, at 148, lns. 7-9.  According to Carpenter, Trudeau introduced him to Thomas Moran, who was the signatory for the purchase agreement on behalf of SDM.  *Id.* lns. 20-21; *Id.* Att. 20, at 25.  And Trudeau testified he signed the agreement at Carpenter's behest.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 280, lns. 11-16 (S.D.N.Y. Sept. 25, 2014).

[18]     Amanda Rossi is Secretary of Nova.   Doc. 147, Att. 14; *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *6 (S.D.N.Y Jan. 4, 2013).  Also, the *Carpenter* court identified Ms. Rossi as a Benistar employee.  190 F. Supp. 3d at 294.

Related payments from the Avon-NV TD bank account include:

- Two December 31, 2009 payments of $777,741.30 and $514,469.36 to Thomas Moran, Doc. 147, Att. 22, at 3 (A March 30, 2010 email identifies the $514,469.36 as "received" by Kirkpatrick Bank, *id.* Att. 23 (per SDM Purchase Agreement, *id.* Att. 20, ¶¶ 2, 5.6));

- A January 4, 2010 payment of $25,000.00 to The Heritage Group, *id.* Att. 22, at 4;

- A January 5, 2010 payment of $175,334.85 to ASG, *id.*;

- A January 5, 2010 payment of $332,766.30 to "Hme, Llc," *id.* (A March 30, 2010 email from an ASG address to Trudeau and

---

[Ms.] Rossi [was] listed as a "Trustee" of Charter Oak Trust in a TD Bank account statement from December 2009 . . . [She was also] listed as a signatory . . . on several bank accounts to which Universitas alleges that Nova Group improperly transferred the insurance proceeds at issue here. It appears, however, that Mr. Bursey—not Ms. Rossi—authorized the deposits to these accounts. At her deposition, Ms. Rossi testified that she was employed only by Benistar . . . , Carpenter Financial [ ,] USB Group, Inc.  She further testified that she performed office-manager work for these three entities, and that she worked as an executive assistant to Mr. and Mrs. Carpenter.

*Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3487350, at *5 (S.D.N.Y. July 12, 2013) (citations omitted), *subsequently vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015).  In part because Bursey signed the deposit slips and endorsed the checks that Nova improperly deposited, the S.D.N.Y. determined Rossi was not "a controlling officer of Nova" because "she did not actually participate in one of the central transactions at issue."  *Id.* at *10.

Andrew Terrell, cc'ing Thomas Moran, identifies this as a portion of the purchase price, *id.* Att. 23); and

- A January 7, 2010 payment of $373,033.83 to Thomas Moran, *id.* Att. 22, at 4.

On June 9, 2010, the Avon-NV TD bank account was closed and its balance of $953,238.84, minus the twenty-five dollar wire transfer fee, was deposited into the only other Avon Capital, LLC bank account of record at this time: a People's United Bank account ending in 3286 (Avon-NV People's bank account). Doc. 147, Atts. 15-16. People's United Bank sent that account's statements to Daniel Carpenter at the Grist Mill address; and Carpenter signed a check to ASG from this account at least once. *Id.* Atts. 15-16; *id.* Att. 27, at 17.

Litigation ensued over the balance due under the Purchase Agreement, and the parties settled. *See* Doc. 187, Att. 19, at 63, lns. 4-6; Doc. 147, Att. 19; *Moran v. Avon Capital, LLC*, No. CIV-10-393-HE, Doc. 58 (W.D. Okla. Feb. 17, 2011) (Stipulation of Dismissal). Payments to Moran, presumably in satisfaction of the SDM Purchase Agreement, continued to come from the Avon-NV People's bank account, of which Carpenter was the signatory. Doc. 147, Att. 25 (including the $75,000.00 Nov. 30, 2010 payment to Thomas Moran and near-monthly $100,000.00 payments thereafter until July 2011).



ASG sent Avon-WY monthly invoices.  *See* Doc. 147, Att. 27, at 1, 5-6, 10-11, 18-19.  ASG sent these invoices to Avon Capital, LLC, at 2187 Atlantic Street, Stamford, CT.  *Id.*  This is the address Avon-WY listed in the Purchase Agreement.  *Id.* Att. 20, at 20, ¶ 10.1.  No other Avon Capital, LLC entity used this address for its mailing or principal address.  And at least one invoice identified Don Trudeau as the contact.  *Id.* Att. 27, at 15.

Regular payments to ASG came from the Avon-NV TD bank account until its closure.  *Id.* at 7, 14.  After the closure of the Avon-NV TD bank account, payments continued, coming instead from the Avon-NV People's bank account.  *See, e.g., id.* at 20-21.  Carpenter signed a check dated December 9, 2010 from "Avon Capital, LLC" to ASG.  *Id.* at 17.

24

Most of the above transactions occurred while Avon-WY was "Inactive-Administratively Dissolved." *Id.* Att. 8. And these transactions continued after Trudeau reinstated Avon-WY in November 2010. *See, e.g.*, *id.* Att. 27, at 15-17.

## 2. Andrew Terrell consults for Avon-WY.

Trudeau also testified that Andrew Terrell, principal of Clermont Capital, provided consulting services for Avon-WY. Doc. 187, Att. 19, at 41, lns. 15-22; *id.* at 42, ln. 2.[19] Trudeau did not know how Terrell received compensation for his services but he did not think the compensation came from Avon-WY. *Id.* Att. 19, at 42, lns. 21-23. Terrell testified that in 2010 he had a consulting contract with Avon, "but sometimes [he] was paid by a different entity." *Id.* Att. 18, Ex. 17, at 11, lns. 5-8 (sealed). Avon-NV's bank records shows Avon-NV made several payments to Terrell during the time he consulted for Avon-WY, and to Clermont Capital. *See, e.g.*, *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 610, Att. 9, at 13, 17 (S.D.N.Y. Nov. 18, 2016) (showing two $15,000.00 wires on March 18, 2010 and May 28, 2010 to "Andrew G. and Maria G. Terrell").[20]

---

[19]   *See also* Doc. 187, Att. 14, at 1, lns. 14-15 (Avon-NV's general ledger showing $359,270.00 owed to Clermont Capital).
[20]   *See also* Doc. 187, Att. 14, at 2, 4-5, 23 (showing Avon-NV's general ledger, which includes three $15,000.00 payments for "Consulting Fees" to Andrew Terrell from the TD bank account in February, March, and May of 2010, and from the Avon-NV People's bank account in June 2010); *id.* at 2-3,

### 3. Avon-WY's 2010 "unloading" of Avon-CT's life insurance policies.

The *Carpenter* court outlined other transactions involving Avon-CT and Avon-WY.  After the 2008 financial crisis, the market for selling Charter Oak Trust policies dried up.  *Carpenter*, 190 F. Supp. 3d at 289.  Trudeau had served as the point person in selling these policies on the secondary market.  *Id.* at 290.  After an unsuccessful year of trying to find buyers, on March 16, 2010, Trudeau wrote Carpenter asking whether he wanted to "unload" two of Charter Oak Trust insureds' policies.  *Id.* at 291.  Carpenter replied, "we want to unload everything" and followed up ten days later, telling Trudeau to "please figure out if we have buyers or not."  *Id.*

Ultimately, Carpenter and his associates devised a way to sell some of the Charter Oak Trust policies to an entity called Life Insurance Fund Elite (Life Elite).  *Id.*  The transactions were accomplished in the following way.  First, Charter Oak Trust "transferred ownership of the policy to an entity known as Yates Worldwide Holdings Ltd."  *Id.*  Bursey signed these agreements on behalf of Charter Oak Trust, while Trudeau signed on behalf of Yates Worldwide.[21]  "Next, Yates Worldwide transferred the policy to Tranen

---

14-15 (showing in Avon-NV's general ledger a credit to Clermont Capital for $100,000.00 in July 2010, $50,000.00 in November 2010, and a total of $100,100.00 in December 2010).

[21]    Yates was registered in the British Virgin Islands, and Avon Capital, LLC owned 50,000 shares.  Doc. 187, Att. 24.

Capital Alternative Investment Fund, Ltd. [and] Mr. Trudeau signed these agreements on behalf of Yates Worldwide, [while] Ken Landgaard[22] signed on behalf of Tranen." *Id.*; Doc. 187, at 15.  Then Tranen transferred the policy to Avon-WY.  *Carpenter*, 190 F. Supp. 3d at 291; Doc. 187, at 15.  Landgaard signed these agreements on behalf of Tranen, while Trudeau signed on behalf of Avon-WY.  *Carpenter*, 190 F. Supp. 3d at 291; Doc. 187, at 15.  "Finally, the policies were transferred from Avon[-WY] to Life [Elite]."  *Carpenter*, 190 F. Supp. 3d at 291.  The *Carpenter* court did not find Carpenter's testimony attempting "to distance himself" from these transactions credible, finding "[i]t is apparent that [Carpenter] knew of and was involved in the transfer of policies to Life [Elite]."  *Id.* at 292.

The Government's Exhibit List from the *Carpenter* criminal action shows the Tranen-to-Avon purchase and sale agreements were dated November 12, 2010.  *Carpenter*, No. CR-13-226-RNC, Doc. 207, at 20 (listed as "Life Insurance Purchase and Sale Agreement . . . from Tranen to Avon" for each of the eleven policies).  At least nine Charter Oak Trust-to-Yates-to-Tranen transactions took place on November 12, 2010.  *See id.* at 20-21 (listing "Life Insurance Purchase and Sale Agreement[s]" between Charter Oak Trust

---

22    Ken Landgaard, who operated Tranen Capital Alternative Investment Fund, served as one of several straw insureds recruited to participate in Charter Oak Trust.  *Carpenter*, 190 F. Supp. 3d at 280.

(listed as COT) and Yates, Yates and Tranen, and Tranen and Avon). Trudeau transferred the policies to Life Elite on November 15, 2010—the very day he first sought to reinstate Avon-WY. *Carpenter*, 190 F. Supp. 3d at 291; *see id.* Doc. 207, at 20 (listing Transfer Agreement and Life Settlements Purchase & Sales Agreements between Avon Capital and Life Elite); Doc. 147, Att. 9; Doc. 187, at 14-15.



That same day, Trudeau also emailed Carpenter "describing the structure of a sale" to Life Elite. *Carpenter*, 190 F. Supp. 3d at 291. And less than an hour later, he emailed Carpenter a flow chart describing the entities involved in the transaction. *Id.* The *Carpenter* court noted Carpenter requested the "ELITe [sic] portfolio ASAP" in response to Trudeau's email regarding the sale of policies to Life Elite on January 11, 2011; Carpenter knew of the transfer of these policies; and that these transfers involved the Ridgewood facility, except for two policies that never belonged to Ridgewood.

28

*Id.* at 292.  In fact, Carpenter was "more than just a willing participant in this conspiracy; he oversaw its development and execution." *Id.* at 299.  The evidence established that Carpenter "intend[ed] to defraud life insurance providers by using misrepresentations to induce them to issue STOLI policies." *Id.*  In doing so, he relied upon Avon-CT's Ridgewood facility,[23] and used Avon-WY as a conduit.  *Id.* at 291-92.  Carpenter did not challenge the district court's findings as to these transactions on appeal.  *See Bursey*, 801 F. App'x 1.

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION.

"[A] federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1270-71 (10th Cir. 1998) (quotation omitted); *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998) (holding that a federal court must always satisfy itself first that it does in fact have subject matter jurisdiction before proceeding in any case, and that there is no such thing as "hypothetical jurisdiction"); *Gold v. Local 7 United Food & Comm'l Workers Union,* 159 F.3d 1307, 1309-10 (10th Cir. 1998) ("*Steel* requires that a federal court satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim—even when the question of the merits is the easier one . . . ."), *abrogation on other grounds recognized*

---

[23]    "[I]t appears that Ridgewood did not know about [Charter Oak Trust]'s transfer of the policies." *Carpenter*, 190 F. Supp. 3d at 292.

*by Styskal v. Weld Cty. Comm'rs*, 365 F.3d 855 (10th Cir. 2004).  Further, "the burden of proving jurisdiction is on the party asserting it . . . ."  *State Farm Mut. Auto. Ins. Co.*, 149 F.3d at 1271 (internal citation and quotation marks omitted).

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).  Federal courts typically exercise ancillary jurisdiction

> for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id.* (internal citations omitted).

This case arguably "involves the second, less common purpose— ancillary jurisdiction over collateral proceedings." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014).  Ancillary jurisdiction is reserved to "subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection

30

and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.").

Ancillary jurisdiction's reach does not extend "beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357. And *Peacock* "cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original' . . . or where 'the relief sought is of a different kind or on a different principle' than that of the prior decree." *Id.* at 358 (internal citations omitted).

*Peacock* involved new allegations of fraudulent transfer that the plaintiff attempted to raise under ERISA. *Id.* at 358-59. The alleged wrongdoing occurred after the entry of the ERISA judgment. *Id.* The Court held that the district court lacked jurisdiction of this "new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case." *Id.* at 359.

"[W]hen postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." *Sandlin v. Corp. Interiors Inc.,* 972 F.2d 1212, 1217 (10th Cir. 1992). Here, Universitas asserts an alter-ego theory. "The cause of action based upon the alter ego theory is a closer case because in theory the court is merely trying to identify the true debtor on the judgment." *Id.* "Alter

ego in its accurate sense involves sometimes complex factual findings of gross undercapitalization or of owners' failure to observe separate corporate existence." *Id.*

"[A]n attempt to hold directors liable for a corporate judgment 'already obtained' is not within the ancillary jurisdiction of the court." *Id.* at 1218 (quoting *H. C. Cook Co. v. Beecher*, 217 U.S. 497, 498-99 (1910)). To be sure, this Court recognizes Universitas is "attempt[ing] to execute, or to guarantee eventual executability of, a federal judgment." *Peacock*, 516 U.S. at 357. And the Court acknowledges the facts underlying Universitas's contentions are not significantly different from those underlying the *Nova SDNY Litigation*, and the relief sought is not of a different kind than in that turnover action. But this Court recognizes the limitation on ancillary jurisdiction that *Sandlin* and *Peacock* set forth.

Avon-WY argues *Peacock* precludes this Court's exercise of ancillary jurisdiction. Doc. 204, at 19. Universitas argues "in any judgment-enforcement action otherwise governed by *Peacock* there may in fact be an independent basis for federal jurisdiction." *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 68 (10th Cir. 2005) (quoting *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1033-34 (10th Cir. 2004)); *see* Doc. 201, at 7-8. And here, that independent basis for subject matter jurisdiction over Universitas's alter-ego claim is diversity of citizenship. Doc. 201, at 8 ("This is a dispute

32

between parties from different states with a matter in controversy exceeding $6 million, and thus this Court has subject matter jurisdiction over this proceeding."); *see also United States v. Vitek Supply Corp.*, 151 F.3d 580, 585-86 (7th Cir. 1998) (rejecting judgment debtor's argument that "federal courts cannot collect debts by piercing the corporate veils of judgment debtors" where an independent basis for jurisdiction exists); *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) ("[The *Peacock*] Court held only that federal jurisdiction over claims leading to an underlying judgment provides no *ancillary* federal jurisdiction over a subsequent, post-judgment alter ego claim.") (citation omitted).   Even assuming without deciding this Court cannot proceed exercising ancillary jurisdiction, this Court agrees—and Avon-WY does not argue otherwise—that diversity of citizenship provides an independent basis for this Court's jurisdiction.  *See also* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523 at 89 (2d ed. 1984) (stating that ancillary jurisdiction "include[s] those acts that the federal court must take in order properly to carry out its judgment on a matter as to which it has jurisdiction").

## IV.   THE EFFECT OF THE REGISTRATION OF THE JUDGMENT.

Under 28 U.S.C. § 1963, a judgment creditor may register one district court's judgment in an action for money damages by filing a certified copy of the judgment in any other district court, thereby giving the registered

judgment "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963. The act of registration serves not merely as a procedural device for the collection of the foreign judgment—registration creates an altogether "new judgment" to be given the same effect as any other judgment entered by the registering court. *Condaire, Inc. v. Allied Piping, Inc.,* 286 F.3d 353, 357 (6th Cir. 2002) (citing *Stanford v. Utley*, 341 F.2d 265, 270 (8th Cir. 1965)). Section 1963 grants by implication "inherent powers to the registering court to enforce those judgments." *Id.*; *see also Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235 n.8 (1998) ("Congress has provided for the interdistrict registration of federal-court judgments for the recovery of money or property.").

## V. THE COURT DENIES THE MOTIONS TO STRIKE THE CHERNOW DECLARATIONS.

The Court addresses Avon-WY's challenges (the first, sought to be joined by SDM) to Chernow's declarations. Docs. 193, 196, 213. Universitas submitted these declarations in support of its motion for summary judgment, and in support of its response to Avon-WY's motion for summary judgment. *See* Doc. 187, Att. 1; Doc. 205, Att. 1.

Avon-WY argues that the Chernow declarations are not based on Chernow's personal knowledge. Doc. 193, at 2-4; Doc. 213, at 3-4. A "declaration used to support or oppose a motion" for summary judgment "must

34

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Universitas responds that Chernow demonstrated his first-hand knowledge based on his review of the documents he introduces in the declarations.  Doc. 209, at 7; Doc. 205, Att. 1, at 1-2 (averring "personal knowledge").  It is not unusual for an attorney to make such declarations, and such declarations should come as no surprise to Avon-WY.  Indeed, Chernow submitted similar declarations in this matter in April and October of 2019.  Doc. 147, Att. 1; Doc. 171, Att. 1.  As Judge Heaton observed, neither Avon-WY nor SDM disputed Universitas's April 2019 allegations, which relied on Chernow's similar declarations.  Doc. 150, at 9 (citing Doc. 149).  And neither objected to Chernow's October 2019 declaration on this basis.

Should the Court agree with Avon-WY that the Chernow declarations contain "speculation," this Court is prepared to disregard its analysis of certain parts of those declarations, without needing to strike entire declarations.  *See United States v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127, 1134 (D.C. Cir. 2016) (deferring to the district court's evaluation of the admissibility of portions of a declaration, upon which it relied for "some factual analyses" and disregarded "legal conclusions and other deficiencies") (internal quotation marks omitted); *Servaas Inc. v. Republic of Iraq*, 686 F. Supp.2d 346, 353 (S.D.N.Y. 2010) ( "[A

35

court] need not 'conduct a line-by-line analysis' [of a declaration] and, instead, may 'simply disregard any material that does not comply with' the Federal Rules of Civil Procedure and/or Federal Rules of Evidence." (citation omitted)), *aff'd,* 653 F. App'x 22 (2d Cir. 2011), *as amended* (Feb. 16, 2011); *see, e.g.*, Doc. 193, at 7 (claiming the "declaration is wrought with speculation").

Avon-WY further argues that the declarations contain impermissible hearsay and conclusory statements.  Doc. 193, at 4-6; Doc. 213, at 2-5.  The Court will make its own conclusions based on the admissible evidence presented.  *See Servaas*, 686 F. Supp. 2d at 353 ("[T]he Court will not make the suggested inferences simply because [Declarant] has suggested them," instead, the court will look at the evidence and "draw its own conclusions based on that evidence." (citations omitted)).

## VI.   THE COURT CONSIDERS UNIVERSITAS'S AND AVON-WY'S MOTIONS FOR SUMMARY JUDGMENT.

### A. Standard of review.

Parties may seek summary judgment in post-judgment proceedings.  *See Env't Cleanup, Inc. v. Ruiz Transp., LLC*, 2017 WL 2080270 (W.D. Okla. May 12, 2017) (ruling on cross motions for summary judgment filed in post-judgment garnishment proceeding).  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Evans v. Sandy*

*City*, 944 F.3d 847, 852 (10th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015) (internal quotation marks and citation omitted).

The Court views "facts in the light most favorable to the non-moving party and "draw[s] all reasonable inferences in [its] favor."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (citations and alternations omitted).  "Even so, the non-movant . . . must marshal sufficient evidence requiring submission to the jury to avoid summary judgment."  *Id.* (brackets and internal quotation marks omitted).

The Court treats cross-motions for summary judgment "separately[—]the denial of one does not require the grant of another."  *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).  In evaluating the parties' cross-motions for summary judgment the Court looks beyond the pleadings and assesses the proof to determine whether there is a genuine need for trial.  *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

37

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

Universitas argues that Avon-WY is an alter ego of Avon-CT and Avon-NV, and that this Court should pierce the corporate veil of all three Avon Capital, LLC entities to satisfy the judgment.  Doc. 187, at 17-32.  Universitas asks for an alter-ego determination based on Avon Capital's fraudulent conduct, inadequate capitalization of both Avon-WY and Avon-CT, intermingling among all three Avon Capital entities, and the three entities' failure to keep corporate formalities.  *Id.*

Avon-WY also seeks summary judgment, arguing that Avon-WY is not a judgment debtor named in the *Nova SDNY Litigation* judgment, that Universitas lacks admissible evidence to prove its alter-ego claim, and that Avon-WY is not an alter ego of any judgment debtor.  *See* Doc. 195.

For the reasons stated in the following alter-ego determination, the Court grants Universitas's motion for summary judgment and denies Avon-WY's motion for summary judgment.

### B. The Court grants Universitas's motion for summary judgment:  Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor.

Universitas argues that Avon-WY is the alter ego of Avon-CT and Avon-NV.  Because Avon-WY is an LLC formed in Wyoming, Wyoming law applies.  *See Clemmer v. D.C. Grp.*, 2014 WL 1509274, *3 (W.D. Okla. Apr. 16,

2014) ("[T]he Oklahoma Supreme Court would most likely . . . look to the Restatement (Second) of Conflicts of Law to decide what substantive law to apply" to resolve the veil-piercing issue, which "provides that [t]he local law of the state of incorporation will be applied . . . .") (internal quotation marks and citations omitted).

Wyoming law requires the presence of certain "exceptional circumstances" to pierce an LLC's corporate veil. *See GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 462 (Wyo. 2014) (reaffirming the "essence" of the Wyoming Supreme Court's veil-piercing analysis). Wyoming law, in determining "whether the limited liability company has been operated as a separate entity, or whether the member has instead misused the entity in an inequitable manner to injure the plaintiff," applies a "fact-driven and flexible" two-prong test. *Id.* at 463.

This two-prong test pierces the corporate veil:

> (1) the limited liability company is not only owned, influenced and governed by its members, but the required separateness has ceased to exist due to misuse of the limited liability company; and (2) the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity.

*Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 799 (Wyo. 2019) (quoting *GreenHunter*, 337 P.3d at 462); *see also id.* at 800 ("[V]eil-piercing is

a fact-intensive inquiry generally not suited for summary judgment.") (quoting *Atlas Constr. Co. v. Slater*, 746 P.2d 352, 355 (Wyo. 1987) (citation omitted)).

"[T]he existence of one or more elements tending to support a showing of legitimacy[, however,] does not always preclude summary judgment." *Terrapin Leasing, Ltd. v. United States*, 1981 WL 15490, at *3 (10th Cir. Apr. 6, 1981) (affirming a veil-piercing summary judgment when "as a whole and in context, the undisputed facts about the operation of this corporation show that it was such a sham that a jury would not be permitted to find it a legitimate shelter against tax claims against its owner and manipulator"); *Oren v. United States*, 1992 WL 79110, at *2 (W.D. Mich. Jan. 7, 1992) ("Taking the facts as a whole in the light most favorable to the plaintiff," the court granted summary judgment to the defendant finding that "[a]lthough some individual facts do favor plaintiff's position, the facts taken as a whole are overwhelming and leave no question of material fact for a jury that the corporation was the [plaintiff's] alter ego.").

In applying the *GreenHunter* test, the Court considers:

1. the existence of fraud,

2. the adequacy of capitalization,

3. "the degree to which the business and finances of the company and the member are intermingled," *Mantle*, 437 P.3d at 799, and

40

4. whether there has been an "injustice or unfairness." *GreenHunter*,
337 P.3d at 464.

The Wyoming Supreme Court has further enumerated a litany of factors
relevant to "justifying a disregard of the corporate entity." *Daniels v. Kerr
McGee,* 841 F. Supp. 1133, 1136 (D. Wyo. 1993) (citing *AMFAC Mech. Supply
Co. v. Federer,* 645 P.2d 73, 77-78 (Wyo. 1982) (citation omitted), *abrogated on
other grounds by Texas West Oil & Gas Corp. v. First Interstate Bank of Casper,*
743 P.2d 857, 859 (Wyo.1987)).  These factors include:  whether a corporation
is truly a separate entity; commingling of funds and other assets; failure to
segregate funds of the separate entities; failure to adequately capitalize a
corporation; the absence of corporate assets and undercapitalization; the use
of a corporation as a mere shell, instrumentality or conduit of an individual or
another corporation; the disregard of legal formalities and the failure to
maintain arm's length relationships among related entities; and the use of the
corporate entity to procure labor, services or merchandise for another person
or entity.  *Kloefkorn-Ballard v. N. Big Horn Hosp. Dist.,* 683 P.2d 656, 661
(Wyo. 1984).  And if the party making an alter-ego claim is "the victim of some
basically unfair device" where the separate existence of the entity is "used to
achieve an inequitable result," a court will also disregard that entity under
Wyoming law.  *AMFAC,* 645 P.2d at 81 (listing, as an example, paying "off a

41

controlling shareholder" with the assets of an insolvent corporation "in preference to a general creditor").

### 1. Fraud confirms this.

Fraud is the only *GreenHunter* factor that by itself can justify piercing the veil. 337 P.3d at 463. Fraud can be actual or constructive. *Id.* Constructive fraud "consist[s] of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another . . . ." *Id.* The party seeking to pierce the veil, however, must prove fraudulent intent. *Mantle*, 437 P.3d at 800. As Avon-WY argues, "[a]ctual fraud must be proven by clear and convincing evidence" while "[c]onstructive fraud must be proven by a preponderance of the evidence." Doc. 204, at 30 (citing *Mantle*, 437 P.3d at 786-89). "Clear and convincing evidence is 'proof which would persuade a trier of fact that the truth of the contention is highly probable.'" *Mantle*, 437 P.3d at 784 (citations omitted).

Among the other "badges of fraud" the Court can rely on to establish fraudulent intent are:

     a.   "[L]ack or inadequacy of consideration";

     b.   "close familial relationship or friendship among the parties";

     c.   "retention of possession or benefit of the property transferred";

     d.   "the financial condition of the transferor both before and after the transfer";

      e.    "the chronology of events surrounding the transfer";

      f.    occurrence of transfer during "threat of litigation"; and

      g.    "hurried or secret transactions."

*Mantle*, 437 P.3d at 789 (citation omitted).

Universitas argues that the Avon entities satisfy "every single badge of fraud." Doc. 187, at 24. It argues that "Avon Capital's actual fraud can be inferred through its fraudulent intent," which was already established from "the initial [fraudulent] transfers of insurance proceeds." *Id.* "[B]ecause of the virtual impossibility of proving actual fraudulent intent[,] . . . this court and [others] have come to rely on inferences and presumptions drawn from the surrounding circumstances." *Mantle*, 437 P.3d at 789 (internal quotation marks and citation omitted); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 WL 1178773, at *3 (S.D.N.Y. Mar. 23, 2016) ("Judge Swain has noted that during discovery, [Nova and] Carpenter 'resisted all discovery efforts to determine the whereabouts of the Insurance Proceeds after the transfers, and such secrecy further indicates a fraudulent intent.'" (quoting *Aug. 2014 Nova*, 2014 WL 3883371, at *3)).

### a. Lack or inadequacy of consideration.

Universitas argues Carpenter "fraudulently transferred the insurance proceeds to Avon-NV" to then fund Avon-WY's SDM acquisition, so the payments were "a continuation of a fraudulent transfer." Doc. 187, at 22. The

*November 2013 Nova* court outlined the fraudulent conveyances that underlie Universitas's claim here.   2013 WL 6123104, at *8 ("[T]he evidence demonstrates that each entity that received Life Insurance Proceeds was controlled by Mr. Carpenter."). And these transactions stemmed from "a single purpose, to remove a portion of the Life Insurance Proceeds from the Charter Oak Trust . . . insulated from the reach of Mr. Carpenter's creditors (and of course, from [Universitas's] claim)." *Id.*

Avon-NV received no apparent consideration for its multiple payments on behalf of Avon-WY or Avon-CT.  Avon-WY did not have a bank account until Trudeau opened one in 2012.[24]   Avon-NV had no employees and appeared to receive no consideration for its payment of Avon-WY's obligations.  *See* Doc. 147, Att. 5, at 146, lns. 10-12.  This factor weighs in favor of a finding of fraud.

### b.  Close familial relationship or friendship among the parties.

Universitas argues that the three Avon entities are part of the several Carpenter-operated entities whose business objectives furthered Carpenter's fraudulent scheme relating to insurance payments.   Doc. 187, at 23-26. Carpenter testified that Nova is a shell corporation.[25]  Counsel for Nova stated

---

[24]   Avon-WY maintains it has more than one bank account, but cites only to the one Trudeau opened in 2012.  Doc. 195, at 5 (citing *id.* Att. 3 and Doc. 187, Att. 8 (sealed exhibit 7)).

[25]   *See Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 47, dep. pg. 76, lns. 3-4.  Doc. 310, Att. 5, contains multiple depositions within

Universitas's money was transferred first to Grist Mill Capital, and then to Grist Mill Holdings, Avon Capital, Carpenter Financial Group, Phoenix Capital Management,[26] and then to Grist Mill Trust.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 90-92.  Each of these is a judgment debtor.  And the *August 2014 Nova* court found Carpenter also controlled Nova, Charter Oak Trust, Caroline Financial, and "hundreds of other related entities."[27]  2014 WL 3883371, at *2.

As to Bursey, who acted under Carpenter's "direction and on his behalf," the two "had a particularly close relationship . . . ."  *Carpenter*, 190 F. Supp.3d at 299, 301.  Regarding Grist Mill Trust, Carpenter, and Bursey served as trustees, and Carpenter's wife, Molly, as signer.  *Nov. 2013 Nova*, 2013 WL 6123104, at *4.  And the *August 2014 Nova* court found Carpenter also controlled Grist Mill Trust.  2014 WL 3883371, at *2.  These familial, and otherwise close, relationships point toward fraudulent intent.  *See Mantle*, 437 P.3d at 789 (citation omitted).

---

one attachment, so for clarity the Court will refer to both the ECF page number and the accompanying deposition page number.

[26] Carpenter testified he was Phoenix's sole officer and director.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 42, dep. pg. 34, lns. 19-24.

[27] *See also Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 37, dep. pg. 16, lns. 15-23 (The number of entities for which Caroline is the managing member and tax matters partner was "too numerous to mention.").

Universitas also argues that "Carpenter owns all three Avon entities" and controls each of their respective managers.  Doc. 187, at 24.  Carpenter Financial, for which Carpenter serves as Chairman, owns 99% of each of the three Avon entities.  Carpenter's dominance over all of the entities involved also weighs in Universitas's favor as to a finding of fraud.[28]

### c. Retention of possession or benefit of the property transferred.

The October 2009 transfer of $19.8 million to Grist Mill Capital was classified as an "unknown deposit."  *Aug. 2014 Nova*, 2014 WL 3883371, at *5. The subsequent transfers from the Avon-NV bank accounts also lack credible explanations.  *Id.* at *10.  After this flurry of transfers, Carpenter, through his control of Avon-WY's managing member Caroline Financial, retained the property (i.e. SDM).  And Carpenter controlled Avon-NV and served as a signatory on its two bank accounts.  This factor weighs in favor of a finding of fraud.

---

[28]    Also of note, through no fault of its own, the *August 2014 Nova* court misstated the identity of the Avon Capital entities, using them interchangeably.  2014 WL 3883371, at *3 ("Avon was controlled by its managing member, Grist Mill [Capital], which is wholly owned by its members Grist Mill Holdings and Caroline Financial Group, Inc., both of which were wholly owned by Mr. Carpenter.").  Of the three Avon entities, Grist Mill Capital managed only Avon-NV.  Doc. 57, Att. 1, at 3.

### d. Change in financial condition of transferor in relation to the transfer.

Carpenter controlled the financial affairs of his entities. *Id.* at *2. No one disputes that Carpenter opened the May 2009 Avon-NV TD bank account, which had a November 30, 2009 balance of $6,745,794.16, a December 30, 2009 balance of $938,454.59, and a December 31, 2009 balance of $160,683.29. He was a signatory on Avon-NV's two bank accounts. Those accounts received funds from the Charter Oak Trust bank account, and then were used to satisfy the obligations of Avon-WY and related Avon-CT/Ridgewood transactions. Avon-NV's change in its financial condition to satisfy Avon-WY's obligations weighs in favor of a finding of fraud.

### e. Chronology of events surrounding the transfer.

Avon-WY argues Universitas's position is "specious" because it cannot show a chain of custody linking Avon-WY to the judgment. Doc. 204, at 30-31. And because the fraud claim is based "on the actions of non-member and non-manager Carpenter." *Id.* at 30. As Judge Heaton noted, Avon-WY did not challenge Universitas's allegations that Avon-NV used Universitas's judgment funds to purchase SDM for Avon-WY. Doc. 150, at 9 (citing Doc. 149). The Avon-NV TD bank account received the funds in November 2009 from the Grist Mill Capital TD bank account, which had previously received the funds from

47

the Charter Oak Trust TD bank account.[29]   Charter Oak Trust held the Avon-
CT/Ridgewood life insurance policies.  *Universitas*, 2013 WL 3328746, at *2.
And Carpenter controlled each of these entities.  Despite others holding titular
authority, Carpenter made all significant corporate decisions; he "exercised
ultimate authority over" the Avon entities' operations.  *Carpenter*, 190 F. Supp.
3d at 286.  In fact, "the formal corporate structure of the various Benistar
Entities had little meaning for the people involved."  *Id.* at 274.

Less than two months after receiving the November 2009 deposit, the
Avon-NV TD bank account began a series of transfers of funds to Moran and
his related entities to satisfy the Avon-WY/SDM purchase agreement.  Doc.
147, Att. 22, at 3.  Also within weeks, monies from that account were
transferred to the Grist Mill Trust, a Carpenter-controlled entity.  *Id.*

Avon-WY's argument that Universitas must trace the entirety of the
purchase price to the Charter Oak Trust/Spencer funds "is illogical."  *Nov. 2013
Nova*, 2013 WL 6123104, at *12.  The *November 2013 Nova* court "decline[d] to
presume that fraudulently conveyed funds, mixed with potentially legitimate
funds, are traceable first to the legitimate funds."  *Id.*  This would "permit[ ]
Carpenter and his affiliates to perpetuate their evasion of the legal obligation
to pay the Life Insurance Proceeds to [Universitas] through manipulation of

---

[29]    *Carpenter*, 190 F. Supp. 3d at 296; *see also Nova SDNY Litig.*, No. CIV-
11-1590-LTS-HBP, Doc. 310, Att. 4, at 21.

money transfers," resulting in inequity.  *Id.* (citing *United States v. Henshaw,* 388 F.3d 738, 741 (10th Cir. 2004) ("[C]ourts exercise case-specific judgment to select the [tracing] method best suited to achieve a fair and equitable result on the facts before them.")).

Avon-WY also misstates Trudeau's involvement:  it states "Trudeau had no involvement with Avon-WY prior to his reinstatement of it in 2011."  Doc. 205, at 18, ¶ 92.  However, before the 2011 reinstatement, Trudeau had reinstated Avon-WY in November 2010, and served as an officer and member of Avon-WY even before its reinstatement.  Avon-WY's counsel previously told this to the Court.  Doc. 187, Att. 11.  This unusual chronology of events, involving Avon-WY's SDM purchase, funded by Avon-NV, and Avon-WY's 2010 transactions related to unloading the Charter Oak Trust Avon-CT/Ridgewood policies, weighs in favor of a finding of fraud.

Avon-WY also argues Universitas never asserted any cause of action against it in the turnover action.  Doc. 204, at 24.  When the Southern District of New York granted Universitas's motion to register the judgment here, it noted no opposition was filed to Universitas's motion.  Doc. 1, Att. 2.  That court granted the motion "for substantially the reasons stated in Universitas' memorandum in support of its motion."  Doc. 1, Att. 2, at 1.  Universitas's motion in turn relied upon Trudeau's February 2013 deposition testimony, where he stated that Avon Capital, LLC had an "indirect interest" in the SDM

policies, and "own[s] a portion of the death benefits." *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 275, lns. 14-20 (S.D.N.Y. Sept. 25, 2014); *id.* at 276, lns. 19- 25; *id.* at 277, lns. 2-3.  Universitas cited the correct standard for registering a judgment in another district.  *Id.* Docs. 485-87.  As outlined above, Trudeau and Carpenter used the Avon entities near interchangeably.  Because of the intentionally opaque and interchangeable structure of Avon Capital, LLC, Universitas reasonably relied upon Trudeau's testimony that Avon Capital, LLC owned at least a portion of SDM's policies. *See also Carpenter*, 190 F. Supp. at 273 (noting in 2016, that "[t]he structure of Avon Capital [was] less clear").

Avon-WY again challenges the Chernow declarations, which the Court addressed above.  Doc. 204, at 5-6.  In making its findings, the Court has taken judicial notice of the turnover action, the criminal trial, and various documents from the Southern District of New York and the District of Connecticut actions. Similarly, the parties have relied upon various documents and testimony in arguing their positions.

### f.  Transfer takes place during the pendency or threat of litigation.

Universitas contends that "[e]very Avon Capital transaction occurred during the pendency of litigation," with Carpenter being "aware of pending litigation over the insurance proceeds when he initially fraudulently

transferred them from [Charter Oak Trust]." Doc. 187, at 25. "[Universitas] had made claim to the [life insurance] funds in June 2008, well before they were transferred out of the Charter Oak Trust account" and "Bursey, on behalf of Nova, acknowledged Nova's legal and fiduciary duty to pay to [Universitas] the [funds] prior to the arbitration." *Nov. 2013 Nova*, 2013 WL 6123104, at *11. The *November 2013 Nova* court found these facts indicated "that Nova knew of the possibility of a law suit to collect the Life Insurance Proceeds[ and] Nova must therefore have believed that it be unable to pay the benefit plan obligation to [Universitas] when it drained its bank account by transferring the Life Insurance Proceeds to Grist Mill [Capital]." *Id.* Additionally, "there was clearly a close association between the entities involved in this transfer, with Mr. Bursey moving the funds to an entity controlled by his brother-in-law, Mr. Carpenter." *Id.* The transfers occurred after Charter Oak Trust had wrongly denied Universitas's claim, and the awareness that it violated a legal and fiduciary duty, weigh in favor of a finding of fraud with respect to this factor.

### g. Hurried or secret transactions.

The transactions underlying the SDM purchase and the 2010 unloading of Charter Oak policies were both hurried and secreted. In its defense, Avon-WY first maintains it was "dormant" from June 17, 2009 to November 11, 2011.

51

Doc. 195, at 4-5, ¶¶ 4-5; Doc. 204, at 20, ¶¶ 4-5.[30]  Universitas argues "Trudeau reinstated Avon-WY the day before Avon-WY sold [the] fraudulently obtained" Charter Oak policies that required the Charter Oak Trust-Tranen-Yates transactions.  Doc. 187, at 32.

Avon-WY was *not* dormant after its administrative dissolution in June 2009.  Far from it.  Less than two months after receiving the fraudulent November 11, 2009 transfer, on December 30, 2009, Avon-WY executed the Purchase Agreement for SDM Holdings.  Doc. 195, Att. 3, at 3-6.  Trudeau, who served as Avon-WY's signatory to that agreement, did so at Carpenter's direction.  The use of the Avon-NV account, rather than one of a party to the transaction, suggests an intent to conceal or hide the source of funds.  And when Trudeau did reinstate Avon-WY in 2010, it was during a flurry of transactions related to unloading a series of Avon-CT/Charter Oak Trust-related policies in November 2010.

These hurried and concealed transactions also tip the scales toward fraudulent intent.  *See Mantle*, 437 P.3d at 789.

---

[30]    In its reply brief, Avon-WY acknowledges "that Avon Capital-WY incurred the obligation to purchase SDM <u>after</u> Avon Capital-WY was administratively dissolved" and that Trudeau was the only signatory for the purchase.  Doc. 214, at 12.

### h. Conclusion.

The Avon Capital, LLC trifecta (CT, NV, WY) earns *Mantle*'s badges of fraud, supported by clear and convincing evidence.  The close relationship of the involved parties, including both family (Bursey was Carpenter's brother-in-law[31]) and apparent friends is not in dispute.  Just as before, "[t]his was an inside transaction involving closely related entities."  *Nov. 2013 Nova*, 2013 WL 6123104, at *9.  Only Avon-NV held the purse strings for all of Avon-WY's transactions.

Avon-WY made the SDM purchase after a series of hurried and complex transactions revolving around Charter Oak Trust's October 2009 receipt of the Spencer insurance proceeds.  *See Mantle*, 437 P.3d at 789.  And Carpenter reaped the benefits of all the transactions.  The Avon-NV TD bank account received the fraudulent transfer in October 2009.  Less than two months later, the inactive Avon-WY signed the SDM deal.  The transactions "were hasty" and "not in the ordinary course of business." *Nov. 2013 Nova*, 2013 WL 6123104, at *10.  Carpenter used the Avon-NV TD bank account to satisfy Avon-WY's obligations, suggesting an intent to conceal the sources of funds. The next year, Carpenter and Trudeau schemed to use Avon-WY to act on Avon-CT's behalf to unload various Charter Oak Trust policies, duping

---

[31]      *Carpenter*, 190 F. Supp. 3d at 273.

Ridgewood in the process. *Carpenter*, 190 F. Supp. 3d at 291-92. The Avon entities' actions, taken together, amount to fraud—and could alone support piercing the veil of the three entities and persuade a trier of fact that the truth of the contention is highly probable. *Mantle*, 437 P.3d at 784; *see GreenHunter*, 337 P.3d at 469.

## 2. Undercapitalization confirms this.

In analyzing undercapitalization, the Court considers "the degree of undercapitalization and the reason for it," such as whether the undercapitalization was by choice or a result of external forces. *Mantle*, 437 P.3d at 799. Inadequate capitalization is determined by "compar[ing] the amount of capital to the amount of business to be conducted and the obligations which must be satisfied." *GreenHunter,* 337 P.3d at 463 (citation omitted).

Universitas argues neither Avon-WY nor Avon-CT had "the capital necessary to fulfill its business obligations," each having "entered into transactions requiring" substantial payments without having bank accounts or assets. Doc. 187, at 27. Avon-WY rebuffs this argument by dismissing Universitas's focus on pre-2010 operations. Doc. 204, at 31-32. And Avon-WY later states that it was adequately capitalized when Trudeau reinstated it, and incorrectly states Universitas does not dispute this. Doc. 214, at 11. Avon-WY did not have a bank account upon reinstatement in 2010 and Avon-NV was

making Avon-WY's SDM payments under the purchase agreement at that time.

Avon-WY argues the Court should focus on "the time period following its reinstatement." Doc. 204, at 32. It contends that Universitas wrongly relies on relating to Avon-WY's operations prior to 2010 *before* it was "administratively restarted for an existence and purpose separate and distinct from prior operations." *Id.*

This is not so. Trudeau, an Avon-WY member in May 2010, reinstated Avon-WY in November 2010, in order to unload the Avon-CT/Charter Oak Trust policies. After reinstatement, Avon-WY still had the same financial obligations to SDM under the purchase agreement it entered into on December 2009, signed by Trudeau. Again, Avon-WY did not even have a bank account until Trudeau opened one in 2012. Yet, before that account was opened, Avon-WY satisfied a host of obligations through the two Avon-NV bank accounts, including the SDM-purchase payments to Moran and consulting fees to Terrell. And Avon-WY facilitated the unloading of the Charter Oak policies in 2010, which involved only Avon-CT and the Ridgewood facility. Neither Avon-WY nor Avon-CT have produced any bank account records for the 2009-2010 period. These factors also weigh in favor of piercing the corporate veil. *See also Kloefkorn-Ballard*, 683 P.2d at 661.

55

### 3.  Intermingling confirms this.

Intermingling looks at business operations, assets, and finances, and requires an analysis of various aspects of the LLC, including commingled assets (such as using the LLC's property as the member's personal property) and separate bank accounts and business records.  *GreenHunter,* 337 P.3d at 464; *see also Mantle*, 437 P.3d at 800 (relying on the following factors to support a finding of intermingling: using the same accounting department, having the same business addresses, having consolidated tax returns, lacking separate sources of revenue from the member, failing to have any independent employees from the member, and "the member manipulated the assets and liabilities such that the member reaped all benefits of the LLC's activities while the LLC was saddled with all losses and liabilities") (citation omitted).

Universitas argues "Avon Capital is a singular integrated entity."  Doc. 187, at 28.  Avon-WY calls this assertion "outlandish (and unsupported)."  Doc. 204, at 32.  It is not.  As this Court has already found, there is plentiful intermingling among the three entities, each of which Carpenter controlled.  Doc. 92, at 5-6.[32]  In 2009-2010, all three entities listed the principal and/or

---

[32]    Trudeau testified that his "interest lied in the operating business."  Doc. 187, Att. 6, at 94, lns. 9-10.  By "operating business," he meant "Avon Capital in its entirety, whether it's [Avon-CT] or [Avon-WY] or whatever, dealt with the assets of the one part of that."  *Id.* lns. 13-15.  This suggests Trudeau also treated the Avon entities interchangeably for operational purposes.

mailing address as 100 Grist Mill Road in Simsbury, CT.   Maintaining the same addresses is "highly probative" evidence.   *See Nov. 2013 Nova*, 2013 WL 6123104, at *9 (noting, in addition, that Carpenter "admits to having established and controlled hundreds of entities" sharing this office).   In April 2016, Carpenter testified he was "privy" to each of the three entities.   Doc. 147, Att. 5, at 144, lns. 14-16.   He testified Avon-NV had no employees or office space.   *Id.* at 146, lns. 10-16.   The Southern District of New York has already adjudged Benistar to be an alter ego of the Judgment Debtors.   Doc. 147, Att. 29, at 2.   Avon-NV was set up by an individual who worked for Benistar.   *Id.* Att. 5, at 144, lns. 19-25.   Though that person was involved in the secondary market for life insurance, Avon-NV did not engage in any life-settlement transactions.   *Id.* at 146, lns. 1-6.

Carpenter testified Avon-WY was formed because "Wyoming has the best laws in the country for doing life settlement transactions."   *Id.* at 147, lns. 2-6.   Carpenter stated he was unaware of who the members of Avon-NV were and that he could not recall if any of his entities were members of Avon-WY. *Id.* at lns. 17-22.   He knew Avon-WY was involved in the acquisition of SDM, because Trudeau had introduced him to the previous owner of SDM, Moran. *Id.* at 148, lns. 4-23.   The Southern District of New York found Carpenter's testimony about his denial of having a relationship with Nova incredible, as well as most of his testimony for other matters in that case, including his

explanations for the purpose of the 2009-2010 transfers of the Charter Oak Trust insurance proceeds.  *See Nov. 2013 Nova*, 2013 WL 6123104, at *2-5; *Aug. 2014 Nova*, 2014 WL 3883371, at *3.  Carpenter, as the signatory on the Avon-NV People's bank account, also signed at least one check to ASG to satisfy a payment Avon-WY owed.

Although Avon-WY vehemently argues it is a separate and distinct entity from Avon-CT and Avon-NV, the facts do not support this contention. Carpenter and Trudeau undertook an elaborate and complex series of actions. They orchestrated transactions among the three Avon entities that ignored legal formalities, which suggests the confusion and overlap was by design, at least in part to continue to hide assets from Universitas.  For example, from 2009-2010, two bank accounts that Carpenter opened using Avon-NV, serviced all three entities.  And Carpenter used the Avon entities interchangeably to suit his needs:  Avon-CT was set up for transactions related to the Ridgewood facility and the Charter Oak Trust, Avon-WY for life settlements, and Avon-NV served as the account holder for each.  Carpenter manipulated the assets and liabilities of the only Avon LLC with an account, Avon-NV.

Carpenter also identified himself as "Chairman of [the] Managing Member of Avon Capital, LLC" in signing the Ridgewood facility agreement, which pertained to Avon-CT.  Doc. 187, Att. 9, at 3.  But Avon-CT's managers were Trudeau, Robinson, and Bursey, while Avon-WY's managing member was

58

Caroline Financial, for which Carpenter served as Chairman. The interchangeable use of the Avon entities caused confusion and deception.

This confusion caused the *August 2014 Nova* court to identify all the judgment debtors as Connecticut or Delaware entities in the turnover action involving Avon Capital, LLC. 2014 WL 3883371, at *7. But, in the same action, Carpenter referred to himself as serving as Chairman of Caroline Financial, which in turn served as the managing member of Avon Capital. Doc. 205, Att. 2, ¶ 1. And again, that is true for Avon-WY—but *not* for Avon-CT. Similarly, the *August 2014 Nova* court identified the judgment debtor's managing member as Grist Mill Capital. 2014 WL 3883371, at *3. And that is true for Avon-NV—*not* for Avon-CT.

Avon-WY argues that it "kept its bank accounts and financial records entirely separate from those of its members" so it is not intermingled with Judgment Debtors. Doc. 204, at 32. This is untrue, at least to the extent that funds from Avon-NV's bank accounts satisfied Avon-WY's payment obligations to Moran for the SDM purchase agreement and satisfied Avon-CT's obligations on the Charter Oak Trust Waldman policy, as Universitas argues. Doc. 187, at 23. And Avon-WY fails to point to any bank account it maintained before 2012.

Avon-CT, Avon-NV, and Avon-WY are "not only owned, influenced and governed by its members, but the required separateness has ceased to exist

due to misuse of the limited liability compan[ies]." *Mantle*, 437 P.3d at 799 (quotation omitted); *see also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 390-91 (4th Cir. 2018) (finding three distinct LLCs that operated as a "single economic entity" with funds "transferred freely among the LLCs" without explanation, including payment of expenses of one LLC by another, were alter egos of a sole member who "utterly dominated and controlled" them); *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) ("The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . .") (quoting *Shamrock Oil & Gas Co. v. Ethridge*, 159 F. Supp. 693, 697 (D. Colo. 1958)).  When looking at the undisputed facts of the three Avon's operations, as a whole, no rational juror could find otherwise.  *See Terrapin*, 1981 WL 15490, at *3; *Oren*, 1992 WL 79110, at *2; *see also Kloefkorn-Ballard*, 683 P.2d at 661.

### 4. Injustice confirms this.

Universitas argues that the Avon entities are "judgment-proof shells" that benefited from Carpenter's fraudulent transfers intended to hide money from Universitas, so affording them veil-piercing protection would result in injustice.  Doc. 187, at 21.  Before the *November 2013 Nova* court, and continuing through this and other related litigation, Universitas "has engaged

60

in wide-ranging discovery efforts in aid of execution of the Judgment, which have been met with vigorous opposition by Nova and its affiliates." 2013 WL 6123104, at *2. As to whether an injustice would result in this case if the Court did not apply the alter-ego doctrine, depriving Universitas of the fruits of its judgment against Avon would result in an injustice. "When, as here, the corporation is a mere dummy and the alter ego of a judgment debtor with no real existence apart from [that judgment debtor], the fiction of the corporation as a separate legal entity [cannot] be used to defeat the rights of the judgment creditor." *Shamrock Oil & Gas Co.*, 159 F. Supp. at 698. Undoubtedly, "the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity." *Mantle*, 437 P.3d at 799 (quotation omitted); *see also AMFAC*, 645 P.2d at 81(holding that when the party making an alter-ego claim is "the victim of some basically unfair device" where the separate existence of the entity is "used to achieve an inequitable result," a court will disregard that entity under Wyoming law); *Kloefkorn-Ballard*, 683 P.2d at 661.

## 5. Conclusion.

A reasonable jury viewing the evidence in the light most favorable to Avon-WY, and drawing all reasonable inferences in its favor, could not find Avon-WY, Avon-CT, and Avon-NV operated as anything but alter egos. The

Court grants summary judgment in favor of Universitas.  *Dewitt*, 845 F.3d at 1306.

### C. The Court denies Avon-WY's motion for summary judgment.

Avon-WY's arguments against an alter-ego determination stress the separateness of the three Avon entities.  Doc. 195, at 14-18.  Avon-WY argues Universitas presents only "generalized claims" and fails to meet its burden to present "specific facts showing a genuine issue for trial."  *Id.* at 10-11; Doc. 214, at 8-14.  Avon-WY maintains Universitas presents no clear and convincing evidence supporting fraud, apart from relying on the bad acts of others.  Doc. 195, at 16-17; Doc. 214, at 5.

Avon-WY argues it must be treated as distinct from its previous iteration.[33]  Doc. 195, at 14.  Avon-WY argues that Carpenter's involvement with Avon-WY was before it became "dormant" when it was administratively dissolved in June 2009.  *Id.*  It argues its current active state was "restarted" by Trudeau for "an existence and purpose separate and distinct from any event . . . prior to 2009."  *Id.*  But, Avon-WY cannot discount the probative evidence

---

[33]   Avon-WY's use of the two reinstatement dates in its briefs only adds to the confusion.  Avon-WY sometimes argues it was dissolved in 2009 at which time it became dormant until being reinstated in 2011, leaving out the first reinstatement and second dissolution.  *See* Doc. 195, at 4-5; Doc. 204, at 20. And other times, Avon-WY uses the 2010 reinstatement as the point in time when its activities became "separate and distinct" from prior operations.  *See* Doc. 195, at 4-5, 14, 17, 18; Doc. 204, at 21.

of alter-ego liability, most notably the purchase of SDM with funds from the Avon-NV TD bank account.

Avon-WY offers as undisputed facts: Trudeau "had no involvement with [Avon-WY] prior to his reinstatement of it in 2011"; Avon-WY "had no liabilities when Don Trudeau administratively reinstated [it]"; and Trudeau reinstated it "for business operations with a purpose separate and distinct from the prior business operations that used the entity." *Id.* at 5 ¶¶ 6, 8-9; *id.* at 14. In making these allegations, Avon-WY cites Trudeau's 2013 testimony, which does not support these assertions. *See id.* Att. 5.

Next, in its reply brief, Avon-WY backtracks and acknowledges that Trudeau held ownership interests in Avon-WY after its first administrative dissolution in 2009, contrary to its prior insistence that he was not involved with Avon-WY before reinstatement. Doc. 214, at 11. Avon-WY also admits it "had an obligation to purchase SDM," and that Trudeau served as the signatory (seemingly admitting Avon-WY was not dormant after this dissolution and again conflicting with its previously stated undisputed facts). *Id.* at 12.

Avon-WY's arguments fail for the reasons outlined above. First, Universitas disputes the argument that Avon-WY became dormant in the period after its administrative dissolution and before it was reinstated by Trudeau for a "different purpose." *See* Doc. 205, at 21. As shown, Avon-WY

63

was in fact very active in the period between dissolution and reinstatement. The relevant period involves the transfers of $30 million of Avon-CT-related Charter Oak Trust life insurance proceeds to various entities, including to Avon-NV's bank account.   Also included is the December 2009 SDM acquisition, which Avon-NV funded on Avon-WY's behalf.  The Charter Oak Trust-Tranen-Yates transactions took place on November 12, 2010.   The transfer from Avon-WY to Life Elite were completed November 15, 2010, the day Trudeau applied to reinstate Avon-WY.

Try as it might, Avon-WY cannot refute Carpenter's control of each of the Avon entities; Trudeau's involvement with Avon-WY (beyond bold factual misstatements that he was not involved until either 2010 or 2011); Trudeau's signing the SDM deal on Avon-WY's behalf in 2009 after the receipt of the Charter Oak Trust monies; the rapid reinstatement of Avon-WY and transactions in the latter half of 2010 timed in tandem with the Charter Oak Trust transactions; Avon-NV's payment of various SDM/ASG-related fees and payments to the Morans and related entities; and Avon-NV's payments to Avon-WY's consultant Terrell.  Avon-NV also funded at least some of Avon-CT's activities, as the Avon-NV TD bank account shows.  *See* Doc. 187, Att. 13, at 1, 4, 7-9 (reflecting two $44,150.00 Waldman policy payments in August and October 2009).

64

Viewing the factual record and making all reasonable inferences in favor on Universitas, the Court denies Avon-WY's motion for summary judgment. The evidence not only weighs in Universitas's favor, but is so one-sided that only Universitas can prevail as a matter of law.  *See Anderson*, 477 U.S. at 252.

## VII.   THE COURT DENIES SDM'S MOTION TO QUASH THE GARNISHMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT.

Because SDM's motion for partial summary judgment contains substantially similar language to its motion to quash garnishment, the Court will address the motions together.  *See* Docs. 191-92.

SDM seeks to quash Universitas's writ of garnishment, arguing in part it "[d]oes not believe any further relief is sought against SDM."  Doc. 191, at 2. SDM also argues it "was not properly served with all of the required documents."  *Id.* at 5.  Universitas responds that SDM has previously "entered an appearance in this proceeding identifying itself as a 'Garnishee'" so even if it was improperly served, it is "properly before the Court as a garnishee."  Doc. 206, at 6.  Universitas also argues "voluntary appearance is equivalent to service" and it "can occur at any point in the proceeding . . . ."  *Id.* (citing *Wagoner v. Saunier*, 627 P.2d 428, 431 n.4 (Okla. 1981)).

SDM argues that its counsel's appearances were for *Respondent* SDM, primarily to respond to a motion for contempt and a motion to compel.  Doc. 211, at 2, 8; Doc. 212, at 4-5.  SDM waived service by its appearance, producing

documents, corresponding with Universitas's counsel, participating in a status conference, filing a joint status report, and winning relief in the form of sanctions. *See, e.g.*, Docs. 113, 115, 134, 137, 142, 148; *Hopper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) ("'[A]n individual may submit to the jurisdiction of the court by appearance,' and voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court." (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-04 (1982))).

In addition to the arguments regarding lack of relief sought and service included in the motion to quash, SDM alternatively argues in its motion for summary judgment that SDM is not liable as a garnishee because it is not indebted to and does not possess assets belonging to the Judgment Debtor. Doc. 192, at 9-10.  SDM makes "the claim of exception on the part of the judgment debtor(s) . . . [that SDM] is neither owned by nor indebted to the actual judgment debtor(s): [Avon-CT] and/or [Avon-NV]." *Id.* at 10 (quoting *id.* Att. 1).  In determining the Avon entities are alter egos, the Court finds they are one and the same for purposes of their liability to Universitas. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 143 (2d Cir. 1991) (stating that once alter-ego status is established, "the previous judgment is then . . . enforced against entities who were, in essence, parties to the underlying dispute[ and] the *alter egos* are treated as one entity").  Because

Avon-WY owns one hundred percent of the membership interests in SDM,[34] SDM possesses assets of a judgment debtor.  *Id.*  The undersigned finds Universitas does seek relief against SDM, as SDM serves as Avon-WY's "most notable asset."  Doc. 92, at 4 n.2.  Viewing the factual record and making all reasonable inferences in favor of the nonmovant, the Court denies SDM's motion for partial summary judgment.

## VIII. THE COURT DENIES UNIVERSITAS'S MOTION TO STRIKE SDM'S MOTION TO QUASH AND ITS REQUEST FOR SANCTIONS AGAINST SDM.

In seeking to strike SDM's motion, Universitas argues that every issue in the motion to quash is "also addressed in SDM's Motion for Summary Judgment <u>and</u> SDM's Opposition to Petitioner's Motion for Summary Judgment."  Doc. 208, at 1.  What else could SDM "hope to accomplish by filing the same argument three times, other than 'to harass, cause unnecessary delay, or increase the cost of litigation'"?  *Id.* at 2.  In fact, "Mr. Carpenter and his associates have a demonstrable history of filing motions solely to 'harass, cause unnecessary delay, or increase the cost of litigation.'"  *Id.* (citing *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP; *Universitas Educ., LLC v. Nova Grp., Inc.,* 2013 U.S. Dist. LEXIS 142481, at *11 (S.D.N.Y. Sept. 30, 2013) (indicating that Nova's "re-filing of the motion to dismiss was in bad faith and

---

[34]     *See* Doc. 57, Att. 3, at 2, ¶ 7.

with a motive to delay, harass, or needlessly increase the cost of litigation")).

Finally, Universitas notes SDM is run by Kehoe, a Benistar employee.  *Id.*

Despite the demonstrable history of filing motions to harass and delay on the part of a multitude of Carpenter-controlled entities, the Court notes SDM's counsel states it is acting in good faith and out of an abundance of caution.  Doc. 191, at 1; Doc. 192, at 2.  SDM's counsel was uninvolved in the turnover proceedings or any other apparent litigation in this matter.  As such, the Court finds the denial of Universitas's motion to quash to be appropriate.

## IX.   CONCLUSION.

Avon-WY and Avon-NV are alter egos of Avon-CT.   Given this, Universitas may enforce the judgment it registered here against any of the three Avon entities.  28 U.S.C. § 1963 (A judgment has "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."); *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 143; *see also Condaire*, 286 F.3d at 357 (noting that registration under § 1963 equates to a "new judgment" and  recognizing § 1963's grant of "inherent powers . . . to enforce [such] judgments"); *Sys. Div., Inc. v. Teknek Elecs., Ltd.,* 253 F. App'x 31, 37 (Fed. Cir. 2007) ("The exercise of [personal] jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity . . . .*"); *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2011) ("[A]mending a judgment to add

an alter ego does not add a new defendant but instead inserts the correct name of the real defendant."). So, the Court may enjoin each of these entities from transferring, alienating, and/or concealing or encumbering any non-exempt property.

## X.   RECOMMENDATIONS AND NOTICE OF RIGHT TO OBJECT.

For the reasons discussed above, the undersigned recommends:

1. The Court DENY Avon-WY's motions to strike, Docs. 193, 213.

2. The Court GRANT SDM's motion to join Avon-WY's first motion to strike, Doc. 196.

3. The Court GRANT Universitas's motion for summary judgment and find that Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor, Doc. 186.

4. The Court DENY Avon-WY's motion for summary judgment, Doc. 194.

5. The Court DENY SDM's motion to quash, Doc. 191.

6. The Court DENY SDM's motion for partial summary judgment, Doc. 192.

7. The Court DENY Universitas's motion to strike SDM's motion to quash, Doc. 208.

8. The Court ENJOIN Avon-WY from transferring, alienating, and/or concealing or encumbering its ownership of any interest in SDM.

9. The Court ENJOIN Avon-WY, Avon-CT, and Avon-NV from transferring, alienating, and/or concealing or encumbering any non-exempt property.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before November 3, 2020, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in the captioned matter.

**ENTERED** this 20th day of October, 2020.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| ASSET SERVICING GROUP, LLC | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| SDM HOLDINGS, LLC, | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AVON CAPITAL, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | |
| Intervenor. | ) | |

## <u>ORDER</u>

This case involves the efforts of petitioner Universitas Education LLC to collect a judgment for $6,710,065.92 entered in its favor in the United States District Court for the Southern District of New York. The judgment was later registered in this district and efforts here have centered on petitioner's attempt to establish that Avon Capital LLC, a Wyoming limited liability company ("Avon Capital LLC – Wyoming"), is one and the

same as the judgment debtors against whom the original judgment was entered.[1]  Avon Capital LLC – Wyoming is the nominal owner of SDM Holdings LLC, an Oklahoma limited liability company.  Petitioner seeks to collect its judgment, via attachment, garnishment, or otherwise, from SDM Holdings and/or its assets.

The court referred all post-judgment collection matters to U. S. Magistrate Judge Suzanne Mitchell for further proceedings.  Judge Mitchell has now issued a Report and Recommendation (the "Report") recommending various dispositions of the pending motions.  Avon Capital LLC – Wyoming and SDM Holdings LLC have objected to the Report, which triggers *de novo* review of the matters to which objection has been made.

The background of this dispute is set forth in detail in the Report, in prior orders of the court, and in decisions of the U. S. District Court for the Southern District of New York and will not be repeated here.  Suffice it to say that multiple enforcement efforts and proceedings have resulted from the fraudulent conduct of Daniel Carpenter and the transfers of assets initiated by him, at his direction, or through other entities controlled by him.

The central conclusion and recommendation in the Report is that Avon Capital LLC – Wyoming is the alter ego of Avon Capital entities organized in Nevada and Connecticut and that petitioner may enforce its judgment against any of those Avon entities.  The Report reached that conclusion applying the summary judgment standard, concluding that a reasonable jury, even viewing the evidence in the light most favorable

---

[1] *All the Avon entities are named Avon Capital LLC, but are organized under different state's laws.  Here, the court identifies the particular entities by addition of the name of the state of formation.*

to Avon Capital LLC – Wyoming could not reach any conclusion other than that Avon Capital LLC – Wyoming, Avon Capital LLC – Connecticut, and Avon Capital LLC – Nevada, were, and were operated as, alter egos.

The Report makes a detailed and thorough analysis of the history of the various entities, the evidence as to the shifting of funds through multiple entities controlled by Mr. Carpenter and his associates, and, in particular, the evidence as to the shifting of funds through those entities to Avon Capital LLC – Wyoming and its acquisition of SDM Holdings.  The court has carefully reviewed that evidence in light of the Avon and SDM objections and readily concludes, like Judge Mitchell, that no jury could plausibly conclude that Avon Capital LLC – Wyoming is other than the alter ego of the other Avon entities.  The objections now offered — such as SDM Holdings' complaint that, after three years of litigation on the subject, no one filed a formal pleading seeking an alter ego determination, or Avon Capital LLC – Wyoming's argument that none of the fraudulent actors had an ownership interest in Avon Capital LLC – Wyoming (ignoring the undisputed evidence as to control and beneficial ownership) — are thoroughly unpersuasive.  SDM Holdings also contends that the court lacks ancillary jurisdiction over the alter ego claims.  The court agrees with the Report, however, that even if ancillary jurisdiction is lacking the court has diversity jurisdiction to resolve this case. Universitas, a citizen of New York,[2] is completely diverse from all Avon Capital entities and SDM Holdings.

_____

[2] *The court takes judicial notice of the pleadings in Case No. 11-CV-1590, U.S. District Court for the Southern District of New York.*

In light of these conclusions and substantially for the reasons stated in the Report, the Report [Doc. # 218] is **ADOPTED**.  Consistent with the Report's recommendation, the court **ORDERS** as follows:

1.  Avon Capital LLC – Wyoming's motions to strike [Doc. Nos. 193 and 213] are **DENIED**;

2.  SDM's motion [Doc. # 196] to join in Avon Capital LLC – Wyoming's motion to strike is **GRANTED**;

3.  Petitioner's motion for summary judgment [Doc. #186] is **GRANTED**.  Avon Capital LLC – Wyoming is deemed to be the alter ego of Avon Capital LLC – Connecticut and Avon Capital LLC – Nevada and petitioner is entitled to enforce the registered judgment [Doc. #1] against any of the three;[3]

4.  Avon Capital LLC – Wyoming's motion for summary judgment [Doc. #194] is **DENIED**;

5.  SDM's motion to quash [Doc. #191] is **DENIED**;

6.  SDM's motion for partial summary judgment [Doc. #192] is **DENIED**;

7.   Petitioner's motion to strike the SDM motion to strike [Doc. #208] is **DENIED**;

8.  Avon Capital LLC – Wyoming is **ENJOINED** from transferring, alienating, concealing, or encumbering its ownership or other interest in SDM;

---

[3] *The judgment was initially entered against "Nova Group Inc." but later legal proceedings established "Avon Capital LLC", among others, was an alter ego of the nominal judgment debtor.*

9.  Avon Capital LLC – Wyoming, Avon Capital LLC – Connecticut, and Avon Capital LLC – Nevada are **ENJOINED** from transferring, alienating, concealing, or encumbering any non-exempt property so long as the registered judgment remains unpaid.

The parties are directed to confer and advise the court, by a joint filing within 14 days, of their view(s) as to whether, in light of the above disposition, other issues remain for resolution in this proceeding and, if so, what.

**IT IS SO ORDERED**.

Dated this 11th day of February, 2021.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,    )
                                   )
               Petitioner,     )
                                   )
vs.                                 )     NO. 14-FJ-0005-HE
                                   )
AVON CAPITAL, LLC, *et al.,*    )
                                   )
              Respondent.    )

## ORDER

A Writ of General Execution [Doc. #10] and Post-Judgment General Garnishment Summons [Doc. #13] were issued to SDM Holdings, LLC ("SDM").  The court denied SDM's Motion to Quash the garnishment summons [Doc. #228].  The writ of execution and summons have been pursued consistently by plaintiffs since December of 2015 and remain pending before the court.  Accordingly, SDM is ordered to file an answer to the Writ of General Execution and Garnishment Summons within **thirty (30) days** of the date of this order.

**IT IS SO ORDERED**.

Dated this 26th day of February, 2021.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,      )
                                 )
          Petitioner,            )
                                 )
vs.                              )          NO. 14-FJ-0005-HE
                                 )
AVON CAPITAL, LLC,               )
                                 )
          Respondent/garnishee.  )

**ORDER**

The motions of SDM Holdings, LLC to alter judgment [Doc. #231] and to amend the judgment [Doc. #233] are **DENIED**.  To the extent that movant relies on the five-year period referenced in 12 Okla. Stat. § 735, the court notes that execution was issued soon after registration of the foreign judgment, that plaintiff has actively pursued its enforcement since that time, and the enforceability of the execution has been in active litigation since that time.[1]  To the extent that the motions seek to revisit matters already addressed by the court in its prior orders, they do not set out a persuasive basis for doing so.  Finally, to the extent that plaintiff wishes to refile its judgment as a protective matter and views leave of court as necessary to do so, leave is granted.  *See generally*, Taracorp, LTD. v. Bailey, 419 P.3d 217 (Okla. 2018).  In the event of such re-refiling, all prior orders of this court

---

[1] *SDM Holdings' suggestion [Doc. #239] that the "case or controversy" has evaporated based on its argument as to the passage of time is thoroughly unpersuasive.*

addressing the substantive issues in this case will be deemed re-entered *instanter* as to the renewed filing.

**IT IS SO ORDERED**.

Dated this 8th day of April, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,      )
                                 )
            Petitioner,          )
                                 )
vs.                              )          NO. 14-FJ-0005-HE
                                 )
AVON CAPITAL, LLC, *et al.*,     )
                                 )
            Respondents.         )

## ORDER

The court held a hearing on September 20, 2021, on several of the pending motions in this case: (1) petitioner's motion for application of property [Doc. #287], (2) petitioner's motion for appointment of receiver [Doc. #289], and (3) respondent Avon Capital's motion to stay [Doc. #302].  For the reasons stated below, the court concludes the motion to apply should be denied, the motion for receiver granted, and the motion to stay conditionally granted.

### Background

This case involves the post-judgment collection efforts of petitioner Universitas Education LLC to collect a judgment entered against Avon Capital LLC and others in the U.S. District Court for the Southern District of New York.  The judgment against Avon Capital (which was a portion of the overall $30,600,000 judgment) was in the amount of $6,710,065.92.  The judgment was later registered in this district and petitioner's efforts here have been directed at the amounts owed by Avon Capital.

The background of this dispute is long and involved.  It arises out of the activities of Daniel Carpenter and other persons and entities owned or controlled by him.  Mr. Carpenter has multiple criminal convictions, including a 2016 conviction for mail and wire fraud, money laundering, and similar offenses.  United States v. Carpenter, 190 F.Supp.3d 260 (D. Conn. 2016), aff'd. 801 Fed. Appx. 1 (2nd Cir. 2020), cert. den. 141 S.Ct. 820 (2020).  Certain of the counts of conviction were based on the same insurance policies which are the basis for the Universitas judgment sought to be enforced here.  The nature of Mr. Carpenter's scheme and the use of various entities to advance it are described in Carpenter.   Universitas ultimately recovered the civil judgment involved in this case.  The subsequent litigation arising out of Mr. Carpenter's efforts to divert the insurance proceeds are fully described in the Report and Recommendation previously generated by Judge Mitchell [Doc. #218] and in the various court decisions referenced in the Report.

The court previously adopted the Report and Recommendation, concluding among other things that the LLC formed under Wyoming law as "Avon Capital LLC" is the alter ego of the "Avon Capital LLC" entities formed under the laws of Connecticut and Nevada and hence subject to the judgment sought to be collected by Universitas.  Order of February 11, 2021 [Doc. #228]. It is undisputed that SDM Holdings, LLC, an Oklahoma limited liability company whose holdings are the subject of these motions, is wholly owned by Avon Capital.   In the February 11 order, the court enjoined Avon from transferring or encumbering its assets.  Respondents have appealed the court's February 11 order to the Tenth Circuit Court of Appeals.

The parties' submissions indicate that SDM holds the beneficial interest in several life insurance policies having an estimated value of $4.2 million.[1]   Universitas seeks to realize on those policies for application to its judgment.

<u>Discussion</u>

The two motions now advanced by Universitas seek to realize on the value in the policies held by SDM in two ways — by applying them directly based on the imposition of a constructive trust in its favor and by protecting them from diversion via the appointment of a receiver for Avon Capital.

a.   *Constructive trust.*   Universitas seeks to have the court order the application of the policies to its judgment on the basis that SDM and/or the policies it held were acquired with funds wrongfully diverted from entities subject to the judgment. Respondents object to that on the basis that SDM holds the policies and that SDM is not a judgment debtor.   That is true, but also beside the point for purposes of the constructive trust theory.   "A constructive trust is a legal fiction, an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant."   <u>United States v. Andrews</u>, 530 F.3d 1232 (1237 (10th Cir. 2008) (quotations and citation omitted).   So Universitas is seeking application of the policies not because SDM is a judgment debtor, but because SDM is nominally holding ownership of policies that are, in substance, owned by entities which <u>are</u> subject to the judgment.

---

[1] *Various aspects of the Carpenter entities' involvement in life insurance policy initiation and financing are set forth in* <u>Carpenter</u> *supra.*

Respondents also argue that Universitas cannot reach the policies via a constructive trust because Oklahoma law makes a charging order against the LLC the sole means of realizing on the assets, relying on 18 Okla. Stat. §2034. However, that statute is directed to a judgment creditor's effort to realize on a judgment creditor's "membership and capital interest". Here, SDM is not a judgment debtor and petitioner is not seeking a realize on SDM's membership or capital interests as such. Rather, it is seeking to establish that SDM is not, in substance, the legitimate owner of the assets at issue.

While the court is persuaded that Universitas has made out the necessary trail of improper asset diversions to make imposition of a constructive trust plausible, it concludes the imposition of a trust is not presently warranted in the particular circumstances of this case. This court's alter ego determination making Avon Capital (the Wyoming entity) subject to the judgment being collected is on appeal. Therefore, the most pertinent concern now is protecting petitioner's ability to realize on those assets if, as expected, the alter ego determination is upheld either on appeal now or in further proceedings. As alternate and more appropriate means exist for protecting petitioner's interest in the subject assets pending that appeal, the court concludes it is unnecessary to ultimately resolve now whether imposition of a constructive trust is warranted. The motion for application of the insurance policies now will therefore be denied.

b. *Appointment of a receiver.* Universitas also seeks the appointment of a receiver for Avon Capital LLC (the Wyoming entity) to aid in the collection of its judgment against Avon Capital. Fed.R.Civ.P. 69 generally provides that execution and other

proceedings in aid of collection of a judgment shall be in accord with the procedures of the state where the court sits.  Petitioner relies on 12 Okla. Stat. § 1151, which authorizes the appointment of a receiver in various circumstances, including where a judgment creditor seeks to dispose of property in satisfaction of the judgment or to preserve it during the pendency of an appeal.  *See* § 1151(4).  It argues a receiver is warranted here because Avon Capital, along with the other Carpenter-related entities, has failed and refused to pay any portion of the judgment, that they have engaged in a sustained pattern of fraudulent transfers to avoid paying the judgment, and that Avon is insolvent apart from the insurance policies (and maybe even with them).  Respondents generally object on the basis that the court's prior alter ego and related determinations were incorrect and on the basis that there is no reason to believe the court's prior injunction orders restraining disposition of assets will not protect petitioner's claimed interest in the assets.

The court concludes appointment of a receiver is warranted.  Avon appears to be insolvent based on its own records.  Further, the somewhat exotic manner in which Avon has accounted for its finances leaves the court with little confidence in those records.[2] More importantly, the history of the Carpenter entities' efforts to avoid paying this judgment over the past six or seven years leaves the court with even less confidence that these assets will be maintained in place to satisfy the judgment if, at the conclusion of the process, Avon (Wyoming) is finally determined to be a judgment debtor.   As other

---

[2] *SDM's most recent annual balance sheet shows no entry of the life insurance policies which are its principal assets, instead showing "goodwill" which it apparently amortizes over time.  SDM's counsel, who indicates he is also a CPA, could not explain why it would have accounted for the transactions in that fashion.  The showing of a liability to "affiliates" for the acquisition cost of SDM also makes little sense.*

courts have observed, Mr. Carpenter has used hundreds of shell entities to hide assets from his or their creditors.  Further, he and his related/controlled entities have a long track record of improperly shifting assets from one entity to another for that purpose, as set out in considerable detail in Judge Mitchell's report.

Respondents contend that the injunctive orders previously entered by the court are sufficient protection for petitioner's claimed interest in the insurance policies.  In other circumstances, the court might find that argument persuasive.  But against the backdrop of sustained resistance to payment and improper conduct by Carpenter and his entities over several years, the court sees no reason to give respondents the benefit of the doubt on that issue.  Further, the court is mindful of the practical limitations on its ability to enforce its order via contempt or otherwise.  The orders are, at present, directed to entities rather than individuals and to entities which would otherwise be unable to respond to a judgment of contempt.  In those circumstances, normal penalties for violation of a court order have less bite.

In any event, the court concludes the appointment of a receiver for Avon is warranted.

Insofar as the scope of the receivership is concerned, the receiver will be appointed only for Avon Capital LLC, the entity formed under Wyoming law.  While the court's alter ego determination embraces the similarly named entities formed under Connecticut and Nevada law, it is only the Wyoming entity which owns SDM.  Further, the receiver will be appointed as to _all_ aspects of Avon Capital (Wyoming) LLC's property and activities.  In other circumstances, such as where an out-of-state entity with

multiple properties and interests was involved, the court would normally impose appropriate limits on the scope of the receiver's authority tied to the properties or interests at issue.  Here, however, it is undisputed not only that SDM is an asset of Avon Capital (Wyoming) but that it is substantially the sole asset of that entity.  It is therefore appropriate that the receiver act as to Avon Capital (Wyoming) LLC's interests generally.

The receiver's authority shall extend to and include the right to exercise the membership rights of Avon Capital relative to SDM, including the right under the SDM operating agreement [Doc. #292-2] to replace the manager if the receiver concludes that is appropriate.   Absent further order of the court, however, and in light of the pending appeal, the receiver's authority shall not extend to causing or directing the sale by SDM of the various insurance policies at issue.  Should the receiver conclude that the sale of some or all of the policies is warranted, he must move for leave to do so and the court can then determine whether to permit the sale and what further steps should then be taken to protect the various interests of the parties.

The motion for appointment of a receiver will be granted.   Universitas has proposed Ryan Leonard Esq. to be the receiver.  Mr. Leonard has extensive experience acting as a court-appointed receiver (or counsel for the receiver), including receiverships for insurance companies, and Avon Capital and SDM indicated at the hearing they do not object to Mr. Leonard in the event the court concluded the appointment of a receiver to be appropriate.

c.  *Motion to Stay*.  Avon Capital has moved to stay all post-judgment proceedings pending the resolution of the appeal to the Tenth Circuit.   Universitas objects,

contending Avon Capital is unlikely to prevail on appeal and that it would be harmed by a stay.  It indicates it would not object to a stay if the insurance policies were held in some sort of escrow arrangement, but objects otherwise.

The court is unpersuaded that petitioner would be harmed by a stay assuming an appropriate supersedeas bond is posted.   Further, as respondents have shown no interest in any sort of escrow arrangement as to the policies, the court concludes that a supersedeas bond is warranted and that it should be in the amount of the judgment sought to be collected plus interest and attorney fees.[3]

The motion to stay with therefore be granted, conditioned on the posting of a surety bond approved by the court.

<u>Conclusion</u>

For the reasons stated above:

(1) petitioner's motion for application of property [Doc. #287] is **DENIED**;

(2) petitioner's motion for appointment of receiver [Doc. #289] is **GRANTED**. Ryan Leonard, Esq. is appointed as Receiver of Avon Capital LLC (Wyoming), *instanter*, as set forth more fully by separate order.   The receiver will be required to post an appropriate receiver's bond in the amount of $10,000 within **seven (7) days**; and

---

[3] *There was evidence at the hearing that SDM estimated the value of the insurance policies at approximately $4.2 million some time ago.  However, the value can obviously fluctuate greatly based on the status of the persons covered by the policies.  In light of the limited nature of the evidence as to the value of the policies and the potential for the death of an insured greatly increasing their value in the meantime, the court concludes the bond should be based on the full amount of the judgment.*

(3)  respondent Avon's motion to stay [Doc. #295] is **GRANTED**, conditioned on

and effective as of the approval by the court of a corporate surety bond in the amount of

$11,100,000.00.[4]

**IT IS SO ORDERED**.

Dated this 22nd day of September, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[4] *This amount is based on the registered judgment amount of $6,710,065.92, plus approximate amounts estimating interest and attorney fees incurred since the registration of the judgment.*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,   )
           )
      Petitioner,   )
           )
vs.            )     NO. 14-FJ-0005-HE
           )
AVON CAPITAL, LLC, *et al.*,   )
           )
      Respondents.   )

### <u>ORDER</u>

For the reasons stated in the separate order entered this date, Ryan Leonard, Esq. is appointed as Receiver of Avon Capital LLC, a limited liability company formed under the laws of the State of Wyoming.  The court further **ORDERS** as follows:

1.    The Receiver shall have the powers and duties ordinarily held by court-appointed receivers.  The Receiver is authorized to take possession of, manage, and operate Avon Capital LLC (Wyoming), its properties, and its activities in all aspects, subject to the supervision and control of the court.  This includes the authority to exercise the membership rights of Avon Capital LLC (Wyoming) as to SDM Holdings, LLC, including the right to replace its manager if the receiver concludes that is appropriate.

2.    The Receiver is directed to identify and take such steps as may be appropriate to preserve the assets of Avon Capital LLC (Wyoming), including the insurance policies held through SDM Holdings, LLC.

3.     The Receiver is authorized to pay bills and expenses necessary to maintaining Avon Capital LLC (Wyoming) and its assets.

4.     The Receiver is authorized to enter into contracts for those services necessary to aid the Receiver in the administration of the Receivership, including, if necessary, the retention of attorneys and accountants and other professionals, with the reasonable expenses incurred in connection therewith deemed to be expenses of the receivership.

5.     Absent further order of the court, the Receiver's authority shall not extend to authorizing or directing, directly or indirectly, the sale or other disposition of the assets of SDM Holdings, LLC, including the insurance policies at issue in this case.

6.     The Receiver shall be entitled to reasonable compensation for his efforts as receiver, with the cost thereof to be an expense of the receivership.  The compensation shall be subject to the approval of the court.  Requests for compensation shall be made monthly.

7.     The Receiver is directed to file forthwith an Oath of Receiver, in substantially the form of the attachment to this order.  The Receiver is directed to file an appropriate receiver's bond, in the amount of $10,000, within seven days.

8.     The Receiver serves as such, and discharges his duties under this Order, as an officer of the court.  His actions as receiver are in a representative, rather than individual, capacity.  All persons dealing with the Receiver will look only to Avon Capital LLC (Wyoming), for satisfaction of all claims against, and obligations and liabilities of, the Receiver.

9.      The receiver is directed to file monthly reports of his findings and activities with the

court.

10.     The Receiver or any party may move to supplement and/or clarify this order of

appointment as necessary and appropriate.

        **IT IS SO ORDERED**.

        Dated this 22nd day of September, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

UNIVERSITAS EDUCATION, LLC,          )

3

|                    |   |                       |
|--------------------|---|-----------------------|
|                    | ) |                       |
| Petitioner,        | ) |                       |
|                    | ) |                       |
| vs.                | ) | NO. 14-FJ-0005-HE     |
|                    | ) |                       |
| AVON CAPITAL, LLC, *et al.*, | ) |             |
|                    | ) |                       |
| Respondents.       | ) |                       |

## **OATH OF RECEIVER**

I, Ryan Leonard, the Receiver appointed by the court in the above-entitled cause on the _____ day of September, 2021, do solemnly swear as an officer of this court that I will faithfully discharge my duties as such Receiver, that I will well and faithfully account for all property and money that may come into my hands as Receiver, and that I will obey the orders of the court entered in this case.

_____

Ryan Leonard, Receiver

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**July 13, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

v.

AVON CAPITAL, LLC,

     Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

     Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

     Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

     Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

2

Respondent/Garnishee - Appellant.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

     Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

v.

 AVON CAPITAL, LLC,

     Respondent/Judgment Debtor,

and

 ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

     Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

     Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

No. 22-6038
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

Appellee Universitas Education, LLC ("Universitas") seeks to enforce a

judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and

its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of

Oklahoma.  Universitas alleges that it was unable to recover the full judgment

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY. The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021. We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment. However, we remand the case to the district court to conduct further proceedings, now that Universitas has re-filed the judgment in the Western District of Oklahoma.

## I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007. Each of these Avon entities was ninety-nine percent owned

by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million.  Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions.  One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account.  Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions."  Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM.  The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY.  Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer.  Universitas obtained a favorable award in arbitration.  Although the plan trustee sought to vacate the award in the U.S. District Court for the Southern District of New York, the award was confirmed on August 15, 2014.  The Southern District of New York found that Carpenter fraudulently transferred the $30 million in life insurance policies to hundreds of shell entities under his control.  Avon was one of

---

[1] Avon-WY was later reinstated.

these entities.  Thus, the Southern District of New York entered judgment for Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was only able to recover $6 million in funds.  Universitas filed the New York judgment in the Western District of Oklahoma on November 7, 2014.[2]  The Western District of Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow Universitas to execute the judgment against the insurance portfolio.  Universitas then attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of Avon-CT, the named debtor in the New York judgment.  The district court referred the matter to the MJ, who issued a Report and Recommendation finding that the entities were "one and the same for purposes of their liability to Universitas."  *Id.* at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the SDM insurance portfolio using stolen funds, the insurance portfolio was subject to garnishment.  The district court reviewed the MJ's recommendations de novo and agreed with all of them, granting summary judgment to Universitas on February 11, 2021.  The district court subsequently placed Avon-WY into a receivership pursuant to O.S. § 12-1551.

---

[2] This Order and Judgment uses the terms "register" and "file" interchangeably.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which states, "[a] judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date . . . [t]he last garnishment summons was issued." The district court denied SDM's motion and upheld the judgment in an order dated April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were consolidated by the Court on April 27, 2021.  Universitas re-filed the New York judgment in the Western District of Oklahoma on December 9, 2021.  Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00 (Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments for enforcement in other districts:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.  Such a judgment entered in favor of the United States may be so registered any time after judgment is entered.  A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on

> execution—and in proceedings supplementary to and in aid
> of judgment or execution—must accord with the procedure
> of the state where the court is located, but a federal statute
> governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law of the state where the judgment is filed, not the limitations period of the state where the federal district court that issued the judgment is located.  As Universitas is attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the state:

> A judgment shall become unenforceable and of no effect if
> more than five (5) years have passed from the date of:
> 1. The last execution on the judgment was filed with
>    the county clerk;
> 2. The last notice of renewal of judgment was filed
>    with the court clerk;
> 3. The last garnishment summons was issued; or
> 4. The sending of a certified copy of a notice of
>    income assignment to a payor of the judgment
>    debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a second time in Oklahoma, after Oklahoma's limitation period has lapsed on the original judgment, the underlying original Colorado judgment which is enforceable for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the plaintiffs received a default judgment from the Colorado District Court in 2007 and filed it in Oklahoma District Court three days later.  *See id.* at 218–19.  Nine years

lapsed before they re-filed the judgment in Oklahoma.  *See id.* at 219.  The defendant

filed a Motion to Quash, arguing that it had been more than five years since the

Colorado judgment was entered, in violation of § 12-735(B).  *See id.*  The Oklahoma

Supreme Court concluded that "[a]lthough the Act does not address re-filing of

sister-state judgments, a judgment creditor may enforce a domesticated judgment in

Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for

enforcement of judgments has run on the original domesticated foreign judgment."

*Id.* at 223.

### b.

The MJ and the district court found that Universitas was entitled to enforce the

judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to

consider Oklahoma state procedural rules on the subject, as required by

F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after

five years unless one of the subsequent actions specified in the statute is taken.

Universitas's last relevant act was the issuance of a writ of garnishment to SDM on

December 3, 2015.  This means that Universitas's Oklahoma judgment expired five

years later, on December 3, 2020.  Contrary to the district court's statement in its

order denying SDM's motions to alter and amend the judgment, Universitas's active

attempts to enforce the judgment in Oklahoma were insufficient to render the

judgment enforceable under § 12-735(B).  There is no specified exception for active

attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment in Oklahoma anyway because the judgment has not yet expired in New York. However, the critical distinction between *Taracorp* and this case is that in *Taracorp*, the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement. *See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive issue of whether a Colorado judgment, which is enforceable in Colorado for twenty years after the judgment is entered, is also enforceable in Oklahoma when the first attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a foreign judgment creates a new local judgment which is governed by the local statute of limitations." *Id.* at 221.  This language suggests that even though the Oklahoma Supreme Court permitted Taracorp to enforce its expired judgment after it had been re-filed, the court would not have allowed Taracorp to enforce its expired judgment without first utilizing one of the four methods specified in O.S. § 12-735(B). Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment." *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

what Universitas seeks to do here—enforce a judgment that had previously been filed and expired in a particular state without re-filing said judgment in the same state. Because the re-filing of the judgment in *Taracorp* was a critical component of the Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by stating that:

> [T]o the extent that plaintiff wishes to refile its judgment as a protective matter and views leave of court as necessary to do so, leave is granted . . . . In the event of such re-refiling, all prior orders of this court addressing the substantive issues in this case will be deemed re-entered *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99. However, this blanket statement claiming that the order would extend to Universitas's potential future re-filing rendered the district court's judgment a legally impermissible advisory order. Though the district court initially had jurisdiction over this case, Universitas did not re-file its expired judgment before the district court entered its February 11, 2021 order. For the reasons explained above, that failure to re-file was fatal—there was no longer a judgment in existence for the district court to enforce at the time it entered the order. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). As the issue in this case was no longer live and

Universitas lacked a legally cognizable interest in the outcome once its judgment

expired in December 2020, the case became moot and the district court lacked

Article III jurisdiction to enter its order, rendering the order void.[4]

However, Universitas's re-filing of the expired judgment in the Western

District of Oklahoma on December 9, 2021 makes the judgment presently

enforceable under *Taracorp*.  We therefore vacate the district court's February 11,

2021 judgment because the district court did not have jurisdiction to enter its order

until Universitas re-filed its New York judgment in the Western District of

Oklahoma.[5]  And we remand the case to the district court to conduct further

proceedings, now that Universitas has re-filed the judgment.

### III.

For the foregoing reasons, we find that Universitas's expired judgment was

unenforceable and the case was moot at the time the district court entered its order.

But Universitas has since re-filed the judgment, vesting the Western District of

Oklahoma with jurisdiction once again.  Thus, we VACATE the district court's

February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte.").  Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

13

case to the district court to conduct further proceedings, now that Universitas has re-filed the judgment in the Western District of Oklahoma.

Entered for the Court


Allison H. Eid
Circuit Judge

14

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

July 13, 2023

Ms. Nanette Turner Kalcik
Mr. Alan L. Rupe
Mr. Francis Schneider
Lewis Brisbois Bisgaard & Smith
1605 North Waterfront Parkway, Suite 150
Wichita, KS 67206

Mr. Jeffrey R. Sandberg
Palmer Lehman Sandberg
8350 North Central Expressway, Suite 1111
Dallas, TX 75206

**RE:    21-6044, 21-6049, 21-6133, 21-6134, 22-6038, Universitas Education v.
Avon Capital, et al**
Dist/Ag docket: 5:14-FJ-00005-HE

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within
14 days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:      Joseph H. Bocock
         Joshua Clark Greenhaw
         Clayton D. Ketter
         Joseph L. Manson III
         Melvin R. McVay Jr.
         John Douglas Stiner

CMW/djd

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,    )
                                      )
             Petitioner,    )
                                      )
vs.                              )        NO. 14-FJ-0005-HE
                                      )
AVON CAPITAL, LLC,        )
                                      )
             Respondent.    )

## <u>ORDER</u>

Per its decision entered this date, the Court of Appeals vacated the court's prior order of February 11, 2021 [Doc. #228] based on mootness and a resulting lack of subject matter jurisdiction but remanded the case for further proceedings in light of the court's reacquisition of jurisdiction based on petitioner's refiling of the foreign judgment.   In order to address the impact of the Court of Appeals' order on prior actions and to determine the course of further proceedings, this case is set for pretrial conference on **<u>August 15, 2023, at 1:30 p.m</u>**., in Courtroom No. 501, with the expectation that the parties may assert their respective positions by appropriate motions in the meantime.   In the interim, pending the conference, the court preliminarily readopts, *instanter*, the Report and Recommendation [Doc. #218] previously adopted and, based on the conclusions reached there, **ORDERS AND ENJOINS** Avon Capital LLC - Wyoming from transferring, alienating, concealing,

or encumbering its ownership or other interest in SDM Holdings, LLC, or authorizing or

permitting SDM Holdings, LLC, to dispose of its assets, pending further order of the court.[1]

  **IT IS SO ORDERED**.

  Dated this 13th day of July, 2023.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[1] *The court references the adoption as "preliminary" so as to leave open for discussion at the pretrial conference the nature and impact of the Tenth Circuit's decision on the R&R and other actions taken in the case.  In the meantime, however, it is the court's intention to freeze the status of all parties and their related interests in SDM, based on the facts and circumstances previously addressed, pending the pretrial conference.*

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

August 4, 2023

_____

Christopher M. Wolpert
Clerk of Court

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming limited liability company,

      Intervenor.

_____

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

Petitioner/Judgment Creditor -
Appellee,

v.

AVON CAPITAL, LLC,

Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee - Appellant.

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP, et al.,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

**ORDER**

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

    These matters are before the court on the *Petition for Rehearing of Appellant SDM*

*Holdings, LLC*; *Intervenor/Appellant Avon Capital, LLC, A Wyoming Limited Liability*

*Company's Petition for Panel Rehearing*; and the *Partially Opposed Motion for Leave to Include a One-Document Appendix to the Petition for Rehearing by Appellant SDM Holdings, LLC*. Upon careful consideration, we direct as follows.

SDM Holdings, LLC's motion to include a one-document appendix to its petition for rehearing is GRANTED. Pursuant to Fed. R. App. P. 40, both petitions for panel rehearing are GRANTED IN PART to the extent of the modifications in the attached revised order and judgment. The court's July 13, 2023 order and judgment is withdrawn and replaced by the attached revised order and judgment, which shall be filed as of today's date.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

4

FILED
United States Court of Appeals
Tenth Circuit

August 4, 2023

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

    Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

    Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

    Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

    Petitioner/Judgment Creditor -
    Appellee,

v.

AVON CAPITAL, LLC,

    Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

    Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

    Respondent/Garnishee - Appellant.

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Appellee Universitas Education, LLC ("Universitas") seeks to enforce a judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of Oklahoma.  Universitas alleges that it was unable to recover the full judgment amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY.  The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021.  We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.  We remand the case to the district court to conduct further proceedings.

## I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007.  Each of these Avon entities was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million.  Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions.  One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account.  Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions."  Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM.  The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY.  Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer.  Universitas obtained a favorable award in arbitration.  Although the plan

---

[1] Avon-WY was later reinstated.

trustee sought to vacate the award in the U.S. District Court for the Southern District

of New York, the award was confirmed on August 15, 2014.  The Southern District

of New York found that Carpenter fraudulently transferred the $30 million in life

insurance policies to hundreds of shell entities under his control.  Avon was one of

these entities.  Thus, the Southern District of New York entered judgment for

Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was

against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was

only able to recover $6 million in funds.  Universitas filed the New York judgment in

the Western District of Oklahoma on November 7, 2014.[2]  The Western District of

Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of

SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow

Universitas to execute the judgment against the insurance portfolio.  Universitas then

attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of

Avon-CT, the named debtor in the New York judgment.  The district court referred

the matter to the MJ, who issued a Report and Recommendation finding that the

entities were "one and the same for purposes of their liability to Universitas."  *Id.*

at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the

SDM insurance portfolio using stolen funds, the insurance portfolio was subject to

---

[2] This Order and Judgment uses the terms "register" and "file"
interchangeably.

6

garnishment.  The district court reviewed the MJ's recommendations de novo and

agreed with all of them, granting summary judgment to Universitas on February 11,

2021.  The district court subsequently placed Avon-WY into a receivership pursuant

to O.S. § 12-1551.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which

states, "[a] judgment shall become unenforceable and of no effect if more than five

(5) years have passed from the date . . . [t]he last garnishment summons was issued."

The district court denied SDM's motion and upheld the judgment in an order dated

April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were

consolidated by the Court on April 27, 2021.  Universitas alleges that it re-filed the

New York judgment in the Western District of Oklahoma on December 9, 2021.

Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00

(Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments

for enforcement in other districts:

> A judgment in an action for the recovery of money or
> property entered in any court of appeals, district court,
> bankruptcy court, or in the Court of International Trade
> may be registered by filing a certified copy of the
> judgment in any other district or, with respect to the Court
> of International Trade, in any judicial district, when the
> judgment has become final by appeal or expiration of the
> time for appeal or when ordered by the court that entered
> the judgment for good cause shown.  Such a judgment

entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law of the state where the judgment is filed, not the limitations period of the state where the federal district court that issued the judgment is located. As Universitas is attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the state:

A judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date of:
1. The last execution on the judgment was filed with the county clerk;
2. The last notice of renewal of judgment was filed with the court clerk;
3. The last garnishment summons was issued; or
4. The sending of a certified copy of a notice of income assignment to a payor of the judgment debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a

8

second time in Oklahoma, after Oklahoma's limitation period has lapsed on the original judgment, the underlying original Colorado judgment which is enforceable for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the plaintiffs received a default judgment from the Colorado District Court in 2007 and filed it in Oklahoma District Court three days later. *See id.* at 218–19.  Nine years lapsed before they re-filed the judgment in Oklahoma. *See id.* at 219.  The defendant filed a Motion to Quash, arguing that it had been more than five years since the Colorado judgment was entered, in violation of § 12-735(B). *See id.*  The Oklahoma Supreme Court concluded that "[a]lthough the Act does not address re-filing of sister-state judgments, a judgment creditor may enforce a domesticated judgment in Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for enforcement of judgments has run on the original domesticated foreign judgment." *Id.* at 223.

### b.

The MJ and the district court found that Universitas was entitled to enforce the judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to consider Oklahoma state procedural rules on the subject, as required by F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after five years unless one of the subsequent actions specified in the statute is taken.  Universitas's last relevant act was the issuance of a writ of garnishment to SDM on December 3, 2015.  This means that Universitas's Oklahoma judgment expired five years later, on December 3, 2020.  Contrary to the district court's statement in its

9

order denying SDM's motions to alter and amend the judgment, Universitas's active

attempts to enforce the judgment in Oklahoma were insufficient to render the

judgment enforceable under § 12-735(B).  There is no specified exception for active

attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines

to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment

in Oklahoma anyway because the judgment has not yet expired in New York.

However, the critical distinction between *Taracorp* and this case is that in *Taracorp*,

the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement.

*See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive

issue of whether a Colorado judgment, which is enforceable in Colorado for twenty

years after the judgment is entered, is also enforceable in Oklahoma when the first

attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period

lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a

foreign judgment creates a new local judgment which is governed by the local statute

of limitations."  *Id.* at 221.  This language suggests that even though the Oklahoma

Supreme Court permitted Taracorp to enforce its expired judgment after it had been

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment."  *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

re-filed, the court would not have allowed Taracorp to enforce its expired judgment without first utilizing one of the four methods specified in O.S. § 12-735(B). Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do what Universitas seeks to do here—enforce a judgment that had previously been filed and expired in a particular state without re-filing said judgment in the same state. Because the re-filing of the judgment in *Taracorp* was a critical component of the Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by stating that:

> [T]o the extent that plaintiff wishes to refile its judgment as a protective matter and views leave of court as necessary to do so, leave is granted . . . . In the event of such re-refiling, all prior orders of this court addressing the substantive issues in this case will be deemed re-entered *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99.  However, this blanket statement claiming that the order would extend to Universitas's potential future re-filing rendered the district court's judgment a legally impermissible advisory order.  Though the district court initially had jurisdiction over this case, Universitas did not re-file its expired judgment before the district court entered its February 11, 2021 order.  For the reasons explained above, that failure to re-file was fatal—there was no longer a judgment in existence for the district court to enforce at the time it entered the order. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

11

purposes of Article III—when the issues presented are no longer live or the parties

lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*,

568 U.S. 85, 91 (2013) (cleaned up).  As the issue in this case was no longer live and

Universitas lacked a legally cognizable interest in the outcome once its judgment

expired in December 2020, the case became moot and the district court lacked

Article III jurisdiction to enter its order, rendering the order void.[4]

 We therefore vacate the district court's February 11, 2021 judgment because

the district court did not have jurisdiction to enter its order.[5]  And we remand the case

to the district court to conduct further proceedings.

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte.").  Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

**III.**

For the foregoing reasons, we find that Universitas's expired judgment was unenforceable and the case was moot at the time the district court entered its order. Thus, we VACATE the district court's February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the case to the district court to conduct further proceedings.

Entered for the Court


Allison H. Eid
Circuit Judge

13

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 4, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming limited liability company,

      Intervenor.

_____

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

Petitioner/Judgment Creditor -
Appellee,

v.

AVON CAPITAL, LLC,                                         No. 21-6133
                                                    (D.C. No. 5:14-FJ-00005-HE)
Respondent/Judgment Debtor,                               (W.D. Okla.)

ASSET SERVICING GROUP,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee - Appellant.

2

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Appellee Universitas Education, LLC ("Universitas") seeks to enforce a judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of Oklahoma.  Universitas alleges that it was unable to recover the full judgment amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY.  The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021.  We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.  We remand the case to the district court to conduct further proceedings.

## I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007.  Each of these Avon entities was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million.  Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions.  One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account.  Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions."  Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM.  The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY.  Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer.  Universitas obtained a favorable award in arbitration.  Although the plan

---

[1] Avon-WY was later reinstated.

trustee sought to vacate the award in the U.S. District Court for the Southern District

of New York, the award was confirmed on August 15, 2014.  The Southern District

of New York found that Carpenter fraudulently transferred the $30 million in life

insurance policies to hundreds of shell entities under his control.  Avon was one of

these entities.  Thus, the Southern District of New York entered judgment for

Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was

against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was

only able to recover $6 million in funds.  Universitas filed the New York judgment in

the Western District of Oklahoma on November 7, 2014.[2]  The Western District of

Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of

SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow

Universitas to execute the judgment against the insurance portfolio.  Universitas then

attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of

Avon-CT, the named debtor in the New York judgment.  The district court referred

the matter to the MJ, who issued a Report and Recommendation finding that the

entities were "one and the same for purposes of their liability to Universitas."  *Id.*

at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the

SDM insurance portfolio using stolen funds, the insurance portfolio was subject to

---

[2] This Order and Judgment uses the terms "register" and "file"
interchangeably.

garnishment.  The district court reviewed the MJ's recommendations de novo and

agreed with all of them, granting summary judgment to Universitas on February 11,

2021.  The district court subsequently placed Avon-WY into a receivership pursuant

to O.S. § 12-1551.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which

states, "[a] judgment shall become unenforceable and of no effect if more than five

(5) years have passed from the date . . . [t]he last garnishment summons was issued."

The district court denied SDM's motion and upheld the judgment in an order dated

April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were

consolidated by the Court on April 27, 2021.  Universitas alleges that it re-filed the

New York judgment in the Western District of Oklahoma on December 9, 2021.

Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00

(Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments

for enforcement in other districts:

> A judgment in an action for the recovery of money or
> property entered in any court of appeals, district court,
> bankruptcy court, or in the Court of International Trade
> may be registered by filing a certified copy of the
> judgment in any other district or, with respect to the Court
> of International Trade, in any judicial district, when the
> judgment has become final by appeal or expiration of the
> time for appeal or when ordered by the court that entered
> the judgment for good cause shown.  Such a judgment

> entered in favor of the United States may be so registered
> any time after judgment is entered.  A judgment so
> registered shall have the same effect as a judgment of the
> district court of the district where registered and may be
> enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

> A money judgment is enforced by a writ of execution,
> unless the court directs otherwise.  The procedure on
> execution—and in proceedings supplementary to and in aid
> of judgment or execution—must accord with the procedure
> of the state where the court is located, but a federal statute
> governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law

of the state where the judgment is filed, not the limitations period of the state where

the federal district court that issued the judgment is located.  As Universitas is

attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on

the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the

state:

> A judgment shall become unenforceable and of no effect if
> more than five (5) years have passed from the date of:
>    1.  The last execution on the judgment was filed with
>        the county clerk;
>    2.  The last notice of renewal of judgment was filed
>        with the court clerk;
>    3.  The last garnishment summons was issued; or
>    4.  The sending of a certified copy of a notice of
>        income assignment to a payor of the judgment
>        debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217

(Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a

second time in Oklahoma, after Oklahoma's limitation period has lapsed on the original judgment, the underlying original Colorado judgment which is enforceable for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the plaintiffs received a default judgment from the Colorado District Court in 2007 and filed it in Oklahoma District Court three days later. *See id.* at 218–19.  Nine years lapsed before they re-filed the judgment in Oklahoma. *See id.* at 219.  The defendant filed a Motion to Quash, arguing that it had been more than five years since the Colorado judgment was entered, in violation of § 12-735(B). *See id.*  The Oklahoma Supreme Court concluded that "[a]lthough the Act does not address re-filing of sister-state judgments, a judgment creditor may enforce a domesticated judgment in Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for enforcement of judgments has run on the original domesticated foreign judgment." *Id.* at 223.

### b.

The MJ and the district court found that Universitas was entitled to enforce the judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to consider Oklahoma state procedural rules on the subject, as required by F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after five years unless one of the subsequent actions specified in the statute is taken.  Universitas's last relevant act was the issuance of a writ of garnishment to SDM on December 3, 2015.  This means that Universitas's Oklahoma judgment expired five years later, on December 3, 2020.  Contrary to the district court's statement in its

order denying SDM's motions to alter and amend the judgment, Universitas's active attempts to enforce the judgment in Oklahoma were insufficient to render the judgment enforceable under § 12-735(B).  There is no specified exception for active attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment in Oklahoma anyway because the judgment has not yet expired in New York. However, the critical distinction between *Taracorp* and this case is that in *Taracorp*, the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement. *See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive issue of whether a Colorado judgment, which is enforceable in Colorado for twenty years after the judgment is entered, is also enforceable in Oklahoma when the first attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a foreign judgment creates a new local judgment which is governed by the local statute of limitations." *Id.* at 221.  This language suggests that even though the Oklahoma Supreme Court permitted Taracorp to enforce its expired judgment after it had been

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment." *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

re-filed, the court would not have allowed Taracorp to enforce its expired judgment

without first utilizing one of the four methods specified in O.S. § 12-735(B).

Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do

what Universitas seeks to do here—enforce a judgment that had previously been filed

and expired in a particular state without re-filing said judgment in the same state.

Because the re-filing of the judgment in *Taracorp* was a critical component of the

Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass

this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by

stating that:

> [T]o the extent that plaintiff wishes to refile its judgment
> as a protective matter and views leave of court as
> necessary to do so, leave is granted . . . . In the event of
> such re-refiling, all prior orders of this court addressing the
> substantive issues in this case will be deemed re-entered
> *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99.  However, this blanket statement claiming that the

order would extend to Universitas's potential future re-filing rendered the district

court's judgment a legally impermissible advisory order.  Though the district court

initially had jurisdiction over this case, Universitas did not re-file its expired

judgment before the district court entered its February 11, 2021 order.  For the

reasons explained above, that failure to re-file was fatal—there was no longer a

judgment in existence for the district court to enforce at the time it entered the order.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

11

purposes of Article III—when the issues presented are no longer live or the parties

lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*,

568 U.S. 85, 91 (2013) (cleaned up). As the issue in this case was no longer live and

Universitas lacked a legally cognizable interest in the outcome once its judgment

expired in December 2020, the case became moot and the district court lacked

Article III jurisdiction to enter its order, rendering the order void.[4]

   We therefore vacate the district court's February 11, 2021 judgment because

the district court did not have jurisdiction to enter its order.[5] And we remand the case

to the district court to conduct further proceedings.

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte."). Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

**III.**

For the foregoing reasons, we find that Universitas's expired judgment was unenforceable and the case was moot at the time the district court entered its order. Thus, we VACATE the district court's February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the case to the district court to conduct further proceedings.

Entered for the Court


Allison H. Eid
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                    Jane K. Castro
Clerk of Court                                                       Chief Deputy Clerk

August 4, 2023

Nanette Turner Kalcik
Alan L. Rupe
Francis Schneider
Lewis Brisbois Bisgaard & Smith
1605 North Waterfront Parkway, Suite 150
Wichita, KS 67206

Jeffrey R. Sandberg
Palmer Lehman Sandberg
8350 North Central Expressway, Suite 1111
Dallas, TX 75206

**RE:**   **21-6044, 21-6049, 21-6133, 21-6134, Universitas Education v. Avon Capital, et al**
Dist/Ag docket: 5:14-FJ-00005-HE

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court


cc:       Joseph H. Bocock
          Joshua Clark Greenhaw
          Clayton D. Ketter
          Joseph L. Manson III
          Melvin R. McVay Jr.
          John Douglas Stiner


CMW/sls

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## **ORDER**

The court's order entered July 13, 2023, [Doc. #500] is reaffirmed and considered

reentered as of the date of this order.

**IT IS SO ORDERED**.

Dated this 7th day of August, 2023.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>ORDER</u>

The court held a pretrial conference on August 15, 2023, to address issues or potential issues arising from the Tenth Circuit's vacation of this court's order of February 11, 2021, and the remand of the case for further proceedings.  The court heard argument from all parties and "interested parties" as to the impact of the decision.  In particular, the court heard argument as to and considered the procedural posture of the case against the backdrop of the underlying dispute involving allegedly "stolen assets," assets being transferred to avoid the legitimate claims of creditors and the like.  The court did so mindful of the fact that the mandate has not yet issued from the Court of Appeals and any substantive decision reached now is necessarily contingent on, and effective as of, the issuance of the mandate by the Court of Appeals as to its August 4, 2023, Order and Judgment.

For the reasons stated more fully at the conclusion of the pretrial conference, the court **ORDERS** as follows:

1.  Effective as of the issuance of the mandate, the pending motions to dismiss [Doc. Nos. 513 and 516] are **DENIED**.  The court concludes it reacquired subject matter jurisdiction upon the re-filing of the foreign judgment in this case on August 7, 2023 — prior to the issuance of the Court of Appeal's mandate — and that neither the remand order of the Court of Appeals nor the law generally requires dismissal of the case in the particular circumstances existing here.  The court further concludes that Oklahoma law does not require, for the validity of a re-filed foreign judgment, that it be filed in a different case or under a different case number from that of any earlier filing.

2.  Effective as of the issuance of the mandate, this court's order of February 11, 2021, is **READOPTED**.  Subject to the reacquisition of subject matter jurisdiction, which the court concludes has occurred, and in the absence of any other material change of circumstances, there is no reason to revisit or belabor the earlier determinations. Accordingly, the alter ego determinations as to Avon Capital, LLC (Wyoming), Avon Capital, LLC (Connecticut), and Avon Capital, LLC (Nevada) are re-adopted and made the findings/conclusions of the court.  Further, the February 11, 2021, order's injunction to Avon Capital LLC (Wyoming) against the transfer or encumbrance of its ownership or other interest in SDM Holdings, LLC is re-adopted.

3.  Within **<u>twenty-one (21) days</u>** from issuance of the mandate, the parties are directed to file any appropriate motions as to any reappointment of a receiver or of other matters related to the past receivership as impacted by the Tenth Circuit's order.

4.  The responses of Avon Capital LLC (Wyoming) and Phoenix Charitable Trust to plaintiff's motion for imposition of a constructive trust [Doc. #506] are due within **twenty-one (21) days** from issuance of the mandate.

5.  Within **twenty-one (21) days** from issuance of the mandate, the parties and/or interested persons are granted leave to file a supplemental brief addressing the impact of the Court of Appeals decision, if any, on the pending motions for sanctions [Doc. Nos. 236, 273, & 275].

6.  Within **seven (7) days** from issuance of the mandate, Universitas is directed to take whatever formal post-judgment collection steps it relies on in its efforts to collect the judgment at issue (issuance of writ of execution or garnishment, order for hearing on assets, etc.).

**IT IS SO ORDERED.**

Dated this 15th day of August, 2023.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE